Nos. 23-10008, 23-10536, and 23-10836

In the
# United States Court of Appeals
## for the Fifth Circuit

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,

*Defendants-Appellants.*

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

SOUTHWEST AIRLINES CO.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 3:17-cv-02278-X,
Hon. Brantley Starr, *United States District Judge*

## OPPOSED MOTION TO STAY CONTEMPT ORDER AND UNOPPOSED REQUEST FOR ADMINISTRATIVE STAY IF NECESSARY; RELIEF REQUESTED BY SEPTEMBER 26, 2023

Paulo B. McKeeby
Brian K. Morris
REED SMITH LLP
2850 N. Harwood St., Ste. 1500
Dallas, TX 75201

Andrew B. Ryan
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Defendant-Appellant Southwest Airlines Co.*

**CERTIFICATE OF INTERESTED PERSONS**

**Nos. 23-10008 & 23-10536,** *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Company*

**No. 23-10836,** *Charlene Carter v. Southwest Airlines Company*

## I.    Appellant Southwest Airlines

Southwest Airlines Co. is a publicly traded entity and is traded on the NYSE (LUV). The Vanguard Group has filed a Form 13G with the Securities and Exchange Commission stating that it beneficially owns more than 10% of the shares of Southwest Airlines Co. Southwest has no parent corporation, no other entity has reported holdings of over 10%, and there is not any other entity related to, or affiliated with Southwest that has a financial interest in the outcome of the claims asserted against it in this case.

## II.    Interested parties

### A.    Opposing counsel

Opposing counsel in the litigation are:

- Matthew B. Gilliam, National Right to Work Legal Defense Foundation

- Milton L. Chappell, National Right to Work Legal Defense Foundation

- Bobby G. Pryor, Pryor & Bruce

- Matthew D. Hill, Pryor & Bruce

- David E. Watkins, Jenkins & Watkins, PC

**B.    Other interested parties**

Additional firms and persons with an interest in the outcome of the litigation are:

- Cloutman & Cloutman, L.L.P.

- Law Offices of Cloutman and Greenfield, PLLC

- Kerrie Forbes, Southwest Airlines

- Chris Maberry, Southwest Airlines

- Kevin Minchey, Southwest Airlines

- Norton Rose Fulbright US LLP

- Reed Smith LLP

- Ryan Law Partners LLP

- Sheppard Mullin Richter & Hampton LLP

- Skadden, Arps, Slate, Meagher & Flom LLP

## REQUEST FOR ORAL ARGUMENT

Southwest Airlines Co. requests oral argument on this motion. The district court entered an extraordinary and unprecedented order holding Southwest in contempt and requiring three of its in-house attorneys to attend "religious-liberty training" with the Alliance Defending Freedom based on a verdict likely to be overturned and despite Southwest's willingness to comply with the court's underlying judgment. The district court's contempt order exceeds the scope of its civil-contempt power and violates Southwest's First Amendment rights. As this Court has recognized in other cases, oral argument is likely to assist the Court in resolving this urgent matter. *See, e.g.*, *Basinkeeper v. United States Army Corps of Engineers*, 715 F. App'x 399, 400 (5th Cir. 2018); *Whole Woman's Health v. Lakey*, 769 F.3d 285, 289 (5th Cir.), *vacated in part*, 574 U.S. 931 (2014); *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013).

The district court granted a 30-day administrative stay of its contempt order that will expire on September 16, 2023, with training scheduled for September 26, 2023. Southwest thus respectfully requests that the Court hold oral argument and decide this motion before that time or enter an administrative stay if necessary to permit the Court to do so on the ordinary stay-

motion briefing schedule. As noted in the Certificate of Conference, Charlene Carter does not oppose Southwest's request for an administrative stay as necessary to decide this motion provided that she has the 10 days to which she is entitled under Federal Rule of Appellate Procedure 27(a)(3)(A) to file her response and opposition to Southwest's motion for a stay pending appeal. *See infra* p. 29.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

REQUEST FOR ORAL ARGUMENT ................................................................ iii

TABLE OF AUTHORITIES ............................................................................ vii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 4

    A.    A jury finds that terminating Carter violated Title VII. .............. 4

    B.    The district court holds Southwest in contempt. .......................... 7

ARGUMENT .................................................................................................. 9

I.    Southwest is likely to succeed on the merits. ........................................ 9

    A.    Religious-liberty training exceeds the civil-contempt power and punishes Southwest for exercising its First Amendment rights. ........................................................... 10

        1.    Religious-liberty training exceeds the district court's civil-contempt power. ................................. 10

        2.    The Contempt Order violates Southwest's First Amendment rights. ................................................. 12

        3.    The district court's reasoning is incorrect. ......................... 15

    B.    Southwest is likely to succeed on the merits of its Title VII appeal. ........................................................................ 18

        1.    Title VII requires direct or comparator evidence of discrimination and does not protect religious practice that imposes an undue hardship on the employer. ................................................................... 19

# TABLE OF CONTENTS
(continued)

**Page**

2.  Southwest is likely to succeed on appeal because Carter produced no evidence that Southwest terminated her because of her religious belief..................20

3.  Carter's religious-practice claim must be retried. .............22

II.  Southwest will suffer irreparable harm. .................................................25

III.  A stay would not substantially harm Carter, and the public interest supports a stay. ...............................................................26

CONCLUSION ............................................................................27

CERTIFICATE OF COMPLIANCE ....................................................28

CERTIFICATE OF CONFERENCE ...................................................29

CERTIFICATE OF SERVICE .............................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alkhawaldeh v. Dow Chemical Co.*,
851 F.3d 422 (5th Cir. 2017) ...............................................................21

*American Airlines, Inc. v. Allied Pilots Ass'n*,
228 F.3d 574 (5th Cir. 2000) ................................................................10

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ................................................................................13

*Bodenheimer v. PPG Industries, Inc.*,
5 F.3d 955 (5th Cir. 1993) ....................................................................20

*Boylan v. Detrio*,
187 F.2d 375 (5th Cir. 1951) ................................................................10

*Brener v. Diagnostic Center Hospital*,
671 F.2d 141 (5th Cir. 1982) ................................................................24

*Burgess v. Federal Deposit Insurance Corporation*,
871 F.3d 297 (5th Cir. 2017) ................................................................25

*Clark v. Champion National Security, Inc.*,
952 F.3d 570 (5th Cir. 2020) ................................................................21

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*,
188 F.3d 278 (5th Cir. 1999) ....................................................... 23, 24

*Earl v. Boeing Co.*,
21 F.4th 895 (5th Cir. 2021) .................................................................26

*Elrod v. Burns*,
427 U.S. 347 (1976) ...........................................................................4, 25

*Evance v. Trumann Health Services, LLC*,
719 F.3d 673 (8th Cir. 2013) ................................................................21

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ..............................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*First National Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978) ...................................................................14

*Florida Businessmen for Free Enterprise v. City of Hollywood*,
  648 F.2d 956 (5th Cir. 1981) ....................................................26

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991) .................................................................15

*Groff v. DeJoy*,
  143 S. Ct. 2279 (2023) ................................. 3, 4, 10, 13, 19, 22, 23, 24

*Herster v. Board of Supervisors*,
  887 F.3d 177 (5th Cir. 2018) ................................................ 19, 20

*In re Deepwater Horizon*,
  732 F.3d 326 (5th Cir. 2013) ......................................................9

*In re Hsu*,
  451 F. App'x 37 (2d Cir. 2011) .............................................. 15, 16

*In re Murphy-Brown, LLC*,
  907 F.3d 788 (4th Cir. 2018) ...................................................14

*In re Oliver*,
  333 U.S. 257 (1948) .............................................................. 10, 12

*Jackson v. Motel 6 Multipurpose, Inc.*,
  130 F.3d 999 (11th Cir. 1997) ..................................................25

*Karaha Bodas Co. v. Perusahaan Pertambangan
  Minyak Dan Gas Bumi Negara*,
  335 F.3d 357 (5th Cir. 2003) ................................................ 17, 18

*Lakedreams v. Taylor*,
  932 F.2d 1103 (5th Cir. 1991) ................................................4, 25

*Massaro v. Palladino*,
  19 F.4th 197 (2d Cir. 2021) ................................................. 17, 18

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .......................................................... 18, 20, 21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
   934 F.3d 447 (5th Cir. 2019) ..........................................................................20

*National Institute of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ...................................................................................13

*Nobach v. Woodland Village Nursing Center, Inc.*,
   799 F.3d 374 (5th Cir. 2015) .........................................................................19

*Olcott v. Delaware Flood Co.*,
   76 F.3d 1538 (10th Cir. 1996) .......................................................................15

*Tagore v. United States*,
   735 F.3d 324 (5th Cir. 2013) .........................................................................19

*Torres v. City of Houston*,
   No. 12-cv-2323, 2013 WL 2408056
   (S.D. Tex. May 31, 2013) ........................................................................ 15, 16

*United States v. Rizzo*,
   539 F.2d 458 (5th Cir. 1976) .................................................................... 10, 11

*United States v. Straub*,
   508 F.3d 1003 (11th Cir. 2007) .....................................................................16

*Vaughn v. Woodforest Bank*,
   665 F.3d 632 (5th Cir. 2011) .........................................................................20

*Weber v. Roadway Express, Inc.*,
   199 F.3d 270 (5th Cir. 2000) ...................................................... 2, 5, 22, 23, 24

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ......................................................................................13

**CONSTITUTION AND STATUTES**

U.S. Const. art. III ...............................................................................................12

U.S. Const. amend. I............................................................... 1, 4, 9, 10, 11,12, 13,
   ......................................................................... 14, 15, 16, 17, 18, 25

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Religious Freedom Restoration Act of 1993,
42 U.S.C. § 2000bb *et seq.* ........................................................... 11, 12

Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq.*...................................................... 2, 3, 4, 5, 6, 9, 11, 12,
.................................................................. 14, 16, 17, 18, 19, 21, 22

42 U.S.C. § 2000e(j) ............................................................................19

42 U.S.C. § 2000e-2 ............................................................................19

**RULES**

Federal Rule of Civil Procedure 11 ............................................... 15, 16

Federal Rule of Civil Procedure 16 ....................................................15

Federal Rule of Civil Procedure 37 ....................................................15

Federal Rule of Civil Procedure 46 ............................................... 15, 16

**OTHER AUTHORITY**

Caroline M. Corbin,
*The First Amendment Right Against Compelled Listening*,
89 B.U. L. Rev. 939 (2009) .................................................................15

**INTRODUCTION**

Southwest Airlines seeks a stay pending appeal of the district court's order holding it in contempt and imposing the unprecedented and unlawful sanction of requiring three of Southwest's in-house attorneys to attend "religious-liberty" training by September 26, 2023, with an ideological advocacy group, the Alliance Defending Freedom (ADF). ROA.23-10836.10641-10669 (Contempt Order). The order exceeds the civil-contempt power, violates the First Amendment, rests on a jury verdict unlikely to survive appeal, and, left unstayed, will irreparably harm Southwest and its attorneys.

Southwest fired flight attendant Charlene Carter for sending her coworker graphic and hostile messages and posting such messages on Facebook while identifiable as a Southwest employee. One message, with a photo of a bloody aborted fetus in a palm, linked to a video and stated, "This is what you supported during your Paid Leave with others at the Women's MARCH in DC …. You truly are Despicable." ROA.23-10836.14750. Another message, with a photo, linked to a video, of a bloody fetus in a metal bowl, accused the union of "supporting this Murder." ROA.23-10836.14749. That conduct violated Southwest's policies and, in Southwest's view, imposed an undue hardship on employee morale and thus its business.

Carter sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, claiming that Southwest fired her for her religious belief and practice. The district court, conflating practice and belief, sent the belief-based claim to the jury — contrary to blackletter law — based only on Southwest's *knowledge* of her belief. As to practice, the court erroneously refused, under then-controlling Circuit precedent, to instruct the jury that "[t]he mere possibility of an adverse impact on co-workers" from accommodating religious practice was an "undue hardship" putting that practice beyond Title VII's protections. *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 274 (5th Cir. 2000). The jury found for Carter, and the court imposed judgment.

Southwest reinstated Carter and emailed all flight attendants the verdict and judgment. But Carter moved to hold Southwest in contempt because Southwest's email stated that Southwest "does not discriminate" rather than that it "may not discriminate," ROA.23-10836.9442, per the court's judgment, and because she believed that a separate memo that Southwest published for flight attendants undermined the judgment. Although Southwest agreed to distribute a corrected email, ROA.23-10836.10536, the court held Southwest in contempt, ordering Southwest to make a corrective statement and send three of its attorneys to "religious-liberty" training with the

ADF. The court refused to stay its order pending appeal. Dist. Ct. Doc. 483 (Stay Op.).

The Court should stay the Contempt Order pending appeal, and enter an administrative stay if necessary to decide this motion.

1.    The Court is likely to overturn the order. The order exceeds the civil-contempt power, because religious-liberty training doesn't ensure compliance with the judgment or compensate Carter for any noncompliance. Even if it did, the district court didn't explain why "religious-liberty" training by the ADF, an ideological advocacy organization, rather than *Title VII* training, is the least-restrictive means to secure compliance. Indeed, the court confessed that it doesn't know *what* the ADF will teach. Stay Op. 16.

This Court will likely overturn the verdict underpinning the Contempt Order, too. *First*, Carter's only evidence of belief-based discrimination was Southwest's knowledge of her belief plus termination, but under blackletter law that wasn't enough to go to a jury. *Second*, Title VII doesn't protect Carter's conduct as religious "practice," because accommodating it would harm employee morale. The district court failed to properly instruct the jury on undue hardship under the then-controlling Circuit precedent Southwest relied on to try the case, and the intervening change in law in *Groff v. DeJoy*,

- 3 -

143 S. Ct. 2279 (2023), requires a new trial giving Southwest the opportunity to put on evidence satisfying the new standard.

**2.**     Without a stay, the Contempt Order will irreparably harm Southwest and its lawyers. The order punishes Southwest for exercising its First Amendment rights and chills Southwest's right to speak about this litigation. That First Amendment harm is irreparable. *See Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). The order also irreparably damages Southwest's and its lawyers' reputations by causing harm that is impossible to quantify. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).

**3.**     Carter will suffer no harm from a stay, which serves the public interest. Training for lawyers not involved in Carter's termination doesn't benefit Carter, and the public interest weighs against enforcing an unlawful order that chills Southwest's speech, violating its constitutional rights.

## BACKGROUND

### A.     A jury finds that terminating Carter violated Title VII.

**1.**     Carter sued Southwest, arguing that Southwest violated Title VII by firing her because of her pro-life religious belief and practice. At trial, Carter relied on her Facebook posts and messages, her termination letter, and notes from Southwest's pre-termination factfinding hearing to show

that Southwest knew she was a pro-life Christian before firing her and that it fired her for her posts and messages. ROA.23-10836.14747-73, 14887-39, 15002-03, 15007. But Southwest supervisors—themselves pro-life Christians, ROA.23-10836.12828-29—testified that Carter's religious belief played no role in the decision to fire Carter. Carter was fired, they explained, because sending graphic and hostile messages to coworkers, and posting such messages on Facebook while identifiable as a Southwest employee, violated Southwest's policies regarding bullying, social media, and harassment. *E.g.*, ROA.23-10836.14747-73, 14887-39, 15002-03, 15007. Carter claimed the posts and messages were her religious practice. ROA.23-10836.12498-99.

At the time of trial, "[t]he mere possibility of an adverse impact on co-workers" from accommodating an employee's religious practice was an "undue hardship" putting that practice beyond Title VII's protections. *Weber*, 199 F.3d at 274. Senior Southwest supervisors testified that letting Carter send such messages would "have an adverse effect on how we work together and how we interact[] as a group of employees." ROA.23-10836.12880. One supervisor testified that she "felt physically ill" after watching Carter's videos. ROA.23-10836.12798.

**2**.    The district court instructed the jury that Southwest violated Title VII if it discharged Carter "motivated by her sincerely held religious observances, beliefs, or practices," ROA.23-10836.13402, or motivated to "avoid[] the need for accommodating a religious belief, observance, or practice." ROA.23-10836.13406. The court refused Southwest's proposed instruction, based on then-controlling Circuit precedent, that harm to employee morale is an undue hardship. Instead, the court told the jury that "[a]n undue hardship means more than a de minim[i]s cost on the conduct of the employer's business either in terms of financial costs or disruption of the business." ROA.23-10836.13407.

**3**.    The jury found for Carter, and the district court ordered Southwest to reinstate her with backpay; post on company bulletin boards and email all flight attendants the verdict and judgment; and inform all flight attendants "that, under Title VII, they may not discriminate against Southwest flight attendants for their religious practices and beliefs." ROA.23-10836.8955. The court denied Southwest's motion for a new trial, ROA.23-10836.9454-55, 10395-416, and Southwest appealed, ROA.23-10836.10602-03.

**B.    The district court holds Southwest in contempt.**

**1.**    Southwest reinstated Carter and emailed all flight attendants the verdict and judgment. ROA.23-10836.9442. The email stated that "a federal court in Dallas entered a judgment against Southwest" and "ordered us to inform you that Southwest does not discriminate against our Employees for their religious practices and beliefs." *Id.*

Southwest also published an internal Inflight Info on the Go (IIOTG) Memo for flight attendants. ROA.23-10836.9444. The memo explained that an employee had sued Southwest after engaging in conduct that Southwest "believed [was] inappropriate, harassing, and offensive." *Id.* The memo described the judgment, which required Southwest to "pay monetary damages, distribute communication to Flight Attendants about the ruling, and reinstate [the employee's] employment with the Company." *Id.* Southwest promised to "implement the judgment" even as it was "extremely disappointed with the court's ruling and [is] appealing the decision to the Fifth Circuit Court of Appeals." *Id.* Southwest reminded employees to adhere to Southwest policies and display "Civility, Care and Unity at all times, regardless of our differing opinions." *Id.* Carter had not facially challenged

those policies, but had merely obtained a case-specific judgment that Southwest must accommodate her particular religious practice.

**2.**    Carter moved for contempt, arguing that Southwest violated the judgment by saying it "does not discriminate" and contradicting the required notice with the IIOTG Memo. Although Southwest disagreed, it offered to send a new email saying it "may not discriminate" and to pay Carter's contempt-related attorneys' fees. The district court nonetheless held Southwest in contempt, finding that Southwest's email contravened the judgment and the IIOTG Memo was "the antithesis of the Court-ordered notice," ROA.23-10836.10651-53.

The district court ordered Southwest to issue verbatim a new notice to its flight attendants. ROA.23-10836.10655-10659. The court also ordered three of Southwest's in-house lawyers to complete eight hours of "religious-liberty training" with the ADF by August 28, 2023, and before Southwest circulates the new notice. ROA.23-10836.10668. Southwest appealed and asked the district court for a stay pending appeal. ROA.23-10836.10670, 10673-10677. After granting a 30-day administrative stay, the district court denied a stay pending appeal and set September 26 as the new training deadline. Dist. Ct. Doc. 473; Stay Op.

## ARGUMENT

Four criteria guide whether to issue a stay pending appeal: (1) likelihood of success on appeal, (2) whether the movant would suffer irreparable harm without a stay, (3) whether a stay would substantially harm other parties, and (4) whether a stay would serve the public interest. *In re Deepwater Horizon*, 732 F.3d 326, 345 n.13 (5th Cir. 2013). "[W]here there is a serious legal question involved and the balance of the equities heavily favors a stay … the movant only needs to present a substantial case on the merits." *Id.* at 345. Southwest satisfies all four prongs.

## I. Southwest is likely to succeed on the merits.

Southwest is likely to succeed in challenging the Contempt Order. Requiring Southwest's lawyers to attend religious-liberty training exceeds the civil-contempt power and violates the First Amendment. Southwest agreed to issue a corrected email and pay Carter's contempt-related attorneys' fees, so nothing further was needed—or permissible—to secure compliance with the judgment or compensate Carter for any noncompliance. And even if training were permissible, "religious-liberty" training isn't the least-restrictive means of securing compliance with a *Title VII* order—indeed, the district court delegated the training to an ideological advocacy group and

disclaimed knowing what it would involve. What's more, this Court likely will overturn the jury verdict, necessarily vacating the Contempt Order. Carter had insufficient evidence to go to a jury on her belief-based discrimination claim—just Southwest's knowledge of her belief plus termination—and the district court erroneously instructed the jury on the undue-hardship standard, requiring retrial under the intervening *Groff* standard.

### A. Religious-liberty training exceeds the civil-contempt power and punishes Southwest for exercising its First Amendment rights.

#### 1. Religious-liberty training exceeds the district court's civil-contempt power.

a. Civil-contempt sanctions are permissible only to secure compliance with a court order or to compensate for noncompliance, *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000), and only if they are the least restrictive means of doing so, *see In re Oliver*, 333 U.S. 257, 274 (1948). "Civil contempt proceedings are remedial …. They are not instituted as punishment for past offenses, but to compel" obedience with court orders. *Boylan v. Detrio*, 187 F.2d 375, 378 (5th Cir. 1951). To go beyond securing compliance or compensation, a court must invoke its criminal-contempt power, which requires additional procedural protections, *see, e.g.*,

*United States v. Rizzo*, 539 F.2d 458, 463-65 (5th Cir. 1976), and isn't at issue here, Stay Op. 12-13.

**b.** The district court abused its civil-contempt power by imposing religious-liberty training, which neither secures compliance with an order nor compensates Carter for any noncompliance, and is not the least-restrictive means to achieve those ends. The court held Southwest in contempt because it thought that the "does not discriminate" email did not comply with its judgment and the IIOTG Memo undermined its judgment. ROA.23-10836.10648-10653. Thus, the only permissible sanctions were requiring a new "may not discriminate" email and awarding Carter contempt-related attorneys' fees, because those are the least-restrictive means of ensuring compliance with the judgment and compensating Carter. Training will do nothing to compel compliance with the judgment and will not benefit Carter. Indeed, training cannot constitutionally tell Southwest what views to hold, *infra* pp. 12-15, and training isn't required to secure a new email or prevent contradiction of the court's verbatim notice. Put simply, the district court couldn't articulate what permissible purpose training serves.

Even if training were necessary, *religious-liberty* training is an abuse of discretion. "Religious liberty" encompasses topics, like the First

Amendment and Religious Freedom Restoration Act, that have nothing to do with this case and cannot possibly be the least-restrictive means of securing compliance with a Title VII judgment. The district court's defense of the ADF as mandatory trainer—that the ADF has won several *non–Title VII* "Supreme Court cases in recent years," and the court doesn't have "knowledge of what will be discussed in Southwest's training," Stay Op. 16-17—*proves the point*. The court didn't order *Title VII* training from a neutral trainer (like the Practising Law Institute). Instead, the court ordered Southwest to attend "religious-liberty" reeducation conducted at the ADF's unguided discretion. Rather than exercise "the least possible power adequate to the end proposed" by specifying exactly what training is required and why, *Oliver*, 333 U.S. at 274, the district court appears to have delegated that Article III civil-contempt authority to an ideological advocacy group.

### 2.    The Contempt Order violates Southwest's First Amendment rights.

The Contempt Order violates Southwest's First Amendment rights. By targeting the IIOTG Memo, the order punishes Southwest for expressing its view of the verdict and judgment and its intent to seek appellate relief; compels Southwest to listen to an ideological advocacy group without

justification; and transforms the judgment into an unconstitutional prior restraint on Southwest's future speech.

a.    The First Amendment guarantees the rights to speak and not to speak. *See Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Content-based restrictions on a corporation's right to speak are subject to strict scrutiny, because "governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content." *National Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quotation marks omitted). A restriction fails strict scrutiny unless it is "narrowly tailored" to serve compelling interests. *Id.* Similarly, an order limiting future speech activities is presumptively unconstitutional as a prior restraint. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963).

b.    The Contempt Order violates Southwest's First Amendment rights by punishing Southwest for speaking on a matter of fundamental importance: its disagreement with, and right to appeal, a decision it believes is wrong in a developing area of law. *See* ROA.23-10836.9444; *Groff*, 143 S. Ct. 2279. The order justifies training on the ground that the IIOTG Memo undermined the required notice to flight attendants. But the memo expressly promises to "implement the judgment." ROA.23-10836.9444. The memo also

expresses Southwest's view of Carter's conduct, the jury's verdict, and the court's holdings while vowing to advance that view on appeal. *See supra* pp. 7-8. The First Amendment protects Southwest's expression of its view, especially about legal issues. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778-81 (1978).

In requiring religious-liberty training and threatening future sanctions, the district court announced a "continued partnership" for superintending Southwest's speech. ROA.23-10836.10644. That content-based prior restraint on Southwest's speech is doubly unconstitutional. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018). Compounding the problem, the district court's ongoing prohibition of Southwest's speech is vague, chilling Southwest's First Amendment right to speak. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012). In the court's view, Southwest should speak only after it is "[a]rmed with a better understanding of the legal area at issue." ROA.23-10836.10666. But it is this Court's appellate review, not the ADF's religious-liberty training, that will clarify what the law requires. And even then, while it must comply with Title VII, Southwest is constitutionally entitled to hold and express the view that it did not discriminate against Carter and that the courts have misinterpreted Title VII.

As Southwest argued (Dist. Ct. Doc. 472, at 14-15), compelling its attorneys to listen to an ideological group's opposing views presents yet another First Amendment problem. *See* C.M. Corbin, *The First Amendment Right Against Compelled Listening*, 89 B.U. L. Rev. 939 (2009). Despite these grave concerns, the district court kept the prior restraint unconstitutionally vague, leaving Southwest to "guess at [the] contours" of the prohibition. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1048 (1991). The court even admitted that it had no idea what the ADF would tell Southwest, Stay Op. 16, *proving* that the sanction is vague and the compelled listening unjustified.

### 3.    The district court's reasoning is incorrect.

**a.**    Trying to justify non-least-restrictive training as "a commonplace sanction," Stay Op. 12, the district court relied on (ROA.23-10836.10660 nn.66-67) decisions analyzing sanctions under Federal Rules of Civil Procedure 11, 16, 37, or 46. But those standards are fundamentally different from civil contempt because they permit punitive sanctions and do not require sanctions to be the least power necessary to secure compliance or compensation. *See, e.g.*, *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1554 (10th Cir. 1996); ROA.23-10836.10703 n.* (cataloguing cases and distinguishing the only two decided in civil-contempt context); *In re Hsu*, 451 F. App'x 37, 40 (2d Cir.

2011) (sanctions under Rule 46, which permits court to "discipline an attorney"); *Torres v. City of Houston*, No. 12-cv-2323, 2013 WL 2408056, at *10 (S.D. Tex. May 31, 2013) (Rule 11 sanctions because counsel "made false statements in pleadings"). Because punishment is not a permissible justification for civil contempt, *United States v. Straub*, 508 F.3d 1003, 1009 (11th Cir. 2007), the district court was wrong to rely on those cases to legitimize its unprecedented approach of forcing training by an ideological organization on Southwest's attorneys.

**b.**     The district court also erred in relying on the IIOTG Memo to impose religious-liberty training. *First*, the court justified religious-liberty training because "Southwest has never disclaimed its view in the IIOTG Memo that its discrimination against Carter was justified by Southwest's policies." ROA.23-10836.10663. That reasoning is viewpoint discrimination. Southwest's view, which it will advance on appeal, is that it did not discriminate against Carter, and the jury and district court erred in concluding otherwise. *Infra* pp. 18-24. Expressing that view is not the same as refusing to "implement the [Court's] judgment" or to obey Title VII as authoritatively construed by the courts. ROA.23-10836.9444. Southwest has the right to

express its view and seek appellate review, and forcing Southwest to abandon its view or face contempt sanctions violates the First Amendment.

*Second*, the district court mischaracterized the memo as the "antithesis" of its order that Southwest notify flight attendants that it may not discriminate, ROA.23-10836.10651, because it told flight attendants that they "must all adhere to" Southwest's policies, Stay Op. 11. But the memo permissibly described the situation and Southwest's First Amendment–protected views that terminating Carter didn't violate Title VII. And encouraging employees to follow the company's neutral policies does not undermine the judgment. Carter did not facially challenge Southwest's policies, and the court did not enjoin them.

**c.**    The district court repeatedly observed that Southwest must comply with the judgment while the appeal is pending, Stay Op. 1, 6-7, 20, as if to suggest that Southwest cannot raise arguments about the judgment and verdict in its stay papers. Nobody disputes that parties are bound by judgments. But Southwest's decision not to seek a stay of the judgment—especially before it had encountered the irreparable harm of unexpected and unprecedented contempt sanctions—doesn't limit the arguments it can make to show it is likely to succeed on the merits. In the end, neither Carter

nor the district court disputes that if Southwest successfully challenges the district court's judgment on appeal, the Contempt Order necessarily falls, too. *See Massaro v. Palladino*, 19 F.4th 197, 216 (2d Cir. 2021); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 374 (5th Cir. 2003). If anything, reviewing those issues now is crucial because they help explain why Southwest holds its First Amendment–protected view, which the district court's sanction threatens to irreparably harm, that it did not discriminate against Carter.

## B.    Southwest is likely to succeed on the merits of its Title VII appeal.

Southwest is likely to succeed on the merits of its Title VII appeal, and thus in challenging the Contempt Order. The jury found that Southwest violated Title VII by terminating Carter for (1) her religious beliefs and (2) her religious practice of disseminating anti-abortion messages and posts. Neither finding can stand under blackletter law. *First*, Carter presented legally insufficient evidence of religious belief–based discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), so that claim should not have gone to the jury. Carter's only evidence was that Southwest was aware she was Christian, and that she was fired after sending graphic videos and

hostile messages about abortion to coworkers. But an employers' knowledge and termination alone cannot prove a Title VII claim. *Second*, the district court gave an erroneously narrow undue-hardship instruction on Carter's religious-practice-accommodation claim, and the Supreme Court's intervening decision in *Groff* requires a new trial.

### 1. Title VII requires direct or comparator evidence of discrimination and does not protect religious practice that imposes an undue hardship on the employer.

Title VII prohibits discrimination based on religious "belief" and "practice." 42 U.S.C. §§ 2000e(j), 2000e-2. Thus, an employer violates Title VII if it fires an employee because of her religious belief. *See, e.g.*, *Nobach v. Woodland Village Nursing Center, Inc.*, 799 F.3d 374, 378 (5th Cir. 2015). But Title VII protects religious practice only to the extent the employer can reasonably accommodate it "without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Thus, an employer violates Title VII if it fires an employee because of religious practice only if accommodating that practice would not cause undue hardship on the business. *See, e.g.*, *Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013).

A plaintiff can use direct or indirect evidence to prove discrimination. Direct evidence, which requires no inference to show "that an improper

criterion" motivated the adverse action, is "rare." *Herster v. Board of Supervisors*, 887 F.3d 177, 184-85 (5th Cir. 2018). Most evidence is indirect, requiring "inferences or presumptions" to show unlawful motive. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Cases relying on indirect evidence proceed under the *McDonnell Douglas* burden-shifting framework. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019). Under that framework, the plaintiff must show that the employer did not take adverse action against "'other similarly' situated employees for 'nearly identical' conduct." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011).

### 2. Southwest is likely to succeed on appeal because Carter produced no evidence that Southwest terminated her because of her religious belief.

Carter's belief-based discrimination claim should not have gone to the jury because Carter introduced no evidence, direct or indirect, that Southwest fired her because of her religious beliefs. Carter introduced no evidence of any animus or hostile comments about her religious beliefs. Rather, she relied solely on evidence that Southwest knew that she was a pro-life Christian, *see, e.g.*, ROA.23-10836.12567, and that Southwest terminated her for sending graphic materials to her coworkers and posting them on Facebook,

*see, e.g.*, ROA.23-10836.15007. But "generalized knowledge about [the protected condition] and the termination itself" is "not direct evidence" of discrimination. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 580-81 (5th Cir. 2020) (citing Title VII cases); *see Evance v. Trumann Health Servs., LLC*, 719 F.3d 673, 677-78 (8th Cir. 2013) (same rule under Title VII). Carter thus had to prove her case under *McDonnell Douglas* to show that she was fired for her beliefs rather than violating Southwest's neutral policies. But she couldn't do that, because she produced no evidence that employees with the "same job responsibilities" and "the same supervisor" or same work location were treated differently, as required for them to be comparators. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

The district court's reasoning rests on confusion about the law and *confirms* that Carter's claims should never have reached a jury. The only evidence the district court cited as evidence of *belief*-based discrimination was Southwest's statements admitting that it "fired Carter because of anti-abortion messages she sent." Stay Op. 19. But that evidence speaks to purported religious *practice* (discussed below), to which undue hardship is a defense, not religious *belief*. Knowledge of the protected characteristic plus termination has never been enough for Title VII liability, and if it were, it

would open the floodgates for race, sex, and sexual orientation claims as well. Carter's belief-based claim fails as a matter of law.

### 3.    Carter's religious-practice claim must be retried.

**a.**    Southwest is also likely to secure a remand for a new trial on Carter's religious-practice-accommodation claim. The district court mis-instructed the jury under this Court's then-controlling precedent, and the Supreme Court's intervening decision in *Groff* requires a remand for retrial under the correct standard.

Before *Groff*, but during trial and at the time of the verdict, this Court's precedent made clear that "[t]he mere possibility of an adverse impact on co-workers" from an employee's religious practice, even if not "quantifiable in economic terms," was an "undue hardship" putting that practice outside of Title VII's protections. *Weber*, 199 F.3d at 274. Trying this case relying on that standard, Southwest called company supervisors to testify that if Southwest accommodated Carter's conduct, employees "would lose respect for each other, we would lose the family-type feel that Southwest Airlines has always been a proponent of in how we treat each other." ROA.23-10836.12880. Southwest didn't introduce evidence tying employee morale to business cost because this Court's precedent required no such showing. And

Southwest relied on this Court's precedent to request a jury instruction that undue hardship included "burden to other employees" and "doesn't actually have to be any kind of monetary loss." ROA.23-10836.13223. But the court erroneously refused to give that instruction, requiring a new trial.

After the verdict, however, the Supreme Court held in *Groff* that accommodating a religious practice is an undue hardship only if it "would result in substantial increased costs in relation to the conduct of [the employer's] particular business." 143 S. Ct. at 2295. *Groff* wrought a significant change from this Court's precedent, which held that burdening coworkers is an undue hardship that "need not be quantifiable in economic terms." *Weber*, 199 F.3d at 274. And that change confirms that a retrial is still required. When the law changes after judgment, but before appellate resolution, this Court "will generally remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard." *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999).

A new trial is particularly warranted here, because Southwest "had no reason to expect" during trial that *Groff* would require evidence connecting harm to employee morale with increased business costs. Had *Groff*, rather than *Weber*, been the standard at trial, Southwest would have put on

evidence of costs, such as testimony from executives about the costs resulting from flight attendants' refusing to work with one other, flight cancellations, and poor customer experiences; and expert testimony connecting the harm to flight attendant morale to lost revenue.

Before *Groff*, the district court erred in refusing to give a *Weber* instruction. After *Groff*, a new trial is required so the jury can decide Carter's claim based on an opportunity to present evidence under the new standard.

**b.** The district court reasoned that its instruction *complied* with pre-*Groff* Circuit precedent because "evidence of the emotional burden on Carter's co-workers" could not show undue hardship. Stay Op. 18. That is wrong. The court ignored *Weber*'s "mere possibility" standard, and the decision it cited, *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 147 (5th Cir. 1982), recognized that "a lowering of morale among the other [employees]" was undue hardship. The court thus erred in refusing to give Southwest's requested morale instruction. And the court's observation that *Groff* makes the law "harder on Southwest," Stay Op. 18, simply *proves* that a new trial is required under *Deffenbaugh-Williams* so that Southwest can have an opportunity to connect its ample evidence of harm to employee morale to business cost under the new *Groff* standard.

## II.    Southwest will suffer irreparable harm.

Without a stay, Southwest and its counsel will suffer irreparable harm. Southwest's First Amendment injuries are per se irreparable. *See Elrod*, 427 U.S. at 373-74. Not only does the Contempt Order punish Southwest for its past speech; it also chills Southwest's speech by forcing Southwest to guess at what it can and cannot say. *See supra* pp. 12-15.

Southwest's reputational injuries are irreparable, too, because they "cannot be undone through monetary remedies'" *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017), and because they will cause economic harm that is difficult to quantify, *see, e.g., id.*; *Lakedreams*, 932 F.2d at 1109 (holding that "any attempt to calculate damages" resulting from unnecessary reputational harm "could be considered too speculative," and citing cases). The religious-liberty training sanction suggests to the public that Southwest, its employees, and its counsel are hostile to religion. That false message inflicts reputational harm that may cause the public or any future employers of Southwest's counsel to take their business elsewhere, *see, e.g., Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997), causing injuries impossible to quantify.

### III. A stay would not substantially harm Carter, and the public interest supports a stay.

A stay will not harm Carter. Carter has no personal interest in religious-liberty training; she has not shown that any of Southwest's attorneys harbors animosity towards her based on her religion. Carter seeks "only … money damages," so "it is not apparent why [she] would be prejudiced" by a stay. *Earl v. Boeing Co.*, 21 F.4th 895, 900 (5th Cir. 2021). When the movant shows a substantial likelihood of success on the merits, delay alone does not weigh against a stay. *See Florida Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 959 (5th Cir. 1981). Just so here.

A stay also serves the public interest. The public has no interest in "expenditure of time, money, and effort" in forcing a party to comply with an order "that may well" be overturned, *id.*, and Southwest is likely to succeed in challenging both the Contempt Order and the verdict, *supra* pp. 9-24. The public has a strong interest in not punishing Southwest or its counsel for defending themselves in court, and in first securing appellate resolution, especially in a case raising important questions about how federal law balances religious accommodation with legitimate employer interests.

## CONCLUSION

The Court should stay the Contempt Order pending resolution of these consolidated appeals, and administratively stay the order if necessary to decide this motion.

Dated: September 6, 2023

Respectfully submitted,

*/s/ Shay Dvoretzky*

Paulo B. McKeeby
Brian K. Morris
REED SMITH LLP
2850 N. Harwood St., Ste. 1500
Dallas, TX 75201

Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Defendant-Appellant Southwest Airlines Co.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 5,199 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f), and (2) this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: September 6, 2023          */s/ Shay Dvoretzky*
                                  Shay Dvoretzky

                                  *Counsel for Defendant-Appellant*
                                   *Southwest Airlines Co.*

## CERTIFICATE OF CONFERENCE

I hereby certify that, pursuant to Circuit Rule 27.4, I conferred on September 6, 2023, with Matthew Gilliam, counsel for Charlene Carter (the only other party to these contempt proceedings), about this motion. Mr. Gilliam informed me that:

- Ms. Carter opposes this motion for a stay of the Contempt Order pending appeal;

- Ms. Carter intends to file a response in opposition; and

- Ms. Carter does not oppose Southwest's request for an administrative stay of the Contempt Order, if necessary to resolve the motion for a stay pending appeal before the September 26, 2023, training deadline, provided that she has the 10 days to which she is entitled under Federal Rule of Appellate Procedure 27(a)(3)(A) to file her response in opposition to the motion for a stay pending appeal.

I further certify that on September 6, 2023, I was unable to reach Adam Greenfield, counsel for Transport Workers Union of America, Local 556. But Local 556 is not a party to these contempt proceedings, including Case No. 23-10836, and it did not oppose Southwest's stay motion in the district court.


Dated: September 6, 2023          */s/ Parker Rider-Longmaid*
                                 Parker Rider-Longmaid

                                 *Counsel for Defendant-Appellant*
                                   *Southwest Airlines Co.*

- 29 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2023, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 6, 2023          */s/ Shay Dvoretzky*
                                 Shay Dvoretzky

                                 *Counsel for Defendant-Appellant*
                                 *Southwest Airlines Co.*