**Case Nos. 23-10008, 23-10536, and 23-10836**

_____

# In the
# United States Court of Appeals
# for the Fifth Circuit

_____

CHARLENE CARTER,
*Plaintiff-Appellee/Cross-Appellant*,

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,
*Defendants-Appellants/Cross-Appellees*.

CHARLENE CARTER,
*Plaintiff-Appellee*,

v.

SOUTHWEST AIRLINES CO.
*Defendant-Appellant*.

_____

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 3:17-cv-02278-X,
Hon. Brantley Starr, *United States District Judge*

_____

## CARTER'S RESPONSE AND OPPOSITION TO SOUTHWEST'S MOTION TO STAY CONTEMPT ORDER

Mathew B. Gilliam
*Counsel of Record*
Milton L. Chappell
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
mbg@nrtw.org

Bobby G. Pryor
Matthew D. Hill, Of Counsel
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087

David E. Watkins
JENKINS & WATKINS, P.C.
25 Highland Park Vlg., Ste. 100-359
Dallas, Texas 75205

*Counsel for Plaintiff-Appellee/Cross-Appellant Charlene Carter*

# CERTIFICATE OF INTERESTED PERSONS

**Nos. 23-10008 and 23-10536, *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Company***

**No. 23-10836, *Charlene Carter v. Southwest Airlines Company***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellee/Cross-Appellant: Charlene Carter;

2. Counsel for the Plaintiff-Appellee/Cross-Appellant: Matthew B. Gilliam, Milton L. Chappell, Bobby G. Pryor, Matthew D. Hill, David E. Watkins, Pryor & Bruce, Jenkins & Watkins;

3. Defendant-Appellant/Cross-Appellee: Southwest Airlines Co.;

4. Counsel for Defendant-Appellant/Cross-Appellee Southwest Airlines Co.: Shay Dvoretzky, Parker Rider-Longmaid, Steven Marcus, Skadden, Arps, Slate, Meagher & Flom LLP, Paulo B. McKeeby, Brian Morris, Reed Smith LLP, Andrew B. Ryan, Ryan Law Partners LLP;

5. Defendant-Appellant/Cross-Appellee: Transport Workers Union of America, Local 556;

6. Counsel for Defendant-Appellant/Cross-Appellee Transport Workers Union of America, Local 556: Adam Greenfield, Cloutman &

Greenfield, P.L.L.C.

/s/ Matthew B. Gilliam
Matthew B. Gilliam

*Counsel of record for Plaintiff-Appellee/Cross-Appellant*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................... i

TABLE OF AUTHORITIES ................................................................................. v

CORRECTING THE RECORD ............................................................................. 2

ARGUMENT ........................................................................................................ 5

I.  Southwest did not show a strong likelihood of success on the merits ............... 6

    A. Title VII legal training is a commonplace civil contempt sanction
       within the courts' inherent powers ............................................................ 6

        1. Title VII training secures Southwest's compliance by ensuring
           Southwest attorneys comprehend employees' Title VII-protected
           rights .......................................................................................................7

        2. Title VII training is the least severe sanction adequate to
           correct Southwest's misinformation and prevent it from
           undermining the Notice Order...................................................................9

    B. The Contempt Order does not violate Southwest's First Amendment
       speech rights ..........................................................................................10

        1. The Contempt Order does not sanction Southwest for disagreeing
           with and appealing the judgment...............................................................10

        2. The Contempt Order does not contain a prior restraint or
           speech prohibition ...................................................................................11

        3. Title VII training does not require Southwest to hear an
           "ideological" message ..............................................................................12

# TABLE OF CONTENTS
## (continued)

**Page**

   C.  Southwest's arguments about the religious discrimination judgment do not show a strong likelihood of overturning the Title VII training sanction ......................................................... 14

       1.  The District Court and jury correctly determined that Southwest fired Carter because of her religion ...........................................15

       2.  *Groff* does not require a remand or new trial ...........................................18

II.  Southwest will not suffer irreparable harm without a stay ............................... 21

III. Carter and other Southwest flight attendants will continue suffering substantial harm ................................................................ 22

IV. The public interest favors denying the stay .......................................................22

CONCLUSION ..................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                           **Page(s)**

*Alliance for Hippocratic Med. v. Food & Drug Admin.*
  No. 23-10362, 2023 WL 2913725 (5th Cir. Apr. 12, 2023)................5, 6, 21, 22

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
  228 F.3d 574 (5th Cir. 2000) ...................................................................7

*Bostock v. Clayton, Cnty.,*
  140 S. Ct. 1731 (2020) ...........................................................................16

*Brener v. Diagnostic Ctr. Hosp.,*
  671 F.2d 141 (5th Cir. 1982) .................................................................19

*Chicago Teachers Union v. Hudson,*
  475 U.S. 292 (1986)..................................................................................6

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media,*
  140 S. Ct. 1009 (2020)............................................................................16

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.,*
  188 F.3d 278 (5th Cir. 1999) .................................................................20

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.,*
  575 U.S. 768 (2015).....................................................................16, 17, 18

*E.E.O.C. v. Boh Bros. Const., LLC,*
  No. Civ. A. 09-6460, 2011 WL 3585599 (E.D. La. Aug. 16, 2011).....................7

*E.E.O.C. v. Frank's Nursery & Crafts, Inc.*
  177 F.3d 448 (6th Cir. 1999) ...................................................................7

*E.E.O.C. v. Hacienda Hotel,*
  881 F.2d 1504 (9th Cir. 1989) ...............................................................18

*E.E.O.C. v. Westinghouse Elec. Corp.,*
  925 F.2d 619 (3d Cir. 1991) ...................................................................20

*Edmonds v. Seavey*
379 F. App'x 62 (2d Cir. 2010) .................................................................7

*Fierros v. Tex. Dep't of Health,*
  274 F.3d 187 (5th Cir. 2001) .................................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Fla. Steel Corp. v. N.L.R.B.*,
  648 F.2d 233 (5th Cir. 1981) ...................................................9

*Gentile v. State Bar of Nev.*,
  501 U.S. 1030 (1991) ..........................................................13

*Giboney v. Empire Storage & Ice Co.*,
  336 U.S. 490 (1949) ............................................................11

*Groff v. DeJoy*
  143 S. Ct. 2279 (2023) ...................................................15, 18, 19, 20

*Hebrew v. Tex. Dep't of Crim. Just.*,
  22-20517, Doc. 50 (5th Cir. Sept. 15, 2023) ......................................18

*Heller v. EBB Auto Co.*,
  8 F.3d 1433 (9th Cir. 1993) ......................................................18

*Hersh v. United States ex. rel. Mukasey*,
  553 F.3d 743 (5th Cir. 2008) ....................................................13

*Hornbeck Offshore Servs., L.L.C. v. Salazar*
  713 F.3d 787 (5th Cir. 2013) .....................................................6

*In re Bradley*,
  588 F.3d 254 (5th Cir. 2009) .....................................................6

*In re Raborn*,
  No. 15-10938, 2017 WL 4536090 (Bankr. M.D. La. May 9, 2017) ...................23

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
  512 U.S. 821 (1994) ..............................................................6

*Louisiana v. Biden*,
  55 F.4th 1017 (5th Cir. 2022) ...................................................22

*Maness v. Meyers*,
  419 U.S. 449 (1975) .............................................................15

*Nken v. Holder*,
  556 U.S. 418 (2009) .........................................................5, 21, 23

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*OOGC Am. L.L.C. v. Chesapeake Expl.,*
   975 F.3d 449 (5th Cir. 2020) ............................................................12

*Petrisch v. JP Morgan Chase*,
   789 F. Supp. 2d 437 (S.D.N.Y. 2011) ..............................................7

*R.A.V. v. City of St. Paul*
   505 U.S. 377 (1992).........................................................................11

*Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986)...........................................................................11

*Roy v. Am. Pro. Mktg.*,
   117 F.R.D. 687 (W.D. Okla. 1987) ....................................................7

*Seven Arts Filmed Ent. v. Jonesfilm*,
   538 F. App'x 444 (5th Cir. 2013) .....................................................15

*Spencer v. Gen. Elec. Co.*,
   894 F.2d 651 (4th Cir. 1990) ..............................................................7

*Steele v. Louisville & N.R. Co.*,
   323 U.S. 192 (1944)............................................................................3

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
   582 U.S. 449 (2017)..........................................................................14

*Test Masters Educ. Servs., Inc. v. Singh*,
   428 F.3d 559 (5th Cir. 2005) ....................................................... 6, 11

*Topalian v. Ehrman*,
   3 F.3d 931 (5th Cir. 1993) ..................................................................9

*United States v. Lynd*,
   349 F.2d 790 (5th Cir. 1965) ..............................................................6

*United States Steel Corp. v. United Mine Workers of Am., Dist. 20*,
   598 F.2d 363 (5th Cir. 1979) ............................................................15

*United States ex rel. Rafizadeh v. Cont'l Common, Inc.*,
   553 F.3d 869 (5th Cir. 2008) ............................................................20

# TABLE OF AUTHORITIES

**CASES**                                                  **Page(s)**

*Veasey v. Perry*,
    769 F.3d 890 (5th Cir. 2014) ...................................................5

*Virginian Ry. Co. v. United States*,
    272 U.S. 658 (1926)..................................................................5

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
    945 F.3d 206 (5th Cir. 2019) .................................................20

*Weber v. Roadway Express, Inc.,*
    199 F.3d 270 (5th Cir. 2000) .................................................19

*Weisgram v. Marley Co.,*
    528 U.S. 440 (2000)................................................................20

*Williams v. Zbaraz,*
    442 U.S. 1309 (1979)...............................................................5

## Constitution, Statutes, Other

United States Const., Amend. I................................................*passim*

Civil Rights Act of 1964, Title VII
    42 U.S.C. § 2000e *et seq.* ...................................3, 11, 16
    42 U.S.C. § 2000e-2 .............................................3, 11, 16
    42 U.S.C. § 2000e-2(a)(1) ...........................................16
    42 U.S.C. § 2000e-2(c)(1) .............................................3
    42 U.S.C. § 2000e-2(c)(3) .............................................3
    42 U.S.C. § 2000e-2(m).................................................16
    42 U.S.C. § 2000e-(j)...............................................3, 16

The Railway Labor Act
    45 U.S.C. § 152 (Third). ................................................3
    45 U.S.C. § 152 (Fourth). ..............................................3

Caroline M. Corbin,
    *The First Amendment Right Against Compelled Listening*
    89 B.U. L. Rev. 939 ......................................................13

## CARTER'S RESPONSE AND OPPOSITION TO SOUTHWEST'S MOTION TO STAY CONTEMPT ORDER

Pursuant to Federal Rule of Appellate Procedure 27(a)(3), Plaintiff Charlene Carter ("Carter"), by and through her attorneys, hereby files this Response to Southwest Airlines Co.'s ("Southwest") Motion to Stay the District Court's Contempt Order Pending Appeal.[1] The Court should deny Southwest's Motion.

The Court should deny Southwest's Motion because Southwest cannot show a strong likelihood of overturning the August 7, 2023 Contempt Order.[2] Southwest willfully violated the District Court's December 5, 2022 Notice Order,[3] for which it never sought a stay. The Contempt Order's Title VII religious-liberty training requirement (the only component Southwest opposes)[4] is a commonplace civil contempt sanction that secures Southwest's compliance by ensuring that the Southwest attorneys at the root of the contempt comprehend employees' Title VII-protected religious liberties.

Neither Southwest nor its three attorneys will suffer any irreparable harm from Title VII religious-liberty training absent a stay. But failing to purge its contempt will continue to harm Carter and Southwest's 17,000 flight attendants because

---

[1] Doc. 102 (hereinafter "SWA Mot. ___").

[2] ROA.23-10836.10641-10669 ("Contempt Order").

[3] ROA.23-10836.8955, ¶10; ROA.23-10836.10647, 10651, 10656, 10660.

[4] While Southwest's motion requests a stay of the entire Contempt Order, Southwest only contests that order's Title VII religious liberty training requirement. Southwest does not oppose the validity of the Court's August 7, 2023 Remedial Statement, saying it has "agreed to issue a corrected notice and is prepared to issue verbatim the statement ordered by the Court." ROA.23-10836.10690.

Southwest's willful misrepresentations and lack of understanding regarding Title VII religious liberties restrains and restricts those rights. The public interest favors denying the stay so that Southwest will finally begin the cessation of its restraint on flight attendants' knowledge of their Title VII-protected religious liberties that the District Court issued its Notice Order to remedy.

## CORRECTING THE RECORD

Contrary to Southwest's characterizations, Carter did not send Title VII-protected messages to a "co-worker," let alone multiple "co-workers."[5] Charlene Carter, a pro-life Christian and Southwest flight attendant, learned in 2017 that the Transport Workers Union of America, Local 556 ("TWU"), the government-imposed union representative of all Southwest flight attendants, used her forced union fees to fund the union's and its president's participation in the January 21, 2017 pro-abortion Planned Parenthood Women's March on Washington, D.C.[6]

Carter sent TWU President Stone private Facebook videos and messages objecting to the TWU's and the union president's participation in the March and showing the union what it supported at the Women's March—the taking of human life contrary to God's will.[7] TWU's President complained to Southwest about

---

[5] Doc. 102 at 12, 16, 33.

[6] ROA.23-10836.8497-98 (¶¶1-15).

[7] *Id.*; ROA.23-10836.14747-48; ROA.23-10836.14905-14921; ROA.23-10836.8497, ¶1 (Southwest stipulating that Charlene Carter is a Christian who believes that abortion is the taking of a human life contrary to the teachings of the Bible and will of God).

Carter's religious messages, and Southwest fired Carter for exercising her Title VII-protected religious liberties.[8] Carter never worked with TWU President Stone, and only communicated with Stone in her official capacity regarding union business.[9] Southwest never showed that Carter's dispute with the union involved the workplace or any employees apart from the union president, who has distinct and affirmative obligations to Carter.[10]

The jury decided that Southwest fired Carter because of her religion, and the District Court entered judgment and issued injunctive orders against Southwest that became immediately effective and have remained in effect at all times through the present.[11] The District Court ordered Southwest:

> [T]o inform Southwest flight attendants that, under Title VII, the Defendants may not discriminate against Southwest flight attendants for their religious practices and beliefs, including—but not limited to—those expressed on social media and those concerning abortion.[12]

Critically, Southwest never sought to stay the Notice Order. Instead, fifteen days after the judgment, Southwest violated the order when it emailed flight attendants the "Recent Court Decision" notice[13] and a contemporaneous "Inflight Info On The

---

[8] ROA.23-10836.14830-35.
[9] ROA.23-10836.8565; ROA.23-10836.14846.
[10] ROA.23-10836.14747-73; 42 U.S.C. § 2000e-2(c)(1), -2(c)(3); § 2000e(j); 45 U.S.C. § 152 (Third) and (Fourth); *Steele v. Louisville & N.R. Co.,* 323 U.S. 192, 198-199, 202-203 (1944).
[11] ROA.23-10836.8921-55.
[12] ROA.23-10836.8955, ¶10.
[13] ROA.23-10836.9442.

Go" ("IIOTG") Memo.[14]

Southwest's "Recent Court Decision" notice told flight attendants that the District Court ordered it to inform them that it *does not* discriminate against their religious beliefs and practices, and failed to mention Title VII.[15] Southwest's IIOTG Memo also informed the flight attendants that Southwest terminated Carter for her religious messages concerning abortion, which it disparaged as "inappropriate, harassing, and offensive."[16] Southwest said Carter "created unnecessary tension among a workgroup," and "crossed the boundaries of acceptable behavior."[17] It also told flight attendants that the company's arbitrator backed Southwest's termination decision and called Carter's protected religious speech "repulsive and beyond the bounds of civility."[18] The IIOTG Memo instructed flight attendants that they "must adhere to Southwest's" social media policies, and conveyed that if they engaged in religious activities like Carter's, they would be subject to the same discipline.[19]

The District Court issued a Contempt Order, concluding that Southwest's IIOTG Memo, issued contemporaneously with the willfully faulty "does not discriminate" notice, violated the Notice Order to inform flight attendants that, under Title VII, Southwest may not discriminate against their religious beliefs and practices by using

---

[14] ROA.23-10836.9444.
[15] ROA.23-10836.9442.
[16] ROA.23-10836.9444.
[17] *Id.*
[18] *Id.*
[19] *Id.*

its social media policies to do so.[20] The Contempt Order requires the three Southwest attorneys responsible to attend legal training because they were at the root of the IIOTG Memo problem.[21]

## ARGUMENT

The Court should deny Southwest's Motion.  To stay an order pending appeal the movant must show (I) a *strong* likelihood of success on the merits of the order appealed; (II) irreparable injury absent a stay; (III) that the stay will not substantially injure other parties interested in the proceeding; and (IV) that the public interest favors his stay.[22] "[A] stay is not a matter of right, even if irreparable injury might otherwise result."[23] A court's "'decree creates a strong presumption of its own correctness,' which often counsels against a stay."[24] Courts grant stays pending an appeal "only in extraordinary circumstances."[25] "As the stay applicant[], [Southwest] bear[s] the burden of showing why 'extraordinary circumstances'

---

[20] ROA.23-10836.10650-51; ROA.23-10836.10657-58; ROA.23-10836.10660-63.

[21] ROA.23-10836.10662. Contrary to Southwest's suggestion that it agreed to issue notices at the outset, Southwest rejected Carter's requests to issue corrective notices, which she made prior to filing her contempt motion. SWA Mot. 19, ¶2; ROA.23-10836.9435-40; ROA.23-10836.9451-52; ROA.23-10836.10533; ROA.23-10836.9451-52; ROA.23-10836.10532-37; ROA.23-10836.10558; 10646-47; ROA.23-10836.10663-64.

[22] *See Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014); *Nken v. Holder*, 556 U.S. 418, 426 (2009).

[23] *Alliance for Hippocratic Med. v. Food & Drug Admin.*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. Apr. 12, 2023) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[24] *Alliance*, 2023 WL 2913725, at *3 (quoting *Virginian Ry. Co.*, 272 U.S. at 673).

[25] *Alliance*, 2023 WL 2913725, at *3 (quoting *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979)) (Stevens, J., in chambers) (other citations omitted).

demand that [the court] exercise discretion in [its] favor."[26] No extraordinary circumstances exist here.

## I. Southwest did not show a strong likelihood of success on the merits.

Southwest fails to show a strong likelihood of success on the merits of overturning the Contempt Order because (A) Title VII training is a commonplace civil contempt sanction within the courts' inherent powers; (B) the Contempt Order does not violate Southwest's First Amendment speech rights; and (C) Southwest's arguments about the religious discrimination judgment do not show a strong likelihood of overturning the Title VII training sanction.

### A. Title VII legal training is a commonplace civil contempt sanction within the courts' inherent powers.

Title VII training is a commonplace civil contempt sanction within the District Court's inherent powers to ensure Southwest's compliance with its Notice Order.[27] Courts have broad discretionary powers to fashion civil contempt sanctions that coerce or ensure present and future compliance with court orders.[28] The public rights

---

[26] *Alliance*, 2023 WL 2913725, at *21.

[27] *See* SWA Mot. 22.

[28] *See, e.g., United States v. Lynd*, 349 F.2d 790, 793 (5th Cir. 1965); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citation omitted); *Chicago Teachers Union v. Hudson*, 475 U.S. 292, 309 n.22 (1986) ("The judicial remedy for a proven violation of law will often include commands that the law does not impose on the community at large.") (citations omitted). *In re Bradley*, 588 F.3d 254, 265-66 (5th Cir. 2009); *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013).

that a court order seeks to protect are important measures of the remedy.[29] Title VII also gives the district court broad discretion in granting post-trial injunctive relief.[30] Importantly, the "district court must … exercise its [Title VII] discretion … to ensure that discrimination does not recur."[31] The District Court properly exercised its contempt power to ensure Southwest's and its attorneys' discrimination and misinformation regarding Title VII-protected religious liberties does not recur.

### 1. Title VII training secures Southwest's compliance by ensuring Southwest attorneys comprehend employees' Title VII-protected rights.

When a party "does not appear to comprehend" an area of the law, legal training "in the relevant subject area" is a commonplace civil sanction and an appropriate remedy.[32] Courts may order attorneys to attend specific legal training and determine which training is most appropriate for the attorneys to attend.[33] The District Court recognized that "[a]rmed with a better understanding of the legal area at issue, a contemnor can better conform its [own] conduct to the law" so that no further court intervention is necessary.[34]

---

[29] *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (citations omitted).

[30] *E.E.O.C. v. Boh Bros. Const., LLC*, No. Civ. A. 09-6460, 2011 WL 3585599, at *3 (E.D. La. Aug. 16, 2011) (citing *E.E.O.C. v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999)).

[31] *Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 660 (4th Cir. 1990) (citations omitted).

[32] ROA.23-10836.10660, 10662, 10666, 10666-67 (collecting cases); *Edmonds v. Seavey*, 379 F. App'x 62, 64-65 (2d Cir. 2010).

[33] *See Roy v. Am. Pro. Mktg.*, 117 F.R.D. 687, 693 (W.D. Okla. 1987); *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 456 (S.D.N.Y. 2011).

[34] ROA.23-10836.10666.

The District Court concluded that Southwest and its attorneys "'do[] not appear to comprehend' [the] legal concept" of employees' Title VII religious freedoms and liberties,[35] and that "Southwest's speech and actions toward employees demonstrate a chronic failure to understand the role of federal protections for religious freedom[.]"[36] Southwest's contempt "suggested that there's no such thing as Southwest's religious discrimination" and "that Southwest may, in fact, unabashedly curtail flight attendants' religious beliefs and practices expressed in their online interactions in the name of civility."[37] The District Court also found that "Southwest habitually points to its policies as a pretext for discrimination[,]" and, in the IIOTG Memo, conveyed that "firing Carter was justified because she 'did not adhere to Southwest policies.'"[38]

Thus, the District Court recognized that Title VII religious-liberty training is "a particularly apropos sanction" and "has significant probable effectiveness"[39] because it secures Southwest's compliance with the Notice Order[40] by helping Southwest and its attorneys comprehend employees' Title VII-protected religious liberties.[41] Title VII training further "'help[s] ensure that Southwest will not again

---

[35] ROA.23-10836.10662.
[36] ROA.23-10836.10644.
[37] ROA.23-10836.10655.
[38] ROA.23-10836.10661.
[39] ROA.23-10836.10661-62.
[40] ROA.23-10836.10663.
[41] ROA.23-10836.10660-63.

attempt to undermine the Court-ordered notice with another citation to its policies' like that in the IIOTG memo."[42]

While Southwest asserts the District Court did not explain what training is required[43] that is not true. The District Court explained that the training "will offer educational background on religious liberties and the workplace—a concept that Southwest has failed to grasp at any stage of this six-year-old case."[44] The District Court's orders also show the training will address the proper relationship between Title VII and company policies so that Southwest will not violate employees' Title VII-protected religious liberties in the future.[45]

### 2. Title VII training is the least severe sanction adequate to correct Southwest's misinformation and prevent it from undermining the Notice Order.

Southwest argues that Title VII training is not the least-severe sanction because it will issue the verbatim Remedial Statement.[46] Courts impose the least severe sanction adequate to correcting the contemnor's violation[47] while ensuring "full remedial relief."[48] The District Court concluded, "[M]ere reissuance [of the

---

[42] ROA.23-10836.10662; Dist. Ct. Doc. 483 at 13 (hereinafter "Stay Op. __").
[43] SWA Mot. 23.
[44] Stay Op. 15.
[45] ROA.23-10836.10660-63; Stay Op. 15. Despite Southwest's quibbles, the Contempt Order arises from Southwest's violation of notice requirements regarding employees' Title VII rights, so of course that training does not involve the First Amendment or RFRA. SWA Mot. 22-23.
[46] SWA Mot. 21-22.
[47] *See e.g.,Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993).
[48] *Fla. Steel Corp. v. N.L.R.B.*, 648 F.2d 233, 239 (5th Cir. 1981) (internal citations omitted).

Remedial Statement] would have little probable effectiveness against [the] harm [caused by Southwest's misinformation]."[49] The Remedial Statement "does nothing to ensure [Southwest's] compliance with the negative duty" not to undermine the court-ordered notice.[50]

### B. The Contempt Order does not violate Southwest's First Amendment speech rights.

The Contempt Order does not violate Southwest's First Amendment speech rights because it (1) does not sanction Southwest for disagreeing with and appealing the judgment; (2) does not contain a prior restraint or speech prohibition; and (3) does not require Southwest to hear an "ideological" message.[51]

#### 1. The Contempt Order does not sanction Southwest for disagreeing with and appealing the judgment.

Contrary to Southwest's arguments,[52] the Contempt Order does not sanction Southwest for "disagree[ing] with, and [asserting] its right to appeal, [the] decision[.]"[53] The District Court sanctioned Southwest because its IIOTG Memo undermined and violated the Notice Order to inform flight attendants that, under Title VII, it may not discriminate against them for their religious practices and

---

[49] ROA.23-10836.10655-56.
[50] Stay Op. 9.
[51] SWA Mot. 23-26.
[52] SWA Mot. 24-25, 27.
[53] SWA Mot. 24; ROA.23-10836.8955, ¶10.

beliefs—including but not limited to—those expressed on social media concerning abortion.[54]

## 2. The Contempt Order does not contain a prior restraint or speech prohibition.

Contrary to Southwest's characterizations,[55] the Contempt Order does not contain prior restraints or speech prohibitions. Southwest's First Amendment objections to the Contempt Order are unavailing because they are, in fact, untimely objections to the December 5, 2022 Notice Order. Southwest never raised any First Amendment objections to that order, and never attempted to stay that order's requirements on any grounds. "Because the Court ordered Southwest to make several communications and because Southwest did not seek a stay, Southwest limited what it could and couldn't say."[56] Courts may enjoin and proscribe certain conduct "without reference to the content of the … speech.[57]

Contrary to Southwest's arguments, nothing in the Contempt Order "transform[s]" the judgment into a prior restraint.[58] The Contempt Order only requires Southwest to "do the training and issue the remedial notice."[59] Southwest

---

[54] ROA.23-10836.8955, ¶10.
[55] SWA Mot. 25.
[56] Stay Op. at 6.
[57] *R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) (citing 42 U.S.C. § 2000e-2) (other citations omitted); *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986)); *see also Test Masters Educ. Servs. Inc.*, 428 F.3d at 580 (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).
[58] SWA Mot. 24.
[59] Stay Op. 15.

agreed to issue the remedial notice.[60] The District Court expressly recognized that Southwest, in complying with the Contempt Order, "remains free to speak."[61] Nor does the Title VII training requirement superintend or restrain Southwest's speech.[62] Title VII legal training does not tell Southwest or its attorneys what views it must hold.[63]

### 3. Title VII training does not require Southwest to hear an "ideological" message.

Contrary to Southwest's arguments,[64] Title VII training does not raise any First Amendment concerns because it does not require Southwest's attorneys to listen to an "ideological" message. The Contempt Order requires the three Southwest attorneys who willfully violated the Court's Notice Order and who "chronically fail" to comprehend Title VII-protected religious liberties, to attend training with Alliance Defending Freedom ("ADF") on what the Title VII law is, not normative training on what the law should be.[65]

As the District Court recognized, Southwest never raised any First Amendment objection to ADF conducting the training.[66] While Southwest asserted that ADF

---

[60] ROA.23-10836.10690.
[61] Stay Op. 15.
[62] SWA Mot. 25.
[63] SWA Mot. 22.
[64] SWA Mot. 25-26.
[65] ROA.23-10836.10661-63; Stay Op. 17, 17 n.56.
[66] *See OOGC Am., L.L.C. v. Chesapeake Expl.*, 975 F.3d 449, 456 n.10 (5th Cir. 2020); Stay Op. 16, 16 n.56. SWA Mot. 26; ROA.23-10836.10690.

training is "unprecedented," it did not present any First Amendment arguments or objections.[67] Here, Southwest's Motion raises a different perfunctory objection (not made below), without showing how attending legal training with ADF implicates Southwest's or its attorney's First Amendment interests.[68]

Southwest cites a single law journal article,[69] which, in fact, shows there is no First Amendment issue with Title VII compliance training. "[M]ost training programs designed to combat discrimination in the workplace easily survive *strict scrutiny*" and that such goals "are consistent with and are indeed required by laws like Title VII … and clearly represent a *compelling state interest*."[70] "[P]rograms providing information about what is permissible and impermissible under the law are well tailored to achieve these goals[.]"[71] "[P]rogram[s] focus[ing] on compliance with anti-discrimination law" are constitutional.[72]

The Fifth Circuit has recognized the Supreme Court's holding that "attorney speech may be subject to diminished First Amendment protection when it is regulated in furtherance of a substantial governmental interest[.]"[73] The District

---

[67] ROA.23-10836.10690.
[68] SWA Mot. 26.
[69] *Id*.
[70] Caroline M. Corbin, The First Amendment Right Against Compelled Listening, 89 B.U. L. Rev. 939, 1013 (2009) (emphasis added).
[71] *Id*. at 1013.
[72] *Id*. at 1015.
[73] *Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 756 (5th Cir. 2008); *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071-1076 (1991).

13

Court recognized that its Notice Order served a *compelling* interest in informing flight attendants of their Title VII-protected rights.[74] The District Court selected ADF because "Southwest does not appear to understand how federal law operates to protect its employees' religious liberties,"[75] and ADF's extensive Title VII litigation experience[76] "evidenc[es] an understanding of religious liberties."[77]

While Southwest objects to sending its attorneys to ADF for legal training,[78] Southwest failed to show that ADF attorneys, as officers of the court, cannot perform legal training without interjecting their faith. Southwest suggests that courts must exclude ADF because its attorneys may have religious beliefs, but courts cannot exclude law firms, persons, or organizations from providing legal training or services just because they have religious views.[79]

### C. Southwest's arguments about the religious discrimination judgment do not show a strong likelihood of overturning the Title VII training sanction.

Southwest must show a strong likelihood of overturning the Title VII training sanction (the only part of the Contempt Order its motion opposes), not a strong likelihood of overturning the jury's religious discrimination verdict and judgment.

---

[74] ROA.23-10836.10657.
[75] Stay Op. 17; ROA.23-10836.10644, 10660-63.
[76] ROA.23-10836.10663.
[77] *Id.*
[78] SWA Mot. 26.
[79] *See e.g., Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017) (holding that state department's policy of denying church an otherwise public benefit on account of its religious status violated the church's First Amendment Free Exercise rights).

When "Southwest [did not] seek a stay of [the District Court's] notice requirement … it bound itself to [promptly] comply [with the Notice Order]."[80] "[A]ll orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, *but, absent a stay, he must comply promptly with the order pending appeal*."[81] Having failed to stay the District Court's Notice Order that it violated, Southwest cannot contest that order now, to justify staying sanctions for its violation.

Even if the Court considers Southwest's likelihood of overturning the jury verdict and judgment, Southwest did not (and cannot) show a strong likelihood of success because the evidence made it clear that Southwest fired Carter in violation of Title VII, Southwest's objections regarding the undue hardship jury instructions are baseless, and *Groff* does not require a new trial.[82]

### 1. The District Court and jury correctly determined that Southwest fired Carter because of her religion.

Contrary to Southwest's characterizations,[83] Carter did not need to rely on *McDonnell Douglas* to prove that Southwest fired her because of her religious beliefs.[84] *McDonnell Douglas* "[does] not address causation standards[,]" and is

---

[80] Stay Op. at 3.

[81] *Seven Arts Filmed Ent. v. Jonesfilm*, 538 F. App'x 444, 446 (5th Cir. 2013) (emphasis in *Seven Arts*) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975); *United States Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979).

[82] ROA.23-10836.10401, 10407-08, 10411-12; ROA.23-10836.10353-54.

[83] SWA Mot. 30-33.

[84] SWA Mot. 30, 32. Even if comparator evidence were necessary, the District Court recognized

merely "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination."[85] Furthermore, when there is direct evidence of discrimination, the *McDonnell Douglas* burden-shifting paradigm for circumstantial proof is inapplicable.[86]

Title VII prohibits an employer from discharging an employee because of her "religion," which includes "all aspects of [her] religious observance and practice, as well as belief."[87] "Title VII relaxes this [but for] standard, however, to prohibit even making a protected characteristic a "motivating factor" in an employment decision."[88] Firing an employee because of her religious practice "is *synonymous* with refusing to accommodate the religious practice."[89] Employers who act with the motivation of avoiding an employee's need for accommodation also violate Title VII.[90]

As the District Court recognized,[91] Carter produced direct evidence showing that Southwest fired her because of her pro-life religious beliefs, observances, and practices.[92] Carter told Southwest Base Manager Schneider (who made the

---

that Carter did present evidence that Southwest treated her differently. ROA.23-10836.10408 n.57.

[85] *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 192 (5th Cir. 2001).

[86] *Comcast*, 140 S. Ct. at 1019.

[87] 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e(j).

[88] *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739-41 (2020); 42 U.S.C. § 2000e-2(m)*;* ROA.23-10836.8507-11.

[89] *Abercrombie*, 575 U.S. at 772 n.2 (emphasis in original).

[90] *Id*. at 772.

[91] Stay Op. 19 n.64.

[92] ROA.23-10836.14747-73, 14905-06; 14907-21, 15002-03, 15007; ROA.23-10836.12194-95

termination decision) that she sent the TWU President her videos and messages and posted them because she was a pro-life Christian, and as a Christian she believes she must get the word out to anyone who touches the issue of abortion.[93] Schneider testified that the investigation evidence demonstrated to him that Carter was exercising her religious beliefs in sending the videos and messages for which they fired her.[94] Thus, Southwest admitted and provided the direct evidence that an improper criterion—Carter's religious beliefs, observances, and practices—motivated her termination.

Southwest never disputed that it fired Carter for her religious Facebook videos and messages.[95] When an employee "requires an accommodation as an 'aspec[t] of religious … practice,' it is no response that the subsequent [discharge] was due to an otherwise-neutral policy.[96] Title VII requires otherwise-neutral policies to give way to the need for an accommodation."[97] Carter showed that she confronted Southwest with her need for a religious accommodation, and Southwest unlawfully avoided her need by firing her.[98]

---

(958:7-959:19); 12341-43 (1105:3-22, 1106:23-1107:3); ROA.23-10836.12367-68 (1131:3-1132:22); ROA.23-10836.12567 (1289:8-24); ROA.23-10836.12873 (1595:9-16); ROA.23-10836.12980-82 (1660:5-1662:8).

[93] ROA.23-10836.14905-21; ROA.23-10836.12341 (1105:11-22).

[94] ROA.23-10836.12341 (1105:11-22); ROA.23-10836.12342-43 (1106:23-1107:3); Stay. Op. 19.

[95] ROA.23-10836.15007.

[96] *Abercrombie*, 575 U.S. at 775.

[97] *Id.* at 775.

[98] ROA.23-10836.14747-73, 14905-06; 14907-21, 15002-03, 15007; 12341-43 (1105:3-22, 1106:23-1107:3); ROA.23-10836.12367-68 (1131:3-1132:22); ROA.23-10836.12567 (1289:8-24); ROA.23-10836.12873 (1595:9-16); ROA.23-10836.12980-82 (1660:5-1662:8); ROA.23-

### 2. *Groff* does not require a remand or new trial.

Southwest cannot show a strong likelihood that the Court would remand the case for a new trial because (a) there is no undue hardship consideration when the employer has not even considered a reasonable accommodation; (b) even if undue hardship was in play, Southwest failed to present evidence of financial costs and business disruption based on its own erroneous interpretation of pre-*Groff* Fifth Circuit precedent; and (c) Southwest cannot meet the *higher* undue hardship standard under *Groff v. DeJoy*, 143 S. Ct. 2279 (2023) when it could not even cross the *lower* threshold at trial.

**a.** Carter showed that Southwest is not entitled to raise an undue hardship defense because it summarily fired her without initiating any accommodations dialogue at all.[99] Having learned in the fact-finding of Carter's religious reasons for her communications, Title VII required Southwest to provide (and at least consider and evaluate a possible religious accommodation).[100] Carter showed, and Southwest never disputed, that it could have made minimal efforts to accommodate her that

---

10836.12304-08 (1068:23-1072:20).

[99] *See Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993); *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989). "The prohibition of discrimination because of religious practices is meant to force employers to consider whether those practices can be accommodated without undue hardship." *Abercrombie*, 575 U.S. at 778 (Alito, J., concurring).

[100] *Hebrew v. Tex. Dep't of Crim. Just.*, No. 22-20517, Doc. 50 at 7-8 (5th Cir. Sept. 15, 2023); ROA.23-10836.14544; ROA.23-10836.12304-08 (1068:23-1072:20); ROA.23-10836.12978-82 (1658:8-1662:8).

would not have imposed *any* undue burden.[101] Southwest avoided the issue by terminating her, which violated Title VII.

**b.** Even if an undue hardship defense applied, Southwest incorrectly argued that pre-*Groff* Fifth Circuit precedent allowed it to prove undue hardship by showing "the mere possibility of an adverse impact on co-workers" *without* any evidence of cost or disruption to business operations.[102] Pre-*Groff* Fifth Circuit precedent held that undue monetary or scheduling burdens on co-workers vis-à-vis the employer's business operations might suffice to outweigh an employee's right to religious expression in the workplace.[103] Accordingly, the jury instructions provided that "[a]n undue hardship means more than a *de minimis* cost on the conduct of the employer's business either in terms of financial costs or disruption of the business."[104] Southwest, at its peril, failed to present any such evidence.[105]

Pre-*Groff* Fifth Circuit and Supreme Court precedent put Southwest on notice that it must present some evidence of business disruption or cost. The Fifth Circuit will not remand a case for a new trial if "the need, or certainly the helpfulness, of

---

[101] ROA.23-10836.12305-08 (1069:24-1072:20); ROA.23-10836.12569 (1291:2-8); ROA.23-10836.12307-08 (1071:22-1072:20).

[102] SWA Mot. 33-34.

[103] *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 273-74 (5th Cir. 2000); *Id*. at 274 (adverse impact of "skipping over" co-workers "because it unduly burdens co-workers with respect to compensation and "time off" concerns"); *Brener v. Diagnostic Ctr. Hosp.*, 671 F.2d 141, 146-47 (5th Cir. 1982) (requiring the employer to direct employees to trade shifts, which inflicted hardship on the hospital). *See also* ROA.23-10836.10402-06; Stay Op. 18.

[104] ROA.23-10836.8510-11.

[105] *Id*.

such evidence [was] reasonably apparent to ordinarily prudent counsel" at the time of trial.[106] When the party had "a fair opportunity to prove their claim and they failed to do so," the appellate court may "discern no reason to give [them] … a second chance to make out [the] case."[107]

Southwest has no evidence of "an adverse impact on co-workers" where Carter only private messaged the union president (not a co-worker) in the president's official capacity and nobody else complained to Southwest about Carter's religious videos and messages.[108] Southwest admitted at trial that Carter's Facebook communications imposed no financial harm on the company prior to her termination.[109]

**c**. Having failed to clear the lower pre-*Groff* undue hardship threshold of showing undue hardship in terms of *more than de minimis* financial costs *or* business disruption, remanding the case for a new trial under the higher *Groff* undue hardship standard would be pointless.[110] Under *Groff*, Southwest would have to show a substantial burden in the overall context of an employer's business.[111]

---

[106] *See Deffenbaugh-Williams v. Wal-Mart Sores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999) (quoting *EEOC v. Westinghouse Elec. Corp.*, 925 F.2d 619, 633 (3d Cir. 1991).

[107] *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 224 (5th Cir. 2019) (quoting *Weisgram v. Marley Co.*, 528 U.S. 440, 444 (2000*). See also United States ex rel. Rafizadeh v. Cont'l Common, Inc.*, 553 F.3d 869, 874 (5th Cir. 2008) (refusing to remand where it would be "fruitless").

[108] ROA.23-10836.14747-73.

[109] ROA.23-10836.12305 (1069:20-23).

[110] *See Wal-Mart Stores, Inc.*, 945 F.3d at 224.

[111] *Groff v. DeJoy*, 143 S. Ct. 2279, 2294, 2296 (2023).

## II. Southwest will not suffer irreparable harm without a stay.

Southwest will not be irreparably harmed by a sanction for three attorneys—who *willfully* violated the Notice Order and do not comprehend employees' Title VII-protected religious rights—to attend legal training. "[T]he irreparable injury factor asks whether 'the [stay] applicant will be irreparably injured' absent a stay[.]"[112] Southwest is not "irreparably harmed by the [] court's order, because [it] has no interest in continuing to violate the law."[113]

Southwest raises two irreparable harm arguments, but both fail. First, Southwest contends that the Contempt Order violates its First Amendment rights. That fails because Southwest could not identify any First Amendment violation.[114] Second, Southwest claims reputational harm.[115] But Southwest presented no evidence of actual or imminent reputational harm. Southwest only makes generalized arguments about the difficulty of quantifying the magnitude of *damages*, but that is irrelevant without evidence of *actual harm*.[116]

---

[112] *Alliance*, 2023 WL 2913725, at *18 (quoting *Nken*, 556 U.S at 434) (emphasis in *Alliance*).
[113] *Alliance*, 2023 WL 2913725, at *20.
[114] *See supra* at 10-14; SWA Mot. 36.
[115] SWA Mot. 36.
[116] *Id.*

## III.    Carter and other Southwest flight attendants will continue suffering substantial harm.

Southwest's IIOTG Memo (the reason for Title VII religious liberty training) harmed Carter and Southwest's flight attendants.[117] The movant must show that the requested stay will not substantially harm the opposing party or other interested parties.[118] The District Court found that Southwest's violation of the Notice Order with the IIOTG Memo "significant[ly]" harmed Carter and Southwest flight attendants, and that those harms are continuing.[119] "The flight attendants are protected by an injunction. But they don't know the effect of the injunction [and have not known for most of a year] because Southwest inverted the notice. Staying any further portion of the judgment only serves to continue the confusion Southwest has sown."[120]

## IV.    The public interest favors denying the stay.

Contrary to Southwest's arguments,[121] the public interest weighs heavily in favor of denying the stay so Southwest immediately complies with the Notice Order. "[T]here is no public interest in the perpetuation of illegality."[122] Preventing parties who subvert court orders from continued court order violations in the future "is an

---

[117] SWA Mot. 37.
[118] *Alliance*, 2023 WL 2913725, at *19.
[119] ROA.23-10836.10655; ROA.23-10836.10660; ROA.23-10836.10655.
[120] Stay Op. 17.
[121] SWA Mot. 37.
[122] *Alliance*, 2023 WL 2913725, at *20 (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022).

important public interest."[123] The public interest weighs in favor of enforcing court orders until they are overturned. The public has a much greater interest in the prompt execution of court orders.[124]

## CONCLUSION

For the foregoing reasons, the Court should deny Southwest's stay request.

Dated: September 18, 2023          Respectfully Submitted,

<div style="margin-left:2em">

s/ Matthew B. Gilliam
Matthew B. Gilliam
New York Bar No. 5005996
Milton L. Chappell
District of Columbia Bar No. 936153
c/o National Right to Work Legal
  Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
mbg@nrtw.org
mlc@nrtw.org

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933

</div>

---

[123] *cf. In Re Raborn*, No. 15-10938, 2017 WL 4536090, at *4 (Bankr. M.D. La. May 9, 2017) ("[S]taying the order would serve only one interest: that of the debtor in attempting to further protract the bankruptcy to the detriment of her creditors.").
[124] *Nken*, 556 U.S. at 427.

Facsimile: (972) 771-8343

David E. Watkins
Texas Bar No. 20922000
*dwatkins@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
25 Highland Park Vlg., Ste. 100-359
Dallas, Texas 75205
Tel: 214-378-6675
Fax: 214-378-6680

*Plaintiff-Appellee/Cross-Appellant's Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2023, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<div align="right">

s/ Matthew B. Gilliam
Matthew B. Gilliam
New York Bar No. 5005996
c/o National Right to Work Legal
   Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: (703) 321-8510
Fax: (703) 321-9319
mbg@nrtw.org

*Plaintiff-Appellee/Cross-Appellant's Counsel*

</div>

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because it contains 5,193 words, excluding the part of the response exempted by Fed. R. App. P. 32(f), as counted by Microsoft Word 2016. This response also complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E) and 32(a)(5) and (6), and Fifth Circuit Rule 32.1. It was prepared using Microsoft Word 2016, and was written in proportionally spaced 14-point Times New Roman font.

s/ Matthew B. Gilliam
Matthew B. Gilliam

*Counsel for Plaintiff-Appellee/Cross-Appellant*