Nos. 23-10008, 23-10536, and 23-10836

In the

# United States Court of Appeals
## for the Fifth Circuit

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,

*Defendants-Appellants.*

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

SOUTHWEST AIRLINES CO.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 3:17-cv-02278-X,
Hon. Brantley Starr, *United States District Judge*

## REPLY IN SUPPORT OF MOTION TO STAY CONTEMPT ORDER AND UNOPPOSED REQUEST FOR ADMINISTRATIVE STAY IF NECESSARY; RELIEF REQUESTED BY SEPTEMBER 26, 2023; ORAL ARGUMENT REQUESTED

Paulo B. McKeeby
Brian K. Morris
REED SMITH LLP
2850 N. Harwood St., Ste. 1500
Dallas, TX 75201

Andrew B. Ryan
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Defendant-Appellant Southwest Airlines Co.*

## CERTIFICATE OF INTERESTED PERSONS

**Nos. 23-10008 & 23-10536,** *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Company*

**No. 23-10836,** *Charlene Carter v. Southwest Airlines Company*

## I.    Appellant Southwest Airlines

Southwest Airlines Co. is a publicly traded entity and is traded on the NYSE (LUV). The Vanguard Group has filed a Form 13G with the Securities and Exchange Commission stating that it beneficially owns more than 10% of the shares of Southwest Airlines Co. Southwest has no parent corporation, no other entity has reported holdings of over 10%, and there is not any other entity related to, or affiliated with Southwest that has a financial interest in the outcome of the claims asserted against it in this case.

## II.    Interested parties

### A.    Opposing counsel

Opposing counsel in the litigation are:

- Matthew B. Gilliam, National Right to Work Legal Defense Foundation

- Milton L. Chappell, National Right to Work Legal Defense Foundation

- Bobby G. Pryor, Pryor & Bruce

- Matthew D. Hill, Pryor & Bruce

- David E. Watkins, Jenkins & Watkins, PC

**B.    Other interested parties**

Additional firms and persons with an interest in the outcome of the litigation are:

- Cloutman & Cloutman, L.L.P.

- Law Offices of Cloutman and Greenfield, PLLC

- Kerrie Forbes, Southwest Airlines

- Chris Maberry, Southwest Airlines

- Kevin Minchey, Southwest Airlines

- Norton Rose Fulbright US LLP

- Reed Smith LLP

- Ryan Law Partners LLP

- Sheppard Mullin Richter & Hampton LLP

- Skadden, Arps, Slate, Meagher & Flom LLP

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

TABLE OF AUTHORITIES........................................................................... iv

INTRODUCTION ......................................................................................1

ARGUMENT ............................................................................................3

I.      Southwest is likely to succeed on the merits. ...........................................3

        A.      Ordering religious-liberty training exceeds the civil-
                contempt authority......................................................................3

        B.      The Contempt Order violates the First Amendment....................5

        C.      Southwest is likely to succeed in challenging the
                judgment. ...................................................................................6

                1.      Carter abandons her belief-based claim and
                        conflates belief with practice. ...............................7

                2.      The Court is likely to grant a new trial on Carter's
                        practice-based claim. ...........................................9

II.     Southwest will suffer irreparable harm. .................................................12

III.    A stay will not harm Carter, and the public interest supports a
        stay. ...........................................................................................13

CONCLUSION ........................................................................................14

CERTIFICATE OF COMPLIANCE ................................................................15

CERTIFICATE OF SERVICE .......................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Americans United for Separation of Church & State v. City of Grand Rapids*,
    922 F.2d 303 (6th Cir. 1990) ........................................................................ 13, 14

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*,
    188 F.3d 278 (5th Cir. 1999) ............................................................................. 10

*George v. Home Depot, Inc.*,
    No. 00-2616, 2001 WL 1558315 (E.D. La. Dec. 6, 2001),
    *aff'd*, 51 F. App'x 482 (5th Cir. 2002) ................................................................. 9

*George v. Home Depot, Inc.*,
    51 F. App'x 482 (5th Cir. 2002) ........................................................................ 9

*Groff v. DeJoy*,
    143 S. Ct. 2279 (2023) .................................................................. 2, 7, 10, 11, 12

*Howard v. Haverty Furniture Companies, Inc.*,
    615 F.2d 203 (5th Cir. 1980) .............................................................................. 9

*Ruiz v. Estelle*,
    650 F.2d 555 (5th Cir. 1981) ............................................................................. 13

*Tagore v. United States*,
    735 F.3d 324 (5th Cir. 2013) .............................................................................. 8

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Commission*,
    945 F.3d 206 (5th Cir. 2019) ............................................................................ 12

*Weber v. Roadway Express, Inc.*,
    199 F.3d 270 (5th Cir. 2000) .................................................................. 9, 11, 12

## CONSTITUTION AND STATUTES

U.S. Const. amend. I.................................................................... 1, 3, 5, 12, 13

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e *et seq.* ...................................................... 2, 3, 4, 5, 7, 8

    42 U.S.C. § 2000e(j) ............................................................................ 2, 7, 8

    42 U.S.C. § 2000e-2 .................................................................................. 7

## INTRODUCTION

The Court should stay the district court's unprecedented and unlawful order requiring three Southwest in-house attorneys to attend "religious-liberty training" with the ADF. That training is scheduled for September 26, 2023, so Southwest respectfully asks that the Court decide Southwest's stay motion before then or enter an administrative stay until it can decide the motion. Southwest also respectfully requests oral argument.

Southwest has satisfied all four stay factors. Southwest is likely to succeed on the merits because the Contempt Order itself exceeds the district court's civil-contempt authority and violates Southwest's First Amendment rights, and because the underlying judgment is unlikely to survive appeal.

Carter's counterarguments fail. She claims that training is a "commonplace" sanction, but she relies on the same non-civil-contempt caselaw the district court invoked. And her First Amendment arguments ignore the Contempt Order's promise to police Southwest's speech—an unconstitutional prior restraint with the only (vague) guidance left in the ADF's hands.

Carter musters no argument in support of her religious belief–based discrimination claim. The record is clear: Carter introduced *no* evidence that any Southwest employee held discriminatory animus towards Carter's

belief. Instead, Carter collapses her belief-based claim into her practice-based claim, arguing that firing her for conduct *is* firing her for belief. That's wrong. Title VII guarantees employers an undue-hardship defense for practice-based claims, 42 U.S.C. § 2000e(j), and accommodating Carter's practice of sending graphic videos to coworkers would impose significant hardship on Southwest. Plaintiffs cannot evade the undue-hardship defense by rebranding "practice" as "belief." And the district court's then-erroneous undue-hardship jury instruction requires a remand so the parties can retry the case under the standard from the intervening decision in *Groff v. DeJoy*, 143 S. Ct. 2279 (2023).

Carter also tries to save her Title VII arguments by recharacterizing her religious practice as a union dispute. But the union officer to whom she sent hostile messages was also a fellow flight attendant, and Carter's practice, as she put it, was "to get the word out," because "more and more people [need to] see what actually happens [with abortion]." ROA.23-10836.14959. Her conduct wasn't tied to her disputes with the union; accommodating Carter would mean letting her send graphic videos and hostile messages to any and all coworkers, and that accommodation would turn Southwest's workplace upside down.

Southwest satisfies the other stay factors, too. Carter concedes that First Amendment harm is irreparable, and it's obvious that sending attorneys to remedial training in this high-profile case will damage their reputations. Staying the training will not harm Carter, because those attorneys don't interact with her. And the public interest supports appellate review before rushing to enforce an unlawful and unprecedented order.

## ARGUMENT

### I.    Southwest is likely to succeed on the merits.

Southwest is likely to succeed in vacating the Contempt Order. *First*, the Order exceeds the district court's civil-contempt authority because religious-liberty training does not secure compliance with a court order, and is not the least-restrictive means of achieving any permissible civil-contempt objective. *Second*, this Court will likely overturn the jury's Title VII verdict, invalidating the Contempt Order.

### A.    Ordering religious-liberty training exceeds the civil-contempt authority.

A district court may impose civil-contempt sanctions only to (1) secure compliance with a court order or (2) compensate a party for noncompliance.

And sanctions are authorized only if they are the least restrictive means of achieving those purposes. Mot. 10.

Mandatory religious-liberty training in this context violates those principles. It neither secures compliance with the judgment nor compensates Carter—the verbatim statement does that. Mot. 11. What's more, *religious-liberty* training is not the least restrictive means to achieve compliance. Religious liberty stretches far beyond Title VII, and deputizing an advocacy group extends the sanction far beyond the least-restrictive means.

Carter says such training is "commonplace." Resp. 6-9. That's wrong. Training as a civil-contempt sanction is rare; Carter's contrary characterization repeats the district court's flawed reliance on decisions under *other* rules that allow for *punitive* sanctions. Mot. 15-16. And specifying an ideological advocacy group as the trainer is unprecedented. Neither Carter nor the district court identified a single decision taking that approach.

Carter claims training will help Southwest "comprehend employees' Title VII-protected religious liberties," Resp. 8, but that's not necessary for Southwest to issue the verbatim statement or avoid undermining it. For one thing, the IIOTG Memo did not undermine the judgment, Mot. 17; for another, unless the judgment is an unconstitutional gag order, no training is

necessary to ensure Southwest doesn't contradict the verbatim statement. And it is undisputed that none of the attorneys ordered to attend religious-liberty training harbors any discriminatory animus.

Carter also says the district court *really* meant training "regarding employees' Title VII rights" when it said "religious-liberty training." Resp. 8, 9 n.45. But that's not what *the court* said (repeatedly, ROA.23-10836.10667; Dist. Ct. Doc. 483, at 10, 13-15), apparently delegating that decisionmaking to the ADF. Mot. 12.

Finally, Carter says ADF attorneys can perform "legal training without interjecting their faith," and that the ADF cannot be "exclude[d]... just because they have religious views." Resp. 14. The legal problem isn't the trainer's faith, but that ADF is an ideological advocacy group whose stated goal is to shift religious-liberty doctrine. Mot. 12.

## B.    The Contempt Order violates the First Amendment.

The Contempt Order violates the First Amendment twice over. Mot. 12-15. *First*, the order punished Southwest for its protected speech—its refusal to "disclaim[] its view in the IIOTG Memo that its discrimination against Carter was justified by Southwest's policies." ROA.23-10836.10663. That's viewpoint discrimination: Southwest is entitled to hold, share, and

press on appeal its view that Carter's dismissal was justified (indeed, required) by Southwest's policies. *Second*, the order is an unconstitutional prior restraint because it declares a "continued partnership" to superintend Southwest's communications. ROA.23-10836.10644. Worse, the district court did not set the bounds of sanctionable speech, delegating that work to the ADF. Mot. 14-15.

Carter doesn't engage with Southwest's arguments. She simply repeats the district court's insistence that it sanctioned Southwest because it "violated the Notice Order." Resp. 10-11. But the order itself tells a different story. The court sanctioned Southwest because Southwest "maintained its belief that firing Carter was justified" and "refused to confess that federal law trumps its policies," ROA.23-10836.10661, 10663-64, making clear that the court held Southwest in contempt for disagreeing with the verdict and judgment. And beyond parroting the district court, Carter has no response to the point that the Contempt Order acts as a prior restraint. Mot. 14.

## C.    Southwest is likely to succeed in challenging the judgment.

Southwest is not *required* to show that it will succeed in the underlying suit, *contra* Resp. 14-15, but it has done so here, and if Southwest's challenge to the judgment is successful, the Contempt Order must be reversed, too.

Mot. 17-18. Title VII allows an employee to sue her employer for discriminating against her based on her religious "belief" or "practice." 42 U.S.C. §§ 2000e(j), 2000e-2. Carter brought both claims here, and the district court sent both to the jury, which found for Carter. But neither finding should survive appeal. Carter mounts no defense of her belief-based claim, and her practice-based claim must be retried because the district court's instruction was contrary to then-established law, and Southwest is entitled to present evidence to satisfy the new standard set out in *Groff*.

### 1.  Carter abandons her belief-based claim and conflates belief with practice.

Carter introduced no evidence that Southwest fired her because of her religious belief or that any Southwest employee, let alone those involved in her termination, harbored anti-Christian animus. Indeed, Carter repeatedly *disclaims* introducing any indirect evidence of discrimination. *E.g.*, Resp. 15-16. Instead, Carter claims (Resp. 16-17) she introduced "direct evidence" of belief-based discrimination by testifying that she told Southwest that she was a pro-life Christian, and that Southwest employees testified that Southwest fired her for sending videos about abortion to her coworker. But that's not direct evidence of belief-based discrimination, and Carter is conflating

religious belief and practice. Mot. 20-22. If Southwest fired Carter for that conduct, then Carter is making a *practice*-based discrimination claim, not a belief-based discrimination claim, and Southwest is entitled to raise an undue hardship defense. Otherwise, an employee could immunize *any* kind of religious conduct—even violence toward others—just by recasting the practice as a "belief" and avoiding an undue hardship defense. For instance, under Carter's theory, a plaintiff who claimed his religious practice was to carry a sword in the office (a practice this Court found posed an undue hardship) could recharacterize the claim as based on a religious belief in sword carrying. *See Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013) (undue hardship to accommodate Sikh employee who requested to wear a ceremonial sword to work). Title VII's plain text, which separately addresses belief and practice, 42 U.S.C. § 2000e(j), as well as the very existence of the undue hardship defense—not to mention common sense—forecloses that result.

Carter has no response. She merely reiterates that she was fired for sending videos and messages. Resp. 16-17. But that's a question of practice, not belief. The district court should not have submitted a belief-based claim to the jury because Carter introduced insufficient evidence as a matter of law of belief-based discrimination.

## 2.    The Court is likely to grant a new trial on Carter's practice-based claim.

The district court's undue hardship instruction was wrong, because at the time the court gave it, undue hardship included "[t]he mere possibility of an adverse impact on co-workers" from accommodating an employee's religious practice, even if it was not "quantifiable in economic terms." *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 274 (5th Cir. 2000). Indeed, in *Howard v. Haverty Furniture Companies, Inc.*, 615 F.2d 203, 206 (5th Cir. 1980), the Court underscored that "[t]he fact that [the employer] incurred no direct money cost from [the proposed accommodation] is not controlling."

District courts relied on *Weber* to grant summary judgment on religious-practice claims where accommodating the practice would harm employee morale, even though the employer "presented no evidence" of "business loss," and this Court affirmed. *E.g.*, *George v. Home Depot, Inc.*, No. 00-2616, 2001 WL 1558315, at *10 (E.D. La. Dec. 6, 2001) (citing *Weber*, 199 F.3d at 274), *aff'd*, 51 F. App'x 482 (5th Cir. 2002).

Southwest relied on *Weber*, too, and did not introduce evidence showing that accommodating Carter's practice would incur costs. But the district court ignored this Court's precedent, instructing the jury that Southwest

must show "financial costs or disruption of the business" to prove undue hardship. ROA.23-10836.13407. That was error. Mot. 22-23.

*Groff* now requires an employer to show that an accommodation "would result in substantial increased costs in relation to the conduct of [the employer's] particular business." 143 S. Ct. at 2295. But that wasn't the law under which this case was tried, so Southwest had no reason to introduce cost evidence at trial. The Court should "remand for a new trial to give parties the benefit of the new law and the opportunity to present evidence relevant to that new standard." *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 282 (5th Cir. 1999). Southwest would introduce evidence to meet that new standard.

Carter's counterarguments fail. Carter first insists that Southwest was required to consider accommodating her. Resp. 18. But Carter made clear that her religious practice was to use videos to directly confront coworkers about abortion, *see, e.g.*, ROA.23-10836.12437, and that "the only way to get the message across is for people to actually see what [abortion] is," ROA.23-10836.12630. As Southwest explained at trial, there was no reasonable way to accommodate that practice that wasn't detrimental to employee morale.

And whether Southwest could somehow reasonably accommodate that practice under *Groff* is a question for remand.

Carter's effort to "correct[] the record," Resp. 2-5, doesn't change the analysis. Carter recharacterizes her harassing messages to her coworker as a union dispute, but she fails to mention that Audrey Stone was also her *coworker*—a fellow Southwest flight attendant— and that she sent a "personal message" to Stone through Facebook. ROA.23-10836.14967. What's more, the accommodation Carter sought was not to send an isolated message to a union officer, but license to send unsolicited graphic material to colleagues. Carter told Southwest that she has a "deep, deep want to get the word out" about abortion to "more and more people [to] see what actually happens [with abortion]." *Id.* at 14959. Carter cannot repackage this case as a narrow union dispute when her claim is that her religious practice is to send graphic materials to "get the word out."

Carter also claims (Resp. 19-20) that the jury instruction was correct under pre-*Groff* precedent. But she ignores *Weber*'s holding that the "mere possibility" of harm to coworkers, even if not "quantifiable in economic terms," was hardship. *Supra* p. 9. Southwest was not "on notice" that it had to "present some evidence of business disruption or cost." Resp. 19. Carter

next observes (Resp. 20) that *Groff* raised the undue-hardship standard. That's irrelevant: Remand is required unless the appellant had "a fair opportunity to prove their claim and they failed to do so." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 224 (5th Cir. 2019) (citation omitted). Southwest did not have that fair opportunity, because, again, pre-*Groff* caselaw did not require cost evidence.

Finally, Carter misleadingly claims that Southwest "admitted at trial that Carter's Facebook communications imposed no financial harm," Resp. 20. But the testimony Carter cites indicates only that one Southwest employee was not "aware" of financial costs related *only* to Carter's public Facebook posts, Resp. 20 (citing ROA.23-10836.12305), *not* that accommodating Carter's practice of sending graphic videos to coworkers would impose no financial harm on Southwest.

## II.    Southwest will suffer irreparable harm.

Absent a stay, (1) Southwest will suffer irreparable First Amendment injuries and (2) Southwest and its attorneys will suffer irreparable reputational harms. Mot. 25.

Carter barely contests either proposition. Carter does not (and cannot) dispute that First Amendment harms are per se irreparable, *id.*, conceding

that Southwest satisfies this prong if it is likely to succeed on the merits. And although Carter says Southwest "presented no evidence of actual or imminent reputational harm," Resp. 21, she cannot refute the commonsense observation that religious-liberty training in a high-profile case "suggests to the public that Southwest, its employees, and its counsel are hostile to religion." Mot. 25.

## III.    A stay will not harm Carter, and the public interest supports a stay.

A stay will not harm Carter, because she has no stake in training for three attorneys who do not supervise her, and had no involvement in her termination. Mot. 26. Carter thus shifts the focus to "other Southwest flight attendants" she claims will benefit from the training. Resp. 22. But other flight attendants aren't "parties," *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981), to this individual employment-discrimination action, so the inquiry doesn't look to them. And Carter doesn't explain how a stay would harm other flight attendants anyway.

Finally, the public has no interest in executing an unlawful court order. The prudent course is to allow appellate review of this novel training mandate before requiring compliance. Mot. 26. Carter says that the public has a "greater interest in the prompt execution of court orders," Resp. 23, but

"[t]he public interest lies in a correct application" of the law, *Americans United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990). Speed should not trump accuracy in this important case.

## CONCLUSION

The Court should stay the Contempt Order until it resolves these consolidated appeals.

Dated: September 22, 2023

Respectfully submitted,

*/s/ Shay Dvoretzky*

Paulo B. McKeeby
Brian K. Morris
REED SMITH LLP
2850 N. Harwood St., Ste. 1500
Dallas, TX 75201

Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Defendant-Appellant Southwest Airlines Co.*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that (1) this reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because, as calculated by Microsoft Word, it contains 2,600 words, excluding the parts of the reply exempted by Federal Rule of Appellate Procedure 32(f), and (2) this reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: September 22, 2023          */s/ Shay Dvoretzky*
                                    Shay Dvoretzky

                                    *Counsel for Defendant-Appellant*
                                     *Southwest Airlines Co.*

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, I electronically filed this reply with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: September 22, 2023      */s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Defendant-Appellant*
*Southwest Airlines Co.*