Nos. 23-10008, 23-10536, and 23-10836

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

CHARLENE CARTER,
*Plaintiff-Appellee/Cross-Appellant,*

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,
*Defendants-Appellants/Cross-Appellees.*

CHARLENE CARTER,
*Plaintiff-Appellee,*

v.

SOUTHWEST AIRLINES CO.,
*Defendant-Appellants.*

On Appeal from the United States District Court for the
Northern District of Texas, No. 3:17-CV-02278-X
Hon. Brantley Starr, *United States District Judge*

## LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA'S REPLY BRIEF

Adam S. Greenfield – *Counsel for Defendant-Appellant Local 556, TWU*
Law Offices of Cloutman & Greenfield, PLLC
6217 Bryan Parkway
Dallas, TX 75214
State Bar No. 240 754 94
Email: agreenfield@candglegal.com
Phone: 214-642-7486

# **TABLE OF CONTENTS**

**Page(s)**

ARGUMENT AND AUTHORITIES. .................................................................. 3-8

I.    CARTER FIGHTS FOR NO LIMIT TO OFFENSIVE SPEECH IN THE WORKPLACE. ....................................................................................... 3-6

II.   CARTER IS STILL BLIND TO THE PAIN SHE INFLICTED ON HER FELLOW CO-WORKERS. ..................................................................... 6-8

III.  SOUTHWEST, AND SOUTHWEST ALONE, HAS AND EXERTED THEIR RIGHT TO FIRE AN EMPLOYEE, <u>NOT</u> THE UNION. ................ 8

CONCLUSION. ................................................................................................. 8-9

CERTIFICATE OF SERVICE. ......................................................................... 10

CERTIFICATE OF COMPLIANCE. . ............................................................. 11

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                 <u>Page(s)</u>

*Daimler Chrysler Corp.*,
344 NLRB 1324, 1329 (2005) ……………………………………………… 3, 4

*Held v. American Airlines, Inc.*,
No. 06-cv-4240, 2007 WL 433107
(N.D. Ill. Jan. 31, 2007) …………………………………………………….. 3, 4

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ………………………………………………… 4

*Leiser Constr., LLC,*
349 NLRB 413, 415 (2007) ………………………………………………….. 3,4

**CONSTITUTION AND STATUTES**

National Labor Relations Act,
29 U.S.C. § 151 *et seq.* ………………………………………………………. 4

Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e *et seq* …………………………………………………….. 8

Railway Labor Act, 45 U.S.C. § 151 *et seq* …………………………………... 4

# ARGUMENT AND AUTHORITY

## I. CARTER FIGHTS FOR NO LIMIT TO OFFENSIVE SPEECH IN THE WORKPLACE

As mimicked in closing argument, Carter's Response brief neither disputes her threatening statements nor her offensive and harassing videos.[1] Carter provides no supporting case law for a bright-line rule to demonstrate when offensive speech is not statutorily protected speech. Instead, Carter posits that all threatening, harassing, and offensive speech is protected—no limitations. To allow the instant jury verdict to stand, based on erroneous jury instructions, sets a dangerous precedent (especially in the current political and social climate of our country). The Union maintains as a matter of public policy, and based on an independent review by Southwest, that Carter's comments were offensive, requiring disciplinary action.

The lower court recognized this issue as "the core issue with the charge" and was debated as follows:[2]

**MR. GREENFIELD [counsel for the Union]:**

Okay. We would seek, as we requested in the informal conference, different case law language. We have provided the case of Held v. American Airlines, Lesser Construction, LLC and Daimler Chrysler Corp.

---

[1] See generally Response Brief.
[2] ROA 23-10008.12932—36.

>We believe a more proper instruction would be under section 152, Third and Fourth, but can lose protection, if the communication is vulgar, offensive, abusive, or harassing under Held.
>
>Special Circumstances can also cause the speech to lose protection under Lesser Construction. Such circumstances include situation in which the otherwise-protected activity is vulgar or obscene and may exacerbate employee tensions. Also from Lesser Construction.
>
>And then continuing on, if you find plaintiff Carter's messages to Ms. Stone to be indefensible or abusive, the protection is forfeited under Daimler Chrysler in the NLRB case.
>
>**THE COURT:** Understood.
>
>**So I will say I think this is sort of the core issue with the charge, right?** (emphasis added). Getting down to what is – what is the categories of protected conduct under the RLA.
>
>And I'm not going to speak too much on this because then I'm getting away from my general principle of not trying to throw y'all off of the jury's trail and tell you what I think is important.
>
>But based on this, I can't find a Supreme Court or a Fifth Circuit case using that language in the Railway Labor Act. Absolutely any National Labor Relations Act, what I ingrafted in. I know under Konop, they had a question in a footnote where they said they might, looking at a Fifth Circuit National Labor Relations Act case.
>
>I don't see a basis to ingraft it from a National Labor Relations Act over to a Railway Labor Act, unless it is necessary.
>
>And from what I can tell, the reason Congress used different language is, the NLRA was really talking about context where you might have a union, and the RLA was talking about context where you will have a union.
>
>So I think it is basically making it as if it is the Government, right? The Government saying you will have a union in these transportation contexts. And as a result of that, it is almost like you are speaking to your Government.
>
>So what protected speech do you have? Well, you can't say knowingly false things about Government officials and you can't threaten your Government officials.
>
>But that separate category we find in the National Labor Relations Act where you might have a union, that level of additional

> protection is not there against where you will have a union just like I is no here where you will have your Government.
> So that is my view from the best I can extrapolate as to why the two laws are worded differently and why I don't have a Supreme Court case of a Fifth Circuit case telling me I need this third category.
> So that is a long way of saying I will reject that request, but I appreciate you reading the language into the record for us.
>
> …
>
> **MR. MORRIS [SWA counsel]:**
>
> Your Honor, we have the same—although I was going to identify certain other categories of speech that lose protection.
>
> **THE COURT:**
>
> You should. So let's have you read your preferred language into the record, Mr. Morris.
>
> ….
>
> **MR. MORRIS:**
>
> So I guess it would be, "unless it is flagrant, violent, extreme, egregious, innapropriate, offensive, obscene, harassing, intimidating, or hostile."
>
> **THE COURT:**
>
> Understood.
>
> So I'll overrule that one for the same reasons I overruled the Union's request for similar language in section B.

The resulting jury verdict of the lower court intends to end civility in the workplace under the veil of religious liberties and Union rights. The lower court agreed, equating Union officials to the government, subsequently stripping them of

federal workplace protections, making union officials' rights subservient to their fellow employees. Notably, the Court declined multiple special instruction addressing the exact issue at hand and the slippery slope it creates.[3] The Union, however, prays this Court recognizes the verdict for what it is, nothing more than fruit fallen from the poisonous tree. An improper jury instruction. A case that should have been dismissed as a matter of law.

## II.  CARTER IS STILL BLIND TO THE PAIN SHE INFLICTED ON HER FELLOW CO-WORKERS.

In closing arguement, Carter's counsel focused on the jury instructions and the notion that Carter's conduct was "protected speech" even if it was "really offensive."[4] On rebuttal, Carter's counsel twice returned to the erroneous instruction, claiming the activity "is protected if it is intemperate, abusive, insulting, or hyperbolic,"[5] "even if it is ... as over the top as you can come up with abusive,"[6] That instruction was wrong, and Carter's counsel exploited it to great effect. A new trial is required.

Carter's Response Brief picks up where closing left off, highlighting that the RLA expressly prohibits "any limitation" on employees' freedoms of association, contains no restriction on union opposition speech and activities.[7]  Again, Carter

---

[3] See ROA 23-10008.12920 and 23-10008.12986-989.
[4] ROA.23-10836.13439.
[5] ROA.23-10836.13549.
[6] ROA.23-10836.13551-13552.
[7] See Response Brief ECF # 174 p. 84.

contends that as long as an employee can tie their caustic and abusive rhetoric and behavior to either of these causes, then all is fair and free.

Still blind to the full effect of her statements—even after herself suffering self-described excruciating emotional, spiritual, and physical pain from her own abortion—Carter repeatedly asserts that her behavior causes no workplace harm. Sending a fellow employee (the president of the Union) video of an aborted fetus, knowing the pain associated with abortion is a disregard of her own religion. Despite the teachings of childhood maxims, words can hurt. And in the case of Mrs. Carter; words, repeated "Grafic" (sic) videos of aborted fetuses; and physical threats of violence— "can't wait to see you back on line."

In fact, "can't wait to see you back on line" is an important piece of evidence as it relates to employee rights and Southwest Airline's right to govern their employees under at-will employment. There is no legal causal connection between The Union and Southwest's decision to terminate Mrs. Carter, except to the extent Ms. Stone relayed the complaint to Southwest.

While it is certainly a fact that Audrey Stone was the President of the Union at the time of events, she was also an employee of Southwest Airlines. A fact well aware to Mrs. Carter, as she was "wait[ing]" to see Ms. Stone, back in full time duties as an employee. As an employee of Southwest Airlines, Ms. Stone has rights as well, rights to be free from abuse and harassment in the workplace. Indeed, no

law exists that becoming a Union member or Union officer abdicates your own Title VII rights as an employee. Does Southwest open the door to litigation on behalf of Ms. Stone if they ignore her complaints about Ms. Carter?

**III.   SOUTHWEST, AND SOUTHWEST ALONE, HAS AND EXERTED THEIR RIGHT TO FIRE AN EMPLOYEE, <u>NOT</u> THE UNION.**

After reporting Carter's harassment to Southwest Airlines, any decisions regarding Ms. Carter's employment was theirs and theirs alone. Southwest could have dismissed Ms. Stone's complaints. The result could have been a slap on the wrist for Mrs. Carter. The result was in fact termination. Indeed, the testimony is undisputed by Southwest Airlines that they made the decision to terminate Carter's employment and that The Union did not influence that decision, ending the legal causal link. Ironically, and contrary to the idea that The Union breached their duty of fair representation to Mrs. Carter, is that The Union represented her during her termination grievance against Southwest, ultimately securing her continued employment. Nevertheless, Mrs. Carter rejected the offer. The ramifications of whether or not Southwest Airlines improperly terminated Ms. Carter cannot be imputed upon The Union.

## CONCLUSION

The alleged harm caused by The Union to Mrs. Carter, and the underlying jury verdict, is solely predicated upon the complaint, in and of itself, by Ms. Stone. If upheld, a complaint that could never have been made or be made in the future,

civility and decorum aside. An improper jury instruction. A fruit from the poisonous tree.

Dated: January 29, 2024      */s/ Adam S. Greenfield*
Adam S. Greenfield

*Counsel for Defendant-Appellant Local 556, TWU*

Law Offices of Cloutman & Greenfield, PLLC
6217 Bryan Parkway
Dallas, TX 75214
State Bar No. 240 754 94
Email: agreenfield@candglegal.com
Phone: 214-642-7486

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2024, I electronically filed this motion with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

Dated: January 29, 2024   */s/ Adam S. Greenfield*
                          Adam S. Greenfield

                          *Counsel for Defendant-Appellant Local 556, TWU*

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 1,502 words, excluding the parts of the motion exempted by FED. R. APP. P. 32(f).

2. This brief complies with the typeface requirements FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because it uses a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font for text, and 12-point font for footnotes.

3. This brief complies with the privacy-redaction requirement of Fifth Circuit Rule 25.2.13. Personal identifiers are redacted in accordance with the rules.

4. This brief complies with the electronic-submission requirement of Fifth Circuit Rule 25.2.1 because it is an exact copy of the paper document.

Dated: January 29, 2024     */s/ Adam S. Greenfield*
                              Adam S. Greenfield

                              *Counsel for Defendant-Appellant Local 556, TWU*