**Case Nos. 23-10008, 23-10536, and 23-10836**

_____

𝕴𝖓 𝖙𝖍𝖊
𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
𝖋𝖔𝖗 𝖙𝖍𝖊 𝕱𝖎𝖋𝖙𝖍 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

_____

CHARLENE CARTER,
*Plaintiff-Appellee/Cross-Appellant*,
v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,
*Defendants-Appellants/Cross-Appellees*.

CHARLENE CARTER,
*Plaintiff-Appellee*,
v.

SOUTHWEST AIRLINES CO.
*Defendant-Appellant*.

_____

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 3:17-cv-02278-X,
Hon. Brantley Starr, *United States District Judge*

_____

**CARTER'S CROSS-APPEAL REPLY BRIEF**

Matthew B. Gilliam
*Counsel of Record*
Milton L. Chappell
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
mbg@nrtw.org

Bobby G. Pryor
Matthew D. Hill, Of Counsel
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087

David E. Watkins
JENKINS & WATKINS, P.C.
25 Highland Park Vlg., Ste. 100-359
Dallas, Texas 75205

*Counsel for Plaintiff-Appellee/Cross-Appellant Charlene Carter*

## CERTIFICATE OF INTERESTED PERSONS

**Nos. 23-10008 and 23-10536,** *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Company*

**No. 23-10836,** *Charlene Carter v. Southwest Airlines Company*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.      Plaintiff-Appellee/Cross-Appellant: Charlene Carter;

2.      Counsel for the Plaintiff-Appellee/Cross-Appellant: Matthew B. Gilliam, Milton L. Chappell, Bobby G. Pryor, Matthew D. Hill, Pryor & Bruce, David E. Watkins, Jenkins & Watkins;

3.      Defendant-Appellant/Cross-Appellee: Southwest Airlines Co.;

4.      Counsel for Defendant-Appellant/Cross-Appellee Southwest Airlines Co.: Shay Dvoretzky, Parker Rider-Longmaid, Steven Marcus, Skadden, Arps, Slate, Meagher & Flom LLP, Paulo B. McKeeby, Brian Morris, Reed Smith LLP, Andrew B. Ryan, Ryan Law Partners LLP;

5.      Defendant-Appellant/Cross-Appellee: Transport Workers Union of America, Local 556;

6.      Counsel for Defendant-Appellant/Cross-Appellee Transport Workers Union of America, Local 556: Adam S. Greenfield, Cloutman &

i

Greenfield, PLLC.

/s/ Matthew B. Gilliam
Matthew B. Gilliam

*Counsel of record for Plaintiff-Appellee/Cross-Appellant*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS ........................................................................................ iii

TABLE OF AUTHORITIES ................................................................................... v

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.   Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) post-certification statutory rights, and is therefore not a major, minor, or internal union dispute, and did not require her to allege any heightened animus beyond Southwest's violation of her rights .......................... 4

   A.   Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) post-certification statutory rights, and is not a major or minor dispute subject to "anti-union animus" requirements ........... 5

     1.   Federal courts exercise jurisdiction over employees' RLA post-certification statutory rights enforcement claims, without any heightened animus requirement ................................................................. 5

     2.   Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) statutory rights ..................................... 7

     3.   Carter's Count I RLA interference/coercion claim is not a major or minor dispute subject to "anti-union animus" requirements .................... 11

   B.   Southwest's demand that the Court create a heightened "animus" jurisdictional barrier to employees' exercise and enforcement of their Section 152 (Third) and (Fourth) post-certification statutory rights violates RLA text and precedent and nullifies union dissident employees' rights and protections. ............................................................. 14

     1.   The heightened "animus" jurisdictional barrier violates RLA text and precedent ....................................................................................... 14

**TABLE OF CONTENTS (cont'd)**

**Page**

    2. Southwest's "anti-union animus" requirement nullifies
        employees' rights and protections. ..........................................................16

C. Carter's Count I RLA interference/coercion claim is not an internal
   union matter because it enforces her RLA Section 152 (Third) and
   (Fourth) statutory rights as a non-member of the union for whom there
   are no internal union rights or remedies ......................................................20

II. Federal courts have applied the *Radio Officers'* rule to RLA Section 152
   because it is a common law rule with equal application to employees'
   RLA-protected statutory rights .........................................................................22

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Arthur v. United Airlines, Inc.*,
  655 F. Supp. 363 (D. Colo. 1987)......................................................24

*Ass'n of Pro. Flight Attendants v. Am. Airlines, Inc.*,
  843 F.2d 209 (5th Cir. 1988) ......................................................11, 12

*Ballew v. Cont'l Airlines, Inc.*,
  668 F.3d 777 (5th Cir. 2012) ..............................................................12

*Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R.R. Co.*,
  31 F.4th 337 (5th Cir. 2022) ........................................................*passim*

*Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Exp. & Station Emps. v. Atchison, Topoeka & Santa Fe R. Co.*,
  847 F.2d 403 (7th Cir. 1988) ........................................1, 5, 11, 13, 15

*BRAC v. Ass'n for the Benefit of Non-Contract Emps.*,
  380 U.S. 650 (1965)......................................................................*passim*

*Brady v. Trans World Airlines, Inc.*,
  401 F.2d 87 (3d Cir. 1968) ..........................................................*passim*

*CareFlite v. Off. and Prof'l Emps. Int'l Union, AFL-CIO*,
  612 F.3d 314 (5th Cir. 2010) ..............................................................12

*Carmona v. Sw. Airlines Co.*,
  536 F.3d 344 (5th Cir. 2008) ..............................................................12

*Clayton v. UAW*,
  451 U.S. 679 (1981)..............................................................................20

*Commc'ns Workers of Am. v. Beck*,
  487 U.S. 735 (1988)........................................................................4, 22

*Cunningham v. Erie R.R.*,
  358 F.2d 640 (2d Cir. 1966) ..........................................................4, 23

# TABLE OF AUTHORITIES

**CASES**                                                               **Page(s)**

*Elgin, J. & E. Ry. v. Burley,*
   325 U.S. 711 (1945).........................................................................16

*Ellis v. Bhd. of Ry., Airline and S.S. Clerks,*
   466 U.S. 435 (1984)...................................................................*passim*

*Fennessy v. Sw. Airlines,*
   91 F.3d 1359 (9th Cir. 1996) ..............................................6, 8, 12, 13

*Grimes v. BNSF Ry. Co.,*
   746 F.3d 184 (5th Cir. 2014) ...........................................................12

*Hawaiian Airlines, Inc. v. Norris,*
   512 U.S. 246 (1994)....................................................................12, 13

*Int'l Ass'n of Machinists v. Street,*
   367 U.S. 740 (1961)......................................................2, 6, 15, 17, 18

*Konop v. Hawaiian Airlines, Inc.,*
   302 F.3d 868 (9th Cir. 2002) ........................................................8, 13

*Mobil Expl. and Producing U.S., Inc. v. NLRB,*
   200 F.3d 230 (5th Cir. 1999) ..............................................................8

*Murray v. UBS Secs., LLC,*
   144 S. Ct. 445 (2024)...................................................................15, 24

*N. River Energy Corp. v. United Mine Workers of Am.,*
   664 F.2d 1184 (11th Cir. 1981) .......................................................21

*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
   567 U.S. 519 (2012)....................................................................17, 18

*NLRB v. Burnup & Sims, Inc.,*
   379 U.S. 21 (1964).................................................................2, 3, 23

# TABLE OF AUTHORITIES

**CASES**                                                      **Page(s)**

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,*
    418 U.S. 264 (1974) ............................................................8

*Pattern Makers' League v. NLRB,*
    473 U.S. 95 (1985) ...........................................................20

*Radio Officers' Union of Com. Telegraphers Union v. NLRB,*
    347 U.S. 17 (1954) ............................................2, 3, 4, 22, 23

*Renneisen v. Am. Airlines, Inc.,*
    990 F.2d 918 (7th Cir. 1993) ........................................6, 15

*Russell v. Nat'l Mediation Bd.,*
    714 F.2d 1332 (5th Cir. 1983) ....................................*passim*

*Ry. Emps.' Dep't v. Hanson,*
    351 U.S. 225 (1956) ..........................................................19

*Ry. Lab. Execs.' Ass'n v. Boston & Maine Corp.,*
    808 F.2d 150 (1st Cir. 1986) ..............................................5

*Shea v. Int'l Ass'n of Machinists and Aerospace Workers,*
    154 F.3d 508 (5th Cir. 1998) .............................2, 6, 7, 9, 21

*Steele v. Louisville & N.R. Co.,*
    323 U.S. 192 (1944) ...................................................*passim*

*Switchmen's Union of N. Am. v. NMB,*
    320 U.S. 297 (1943) ........................................................1, 6

*Texas & N.O.R. Co. v. Bhd. of Ry. & S.S. Clerks,*
    281 U.S. 548 (1930) ..........................................................6

*Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants,*
    489 U.S. 426 (1989) ....................................6, 7, 11, 12, 15

# TABLE OF AUTHORITIES

## CASES                                                          Page(s)

*United States Steel Corp. v. UMWA,*
   519 F.2d (5th Cir. 1975) ....................................................................21

*Vaca v. Sipes,*
   386 U.S. 171 (1967).............................................................................18, 21

*Virginian Ry. Co. v. Sys. Fed'n No. 40,*
   300 U.S. 515 (1937)............................................................................6, 7

## Constitution, Rules, Statutes & Other

National Labor Relations Act
   29 USC § 158(a)(3)...........................................................................3, 22, 23

The Railway Labor Act
   45 U.S.C. § 151 *et seq.* ...............................................................*passim*
   45 U.S.C. § 151 (Fifth). ....................................................................21
   45 U.S.C. § 151 (Sixth)....................................................................22
   45 U.S.C. § 151a (2). .......................................................2, 14, 17, 24
   45 U.S.C. § 151a (3). .......................................................2, 14, 17, 24
   45 U.S.C. § 152................................................................................6, 12
   45 U.S.C. § 152 (Third). ..................................................................*passim*
   45 U.S.C. § 152 (Fourth). ................................................................*passim*
   45 U.S.C. § 152 (Eleventh). ............................................2, 4, 17, 23
   45 U.S.C. § 152 (Eleventh) (d). ......................................................23

**INTRODUCTION**

Carter's Cross-Appeal brief showed that the District Court erroneously dismissed her Count I Railway Labor Act, 45 U.S.C. § 151 *et seq*. ("RLA") statutory interference and coercion claim against Southwest. Southwest's arguments in opposition are all unavailing. Southwest's sweeping assertion that all employees must show "anti-union animus" to exercise and enforce their RLA Section 152 (Third) and (Fourth statutory rights is wrong. While federal courts may look for "anti-union animus" to exercise jurisdiction over employers' and unions' major and minor disputes involving the interpretation and enforcement of a collective bargaining agreement,  adhering to long recognized Supreme Court precedent, they exercise jurisdiction over enforcement of RLA post-certification statutory rights without any heightened "animus" requirement. *See Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943); *Bhd. of Ry., Airline & S.S. Clerk. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 405 (7th Cir. 1988) ("*BRAC*"); *see also Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R.R. Co. ("BLET")*, 31 F.4th 337, 345 (5th Cir. 2022).

Southwest's purported "anti-union animus" jurisdictional barrier to employees' enforcement of their RLA Section 152 (Third) and (Fourth) post-certification union opposition, objection, and non-member rights violates well-established Fifth Circuit and Supreme Court precedent and undermines the RLA's "strong and long-standing

1

tradition of voluntary unionism," and its statutory guarantees of employees' "complete independence" in union representation matters and prohibitions against "any limitation" on employees' freedoms of association. 45 U.S.C. §§ 151a (2)-(3); 45 U.S.C. § 152 (Third) (Fourth); *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 750-51, 767 (1961); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 207-08 (1944); *Ellis v. Bhd. of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 445-46 (1984); *Shea v. Int'l Ass'n of Machinists and Aerospace Workers*, 154 F.3d 508, 513 (5th Cir. 1998).

Notwithstanding Southwest's unsuccessful efforts to distinguish the Supreme Court's *Radio Officers'* common law-derived rule that "[s]pecific proof of [Southwest's] intent is unnecessary" because firing Carter for her protected activity opposing TWU inherently interfered with and coerced Carter's exercise of RLA Section 152 (Third) and (Fourth) rights. *Radio Officers' Union of Com. Telegraphers Union v. NLRB*, 347 U.S. 17, 45, 50-51 (1954); *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 22-23 (1964); Carter Br. 86-88. "[T]he employer's liability is automatic, once it is established that the discharged employee's section 2 (Fourth) (Eleventh) statutory rights have been violated." *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 100-01 (3d Cir. 1968). The Court should reverse the District Court's February 1, 2019 dismissal of Carter's Count I RLA interference claim against Southwest and remand that claim for the District Court to enter judgment for Carter. Carter Br. 21, 42-43, 86.

**ARGUMENT**

Contrary to Southwest's arguments opposing Carter's Cross-Appeal,[1] the District Court should not have dismissed Carter's Count I RLA Section 152 (Third) and (Fourth) interference/coercion claim. (I) Southwest is wrong that all post-certification RLA claims require "anti-union animus" allegations because, as Fifth Circuit, Supreme Court, and other federal court precedent show, the "anti-union animus" requirement applies to post-certification major and minor disputes, not to Carter's RLA statutory rights enforcement claims. SWA Resp. 64. Southwest's is also mistaken that Carter's RLA claim is an internal union dispute. Carter, as a non-member of the union, had no internal union rights or remedies and could only enforce the RLA's statutory protections. SWA Resp. 54-55, 65-66.

(II) Southwest's do not refute the Supreme Court's *Radio Officers'* rule that specific proof of the employer's intent to interfere with employees' protected statutory rights is unnecessary if the employer's conduct inherently interferes with those rights—the statutory violation itself establishes that the employer intended his act's foreseeable consequences. 347 U.S. at 45, 50-51; *Burnup & Sims*, 379 U.S. at 22-23. While Southwest argues NLRA Section 8(a)(3) has no similar RLA provision, that is wrong because the Supreme Court has recognized Section 8(a)(3)

---

[1] SWA Resp. 52-55, 64-66. Southwest's Response to Carter's Cross-Appeal cites to and incorporates various arguments from SWA Resp. 52-55. Therefore, Carter replies to and cites those arguments and pages of Southwest's response brief herein. *See* SWA Resp. 65.

and RLA Section 152 (Eleventh)—the Section 152 (Fourth) proviso—are "statutory equivalents." *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 745-46 (1988) (quoting *Ellis*, 466 U.S. at 452 n.13). Furthermore, Southwest's argument is irrelevant because the Court's *Radio Officers'* rule is a *common law rule* which other federal courts of appeal have adopted in applying RLA Section 152 (Fourth). *See Brady*, 401 F.2d at 101-02; *Cunningham v. Erie R.R.*, 358 F.2d 640, 645 (2d Cir. 1966).

## I.  Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) post-certification statutory rights, and is therefore not a major, minor, or internal union dispute, and did not require her to allege any heightened animus beyond Southwest's violation of her rights.

Contrary to Southwest's characterizations,[2] the RLA does not require Carter to allege "anti-union animus" for the District Court to exercise jurisdiction over her statutory interference claim because that claim enforces her RLA Section 152 (Third) and (Fourth) rights. Therefore, Carter's RLA claim (A) is not a major or minor dispute to which the "anti-union animus" requirement applies; (B) does not require her to show any heightened "animus" as a precondition to enforcing her statutory rights beyond showing Southwest's violation; and (C) is not an internal union dispute.

---

[2] SWA Resp. 52-55, 64-66.

**A. Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) post-certification statutory rights, and is not a major or minor dispute subject to "anti-union animus" requirements.**

**1. Federal courts exercise jurisdiction over employees' RLA post-certification statutory rights enforcement claims, without any heightened animus requirement.**

Southwest is mistaken that a "post-certification cause of action is permissible *only* when the employer acts with 'anti-union animus[.]'"[3] While federal courts need "anti-union" animus to exercise jurisdiction over employers' and unions' post-certification *major and minor disputes*, federal courts also exercise jurisdiction over a separate category of RLA post-certification claims "involv[ing] violations of specific provisions of the RLA[,]" without any heightened "animus" requirement. *See Bhd. of Ry., Airline & S.S. Clerk. v. Atchison, Topeka & Santa Fe Ry. Co.*, 847 F.2d 403, 405 (7th Cir. 1988) ("*BRAC*") (citing *Ry. Lab. Execs.' Ass'n v. Boston & Maine Corp.*, 808 F.2d 150 [, 157] (1st Cir. 1986); *see also infra* at 6-7.

The Fifth Circuit and other federal courts, following "long recognized" Supreme Court precedent, have exercised jurisdiction over RLA post-certification statutory rights enforcement claims because, "'but for the general jurisdiction of the federal courts[,] there would be no remedy to enforce the statutory commands which Congress has written into the Railway Labor Act.'" *Bhd. of Locomotive Eng'rs & Trainmen v. Union Pacific R.R. Co. ("BLET")*, 31 F.4th 337, 345 (5th Cir. 2022)

---

[3] SWA Resp. 54 (emphasis added).

(quoting *Switchmen's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943); *Fennessy v. Sw. Airlines*, 91 F.3d 1359 1363 (9th Cir. 1996); *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 922-23 (7th Cir. 1993) (holding that *Switchmen*'s recognition of general jurisdiction to enforce RLA statutory rights represented "*TWA*'s jurisdictional test" and "heightened jurisdictional barrier[s] … misconstrued *TWA*") (citing *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 441, 442 (1989) ("*TWA*") (other citation omitted).

For these reasons, Fifth Circuit and Supreme Court precedent recognize that employees, including non-member union objectors like Carter, can enforce their RLA Section 152 post-certification statutory rights without any heightened "animus" allegation requirement. *See Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 773-74 (1961); *Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 207-08 (1944); *Ellis v. Bhd. of Ry., Airline and S.S. Clerks*, 466 U.S. 435, 445-46 (1984); *Tex. & N.O.R. Co. v. Bhd. of Ry. & Steamship Clerks*, 281 U.S. 548, 568-71 (1930); *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 541-52 (1937); *Switchmen's Union*, 320 U.S. at 300; *Shea v. Int'l Ass'n of Machinists and Aerospace Workers*, 154 F.3d 508, 513 (5th Cir. 1998).

### 2. Carter's Count I RLA interference/coercion claim enforces her Section 152 (Third) and (Fourth) statutory rights.

Contrary to Southwest's assertions,[4] employees' RLA Section 152 (Third) and (Fourth) rights are not limited to pre-certification union organizing. While the Supreme Court's *TWA* decision made a general observation that Section 152 (Third) and (Fourth) "primarily" address "the precertification rights and freedoms of unorganized employees[,]"[5] Fifth Circuit, Supreme Court, and other federal court precedent make it clear that those statutory provisions do not *exclusively* address precertification rights. Employees have "judicially enforceable" post-certification RLA Section 152 (Third) and (Fourth) "statutory right[s] crucial to the Act's functioning." *BLET*, 31 F.4th at 343 (citing *Virginian Ry.*, 300 U.S. at 545-46); *see also Ellis*, 466 U.S. at 445-46; *Shea*, 154 F.3d at 513.

Employees can enforce Section 152 (Third) and (Fourth) post-certification statutory rights to oppose and reject an incumbent union and its forced representation as well as their rights not to join a union and to object to paying for a union's ideological expenditures. "*[I]t is inconceivable that the right to reject collective representation vanishes entirely if the employees of a unit once choose collective representation.*" *Russell v. Nat'l Mediation Bd.*, 714 F.2d 1332, 1345 (5th Cir. 1983) (emphasis in original) (citation omitted); *Ellis*, 466 U.S. at 445-46; *Shea*, 154 F.3d

---

[4] SWA Resp. 53, 64.
[5] *TWA*, 489 U.S. at 440.

at 513; *Mobil Expl. and Producing U.S., Inc. v. NLRB*, 200 F.3d 230, 240 (5th Cir. 1999); *see also Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 279 (1974) (rejecting any distinction between union organizing efforts leading to recognition and post-recognition organizing activities); *Fennessy*, 91 F.3d at 1361-63 (holding that RLA Section 2, Fourth protected employee during a post-certification re-organizing campaign to replace one union with a different union representative); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 872-73; 881-82 (9th Cir. 2002) (recognizing that employee's critical website publications were protected RLA speech and association activity); *Brady*, 401 F.2d at 89-91, 100-02; *see also supra* at 6; *infra* at 14-15. Employees' post-certification representation, objection, and re-organization speech and association rights are just as "crucial to the [RLA's] functioning" as employee rights to organize a union. *BLET*, 31 F.4th at 343.

**a.** Carter's Count I claim enforces her RLA Section 152 (Third) and (Fourth) post-certification statutory rights. Section 152 (Third) and (Fourth) protects Carter's rights to engage in post-certification speech and activities opposing, rejecting, and changing "forced [union] representation [that] is at odds with [her] will and desires." *Russell*, 714 F.2d at 1343.[6] Section 152 (Fourth) protects Carter's

---

[6] Notwithstanding Southwest's characterizations, the Fifth Circuit's *Russell* decision dealt with employees' RLA-protected rights to reject *collective representation* by a union, not merely "the right of employee 'to reject' the right of collective bargaining." *Russell*, 714 F.2d at 1344, 1345; SWA Resp. 65-66.

"right to organize and bargain collectively through representatives of [her] own choosing" and her freedom from Southwest "deny[ing] or in any way question[ing]" her right "to join, organize, or assist in organizing the [union] of [her] choice." 45 U.S.C. § 152 (Fourth); ROA.23-10836.642 (¶78). Section 152 (Fourth) also makes it clear that "it shall be unlawful for [Southwest] to interfere in any way with the organization of its employees[.]"*Id.* Section 152 (Fourth) prohibits Southwest from "influenc[ing] or coerc[ing] [Carter and other employees] in an effort to induce them to join or remain … [union] members[,]" such as by firing non-members for voicing objections about their union representative's expenditure of dues and fees on ideological causes that they do not support. *Id.*; *see also Shea*, 154 F.3d at 513; *Ellis*, 466 U.S. at 445-46; *Brady*, 401 F.2d at 101-02.

RLA Section 152 (Third) protects Carter's rights to designate union representatives "without [Southwest's] interference, influence, or coercion[,]" and prohibits Southwest from "in any way interfer[ing] with, influenc[ing], or coerc[ing]" employees in their "choice of representatives." 45 U.S.C. § 152 (Third); ROA.23-10836.642 (¶76). Non-interference with employees' representation choices requires employers not to interfere with employees' post-certification speech and activities opposing union representatives and changing the union's representation. ROA.23-10836.643 (¶80); *see also supra* at 6-8; *infra* at 14-15.

**b**. Carter exercised her RLA Section 152 (Third) and (Fourth) rights engaging in

protected speech and activities when she sent Facebook messages to President Stone opposing the union's representation of flight attendants, including its representation of them at the Planned Parenthood Women's March. Carter Br. 26-28; ROA.23-10836.643 (¶80). Carter engaged in self-organization and representation speech and activities supporting the flight attendants' recall campaign to change the union organization's leadership and representation by removing President Stone and other TWU representatives from office. *Id.* Carter also exercised those rights, as a non-member of the union, to object to the union's use of flight attendants' dues and fees in support of ideological and religious causes at the Planned Parenthood Women's March. *Id.* Carter engaged in these speech and activities in the context of a campaign to oppose TWU's leadership, representation, and expenditures, and to change the union's leadership and representation via a recall campaign. *Id.*

The RLA prohibits Southwest from interfering "in any way" with Carter's RLA-protected speech and activities to oppose or change the union's leadership and representation and object to the union's use of dues and fees for ideological causes, but Southwest fired Carter for her speech and activities, and thereby interfered with, coerced, and denied Carter's statutory rights. Carter Br. 33-38; ROA.23-10836.643-644 (¶¶81-83).

**3. Carter's Count I RLA interference/coercion claim is not a major or minor dispute subject to "anti-union animus" requirements.**

**a**. Contrary to Southwest's assertions,[7] Carter's Count I RLA Section 152 (Third) and (Fourth) statutory rights enforcement claim is not a post-certification major or minor dispute subject to "anti-union animus" requirements. *See TWA*, 489 U.S. at 441 (applying the "anti-union animus" requirement in a major dispute); *Ass'n of Pro. Flight Attendants v. Am. Airlines, Inc.*, 843 F.2d 209, 212 (5th Cir. 1988) ("*APFA*") ("Minor disputes and major disputes that reflect aspects of the [CBA] must be channelled [sic] either exclusively or in the first instance through the System Board of Adjustment that the RLA authorizes."). "[A] major dispute involves the creation of a contract or a change in the terms of an existing contract, while a minor dispute involves the interpretation or application of an existing contract." *BRAC*, 847 F.2d at 406 (citation omitted); *BLET*, 31 F.4th at 342.

Carter's RLA claim is not a major dispute because it did not involve the creation of a CBA or a change in its terms. *See supra* at 8-10. Carter's RLA Section 152 (Third) and (Fourth) statutory rights enforcement claim is not a minor dispute because it enforces statutory rights. Federal district courts have jurisdiction to decide RLA statutory claims where "[t]he question to be answered … is whether the [employer] interfered with the employees' [RLA Section 152 statutory rights]."

---

[7] SWA Resp. 53-55, 64.

*BLET*, 31 F.4th at 345; *see also supra* at 5-6, 8-10. Carter's RLA Section 152 (Third) and (Fourth) claim raises "a statutory question," not "a contractual" question requiring anti-union animus for federal court jurisdiction. *Id*.; *Fennessy*, 91 F.3d at 1362. Carter's Section 152 (Third) and (Fourth) claim also enforces statutory rights separate and independent from the CBA. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 256, 258 (1994); *BLET*, 31 F.4th at 345; *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 191 (5th Cir. 2014); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008); *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 783-84 (5th Cir. 2012) ("[T]he assertion of any right that is not created by a CBA is … not subject to binding arbitration under the statute." (quoting *CareFlite v. Off. and Pro. Emps. Int'l Union*, 612 F.3d 314, 320–21 (5th Cir. 2010) (Dennis, J., concurring))). *See supra* at 8-10.

For post-certification major and minor disputes, federal courts require "anti-union animus" allegations because the RLA establishes a mandatory arbitration framework to facilitate unions and employers' voluntary settlement of these disputes. "Anti-union animus" allegations show that the union and employer's voluntary settlement framework has broken down. *APFA*, 843 F.2d at 211-12; *TWA*, 489 U.S. at 441.  Since Carter's RLA claim is not a major or minor dispute, the rationale for requiring "anti-union animus" allegations—processing those disputes through the RLA's arbitral mechanism—does not apply to Carter's RLA statutory rights claim.

**b.** Southwest's assertion that Carter arbitrated a claim under the CBA is misleading because Southwest fails to mention that what Carter arbitrated was a separate and independent CBA "just cause" claim, not her RLA statutory claims. Carter Br. 89-91; SWA Resp. 53-54. Carter could not and did not submit her RLA claims to the arbitrator. *See Norris*, 512 U.S. at 254-55. Even the arbitrator recognized that he could not and did not consider any of Carter's RLA speech and association rights: "[T]hat the Grievant … has exercised her Railway Labor Act … rights, [is] *not germane to my determination of just cause for her termination*." Carter Br. 91; ROA.23-10836.3156 n.2 (emphasis added).

Contrary to Southwest's suggestions,[8] Carter's arbitration of a CBA claim did not preclude her from enforcing her RLA statutory rights in federal court. *See Konop*, 302 F.3d at 881 (discussing *Fennessy*, 91 F.3d at 1362); *Norris*, 512 U.S. at 258, 261, 262. The RLA's arbitral dispute resolution framework for major and minor disputes was neither available nor effective for enforcing Carter's RLA Section 152 (Third) and (Fourth) statutory rights. *See BRAC*, 847 F.2d at 411 (citations omitted); *Brady*, 401 F.2d at 96 (recognizing that federal jurisdiction is necessary to give employees a meaningful forum for their statutory claims because the arbitration process is designed for unions and employers as opposed to an employee's dispute with both the union and employer).

---

[8] SWA Resp. 53-54.

**B. Southwest's demand that the Court create a heightened "animus" jurisdictional barrier to employees' exercise and enforcement of their Section 152 (Third) and (Fourth) post-certification statutory rights violates RLA text and precedent and nullifies union dissident employees' rights and protections.**

**1. The heightened "animus" jurisdictional barrier violates RLA text and precedent.**

Contrary to Southwest's assertions,[9] Carter's Count I RLA claim does not expand her RLA rights and protections, but, instead, enforces her existing statutory rights and protections as expressly provided for in the plain text and in accordance with well-established Fifth Circuit and Supreme Court precedent.[10] *See supra* at 5-10. To the contrary, it is Southwest's heightened "animus" jurisdictional barrier that violates RLA statutory text and precedent by restricting employees' exercise and enforcement of their Section 152 (Third) and (Fourth) post-certification rights to oppose and object to an incumbent union's representation.

The RLA "forbid[s] *any* limitation upon freedom of association among employees" and "provide[s] for the complete independence … of employees in the matter of self-organization." 45 U.S.C. § 151a (2)-(3) (emphasis added). The Fifth Circuit recognized in *Russell v. National Mediation Board* that

> the implicit message throughout the [RLA] is that the "complete independence" of the employees necessarily includes the right to reject collective representation. Indeed, the concept of "complete independence" is inconsistent with forced representation, most

---

[9] SWA Resp. 64.
[10] SWA Resp. 65.

> especially when that forced representation is at odds with employees' will and desires.

714 F.2d at 1343 (footnote omitted); *BRAC v. Ass'n for the Benefit of Non-Contract Emps.*, 380 U.S. 650, 669 n.5 (1965) ("The legislative history supports the view that the employees are to have the option of rejecting collective representation."); *see also Street*, 367 U.S. at 750-51, 767 (recognizing the RLA's "strong and long-standing tradition of voluntary unionism" and its "congressional policy of complete freedom of choice of employees to join or not to join a union"); *Renneisen*, 990 F.2d at 922-23 (recognizing how *TWA*'s "observation about [Section 152's] focus" had been misconstrued by a lower court and incorrectly "transformed … into a heightened jurisdictional barrier").

Nothing in the RLA's text or precedent imposes a heightened "animus" jurisdictional barrier to employees' enforcement of their post-certification Section 152 (Third) and (Fourth) statutory rights. *See supra* at 5-10; *see also Murray v. UBS Secs., LLC*, 144 S. Ct. 445, 456 (2024) (Alito, J., concurring) ("The [Sarbanes-Oxley Whistleblower] statute makes no mention of 'animus' or any of its synonyms, and we have no ground for adding it in as an additional, non-statutory requirement.").

Employees, including non-members like Carter, do not have to show any heightened "animus"—beyond the employer's RLA statutory violation—as a precondition to enforcing their rights and protections in federal court, as in this instance when Southwest fired Carter for speech and activities opposing the union's

representation and objecting to its use of employees' forced fees on ideological causes. *See supra* at 6-11.

### 2. Southwest's "anti-union animus" requirement nullifies employees' rights and protections.

**a.** Southwest's purported "anti-union animus" jurisdictional bar, which requires that all union dissident employees and non-members of the union allege and prove "anti-union animus" as a precondition to enforcing their Section 152 (Third) and (Fourth) post-certification statutory rights, nullifies those rights. SWA Resp. 54-55, 64. "[I]ndividual rights of employees … cannot be nullified unless Congress clearly intended such consequences." *Russell*, 714 F.2d at 1346 (citation omitted); *see id*. at 1345 (quoting *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 733-34 (1945)).[11] RLA text and precedent confirm that Congress did not intend to nullify employees' exercise and enforcement of Section 152 (Third) and (Fourth) post-certification rights. *See supra* at 5-10, 14-15.

Southwest's "anti-union animus" bar negates RLA Section 152 (Third) and (Fourth) rights that union dissident employees and non-members of the union can only exercise after a union is certified. Employees can only exercise their Section

---

[11] "We do not believe that Congress by passage of the Act intended to take away existing rights of employees, e.g., the right not to be represented, but rather that it intended to grant additional rights. No intention to deprive employees of existing rights is contained in or can even be inferred from the Act." *Russell*, 714 F.2d at 1346. "[E]mployee freedom of choice … is *not* subsumed by [collective bargaining]." *Id.* (footnote omitted).

16

152 (Third) and (Fourth) rights to oppose, reject, or change an *incumbent* union's representation *after* a union is certified. Employees also exercise their Section 152 (Fourth) and (Eleventh) rights to not join or resign from union membership and object to the union's use of compulsory fees for ideological causes *after* a union is recognized or certified.

Southwest's "anti-union animus" bar would also produce nonsensical and unlawful results. Employer *pro-union* interference with union dissident employees' post-certification objections and opposition to union representation inherently favors and protects the incumbent union, so those employees could never allege or prove the employer's "*anti-union* animus." The RLA's plain statutory text shows that Congress never intended such absurd results. 45 U.S.C. § 151a (2)-(3); 45 U.S.C. § 152 (Third) (Fourth); *supra* at 5-10, 14-15.

**b**. Southwest's "anti-union animus" bar to union dissident and non-member employees' exercise and enforcement of their post-certification Section 152 (Third) and (Fourth) rights also calls into question the RLA exclusive representation scheme's constitutionality. *See Russell*, 714 F.2d at 1341 n.10 (quoting *Street*, 367 U.S. at 749) (other citations omitted); *Steele*, 323 U.S. at 198-199; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012).[12]

---

[12] "When the validity of an act … is drawn into question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Russell*, 714 F.2d at 1341 n.10 (quoting *Street*, 367 U.S. at 749) (other citations omitted); *see also Nat'l Fed'n*

The RLA exclusive representation scheme subjects employees' individual rights to the collective rights and representation of unions. *See e.g., Steele*, 323 U.S. at 200-01. "[T]he congressional grant of a power to a union to act as exclusive bargaining representative, with its corresponding reduction in the individual rights of the employees so represented, would raise grave constitutional problems if unions were free to exercise this power" to violate employees' speech and association rights. *Vaca v. Sipes*, 386 U.S. 171, 182 (1967); *Steele*, 323 U.S. at 198. The RLA "would bear the stigma of unconstitutionality" if Congress conferred exclusive bargaining representation power on unions and authorized them "to ignore [employee] rights guaranteed by the Constitution." *Steele*, 323 U.S. at 208 (Murphy, J., concurring).

The RLA subjects unions to "constitutional limitations on [their] power to deny, restrict, destroy, or discriminate against ... [employees'] rights." *Steele*, 323 U.S. at 198. When employees like Carter are engaged in speech and activities opposing the union, those RLA Section 152 statutory rights give heightened protection to employees' rights commensurate with constitutional protection. *See e.g., Austin*, 418 U.S. at 273-74, 277. The RLA's exclusive representation scheme would be unconstitutional if employers, by disciplining or otherwise interfering with employees' rights like Southwest did to Carter, could nullify the RLA's vigorous

---

*of Indep. Bus. v. Sebelius*, 567 U.S. 519, 559 (2012) (recognizing that laws "which are not 'consist[ent] with the letter and spirit of the constitution' … are not '*proper* [means] for carrying into Execution'" Congress's exercise of legislative powers[.]'") (cleaned up).

statutory protections for employees' speech and association activities opposing the exclusive union representative and then retreat behind an insurmountable "anti-union animus" jurisdictional barrier when employees enforce their Section 152 (Third) and (Fourth) rights and protections.

Under Southwest's version of the law, the RLA would also deny non-members of the union like Carter equal protection of their speech and association rights to engage in speech and activities opposing and rejecting incumbent unions and union representation while protecting union members' speech and association rights when organizing and entrenching union representation. *See Steele*, 323 U.S. at 198 (imposing an "affirmative constitutional duty" on the exclusive representative "equally to protect [employees'] rights").

### C. Carter's Count I RLA interference/coercion claim is not an internal union matter because it enforces her RLA Section 152 (Third) and (Fourth) statutory rights as a non-member of the union for whom there are no internal union rights or remedies.

Not only does Southwest want to erase union dissident employees' rights to oppose their union's representation and advocate for its removal by baselessly claiming that they have no statutory rights after a union is first certified, Southwest also re-casts non-member employees' RLA statutory rights and protections as "internal union disputes." SWA Resp. 65-66. Southwest's shell game would leave employees who are non-members of the union, who have no rights in the union, with

no rights at all. This would make the RLA and its statutory protection of non-member employees' association rights illusory and meaningless. *See supra* at 16-19.

Contrary to Southwest's characterizations,[13] Carter's Count I RLA interference/coercion claim enforcing her Section 152 (Third) and (Fourth) statutory rights against Southwest is not an internal union matter. "'Internal union matters'" concern disputes "involving the interpretation and application of a union constitution" to or about union members. *Clayton v. UAW*, 451 U.S. 679, 688 (1981). Claims enforcing federal statutory rights and protections "extend[] far beyond internal union interests." *Id*. at 688-89 (citations omitted).

Carter's Count I RLA claim alleged that Southwest interfered with and coerced her Section 152 (Third) and (Fourth) statutory rights by terminating her for engaging in speech and activities opposing her union representation and the union's expenditure of non-members' fees on ideological causes at the Women's March. ROA.23-10836.642 (¶78). Carter's RLA claim does not involve the interpretation or application of TWU's internal constitution, bylaws, or other rules. Nor could it as Carter was not a union member.

Carter, as a nonmember of the union, had no internal union member rights, and could not and did not raise or pursue any internal union matters. *See e.g., Pattern Makers' League v. NLRB*, 473 U.S. 95, 106 n.16 (1985). But RLA Section 152

---

[13] SWA Resp. 54-55, 65.

(Third) and (Fourth) did give her rights, which Southwest interfered with and coerced in violation of federal law. Carter Br. 86-88. Therefore, the District Court had jurisdiction over Carter's Count I RLA claim.

Southwest's assertion that RLA Section 152 (Third) and (Fourth) "do not purport to give employees the right to oppose internal [union] officers"[14] is wrong. Section 152 (Third) and (Fourth) give all employees represented by a union, even non-members, the right to express opposition to union representation and the union president's actions, and the right not to join or pay for the union's ideological expenditures without interference, influence, or coercion. 45 U.S.C. § 151 (Fifth); 45 U.S.C. § 152 (Third) (Fourth); *Steele*, 323 U.S. at 198; *Vaca*, 386 U.S. at 177-78; *Shea*, 154 F.3d at 513; *Brady*, 401 F.2d at 102 (footnote omitted); *see supra* at 5-10.

Southwest asserts that "the RLA does not extend federal statutory protection to employees for opposing individual officers of their union,"[15] but that misses the point that the unions act by and through their officers. *See e.g.*, *N. River Energy Corp. v. United Mine Workers of Am.*, 664 F.2d 1184, 1190 (11th Cir. 1981) (citing *United States Steel Corp. v. UMWA*, 519 F.2d 1249, 1253 (5th Cir. 1975) (citations omitted). "The 'representative' of a craft of employees is, simply, a person or union designated to act on their behalf, to accomplish what they seek to accomplish[.]"

---

[14] SWA Resp. 54, 66.
[15] SWA Resp. 55.

*Russell*, 714 F.2d at 1341; 45 U.S.C. § 151 (Sixth). Carter communicated her objection and opposition to *the union's* representation to TWU's President, who acted for the union and led the union at the Women's March. Carter Br. 24-28.

## II. Federal courts have applied the *Radio Officers'* rule to RLA Section 152 because it is a common law rule with equal application to employees' RLA-protected statutory rights.

Carter showed that when the employer's conduct inherently interferes with, influences, or coerces an employee's RLA Section 152 (Third) and (Fourth) rights, "[s]pecific proof of intent [to influence, coerce, or interfere] is unnecessary." *See Radio Officers'*, 347 U.S. at 45, 50-51. Carter Br. 86-89. Southwest argues that the *Radio Officers'* rule does not apply to RLA Section 152 (Third) and (Fourth) because the case involved NLRA Section 8(a)(3), and the RLA does not have a provision like NLRA Section 8(a)(3). SWA Resp. 65. But that argument fails for two reasons.

First, the Supreme Court has made clear that NLRA Section 8(a)(3) and the RLA Section 152 (Eleventh) proviso to (Fourth) are "statutory equivalent[s]." *Beck*, 487 U.S. at 745-46 (quoting *Ellis*, 466 U.S. at 452 n.13); *see also Brady*, 401 F.2d at 102 (construing RLA Section 152 (Fourth) and its proviso in (Eleventh) as a functional whole); 45 U.S.C. § 152 (Eleventh) (d) (showing that Congress enacted Section 152 Eleventh as an amendment and addendum to Fourth).

Second, the Supreme Court's *Radio Officers'* rule also governs RLA Section 152 (Fourth) (Eleventh) because the Supreme Court was applying "*the common law*

*rule* that man is held to intend the foreseeable consequences of his conduct," which was not a NLRA Section 8(a)(3)-specific rule. *See Radio Officers'*, 347 U.S. at 45 (emphasis added) (citations omitted). Thus, the *Radio Officers'* rule applies to employees covered by both the NRLA and the RLA.

In fact, federal courts of appeals have applied the *Radio Officers'* "common law rule" to RLA Section 152 (Fourth) (Eleventh), and their prohibitions against employers' unlawful influence with and coercion of Section 152 (Fourth) rights. "[T]he employer's liability is automatic, once it is established that the discharged employee's section 2 (Fourth) (Eleventh) statutory rights have been violated." *Brady*, 401 F.2d at 100-01; *see also Cunningham*, 358 F.2d at 645.

The *Brady* Court of Appeals held where the employer discharges an employee for exercising RLA Section 152 statutory rights, "it will be presumed that the employer intended the foreseeable consequence of his act," and the employer will "necessarily" have violated employee's rights. *Brady*, 401 F.2d at 101. Southwest could not "overc[o]me the presumption that it intended the foreseeable consequences of its act[,]" because it never claimed that it fired Carter for some unprotected activity. *See Brady* 401 F.2d at 101; *Burnup & Sims*, 379 U.S. at 22-23; Carter Br. 35. Southwest fired Carter because it said her RLA-protected Facebook communications to President Stone—speech and activities opposing the union— violated Southwest's social media policies. ROA.23-10836.643-644 (¶¶80-83);

Carter Br. 33-38. But the point of RLA protection is that if employee activities are protected, then the employer cannot discipline or terminate the employee even if the protected activity violates the employer's social media policies. *See Arthur v. United Airlines, Inc.*, 655 F. Supp. 363, 367 (D. Colo. 1987).

Notably, RLA Section 152 (Third) and (Fourth) do not contain any "because of" requirement that would denote the employer's interference, influence, or coercion must "necessarily involve[] an intentional choice in which [the protected factor] plays some role in the employer's thinking." *Murray*, 144 S. Ct. at 457 (Alito, J., concurring). Instead, RLA Section 151a (2) prohibits "any limitation" on employees' RLA rights and freedoms of association and guarantees them "complete independence" in exercising their statutory rights while Section 152 (Third) and (Fourth) forbids employers from "in any way interfer[ing] with, influenc[ing], or coerc[ing]" and "deny[ing] or in any way question[ing]" employees' rights with respect to their unions. 45 U.S.C. § 151a (2)-(3); 45 U.S.C. § 152 (Third) (Fourth). The RLA's statutory text focuses on the effects on employee's rights, not the employer's intent.

Having established that Southwest's termination of Carter inherently interfered with and coerced her RLA Section 152 (Third) and (Fourth) rights, Southwest's "liability is automatic." *Brady*, 401 F.2d at 100-01. The District Court had jurisdiction to decide Carter's Count I RLA interference claim, and erred in

dismissing it.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court's dismissal of Carter's Count I RLA interference claim against Southwest and remand that claim for the District Court to enter judgment for Carter.

Dated: February 23, 2024                Respectfully Submitted,

s/ Matthew B. Gilliam
Matthew B. Gilliam
New York Bar No. 5005996
Milton L. Chappell
District of Columbia Bar No. 936153
c/o National Right to Work Legal
  Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
(703) 321-8510
mbg@nrtw.org
mlc@nrtw.org

Bobby G. Pryor
State Bar No. 16373720
bpryor@pryorandbruce.com
Matthew D. Hill, Of Counsel
State Bar No. 24032296
mhill@pryorandbruce.com
PRYOR & BRUCE
302 N. San Jacinto
Rockwall, TX 75087
Telephone: (972) 771-3933
Facsimile: (972) 771-8343

David E. Watkins
Texas Bar No. 20922000

*dwatkins@jenkinswatkins.com*
JENKINS & WATKINS, P.C.
25 Highland Park Vlg., Ste. 100-359
Dallas, Texas 75205
Tel: 214-378-6675
Fax: 214-378-6680

*Plaintiff-Appellee/Cross-Appellant's
Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 23, 2024, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the Court's CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Matthew B. Gilliam
Matthew B. Gilliam
New York Bar No. 5005996
c/o National Right to Work Legal
    Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22160
Tel: (703) 321-8510
Fax: (703) 321-9319
mbg@nrtw.org

*Plaintiff-Appellee/Cross-Appellant's
Counsel*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief complies with the type-volume limitations of 6,500 words, which is no more than half of the type volume specified in Rule 28.1(e)(2)(A) as authorized by Federal Rule of Appellate Procedure 28.1(e)(2)(C), because it contains 5,616 words, as counted by Microsoft Word 2016, excluding the part of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). It was prepared using Microsoft Word 2016, and was written in proportionally spaced 14-point Times New Roman font (footnotes are 12-point).

Dated: February 23, 2024
                                              s/ Matthew B. Gilliam
                                              Matthew B. Gilliam

                                              *Counsel for Plaintiff-Appellee/Cross-Appellant*