SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 NEW YORK AVENUE, N.W.
WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

DIRECT DIAL
(202) 371-7370
DIRECT FAX
(202) 661-2370
EMAIL ADDRESS
SHAY.DVORETZKY@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

April 9, 2024

Lyle W. Cayce
Clerk of the Court
U.S. Court of Appeals for the Fifth Circuit
F. Edward Herbert Building
600 S. Maestri Place
New Orleans, LA 70130

> RE: *Carter v. Local 556 et al.*; *Carter v. Southwest Airlines*, Case Nos. 23-10008, 23-10536, and 23-10836 (5th Cir.): Federal Rule of Appellate Procedure 28(j) letter regarding *In re Highland Capital Management, L.P.*, No. 22-11036 (5th Cir. Apr. 4, 2024) (slip op. (Op.) attached), vacating bankruptcy civil contempt order affirmed by district court (Starr, J., N.D. Tex.)

Dear Mr. Cayce:

*Highland* reaffirms that the "civil contempt power is limited," Op. 6, and confirms that the district court here exceeded its civil-contempt power and abused its discretion in ordering religious-liberty training, *see* Southwest Br. 73-76; Southwest Resp. & Reply (R&R) 62-63.

*Highland* reiterates that "civil contempt sanctions must be calculated either to (1) coerce the contemnor into compliance with a court order or (2) compensate another party for the contemnor's violations." Op. 6. Most relevant here, sanctions aimed to coerce compliance are lawful civil sanctions "only if they are 'conditional on the contemnor's conduct.'" *Id.* In other words, "coercive sanctions must give the contemnor an opportunity to purge the contempt." Op. 8 n.3.

1

By the same token, civil sanctions may not be used to "vindicate the authority of the court" or "to punish past conduct." Op. 9. Whenever sanctions do that, or else exceed what is "necessary to fashion a sanction calculated to coerce prospective compliance" or remedy harm to the non-movant, Op. 8 n.3; *see* Op. 6-9, they become criminal-contempt sanctions requiring special "procedural safeguards," Op. 5 & n.2. And the supposed contemnor's intentions in violating a court order are "relevant only to *criminal* contempt"—they are "irrelevant to *civil* contempt." Op. 8.

Applying those rules, *Highland* vacated a bankruptcy court contempt order—which was affirmed by the same district judge here—for exceeding the civil-contempt power. Op. 7-8. The sanctions were "punitive" because they turned on the contemnors' intent and shifted more fees than necessary to compensate given "the scope and extent of [the contemnors'] misconduct." Op. 7.

*Highland* confirms that the district court abused its discretion in ordering religious-liberty training by the ADF. *See* Southwest Br. 71-76; R&R 61-63. Training isn't necessary to coerce compliance with any order—Southwest agreed to remedy any noncompliance. Imposing the sanction anyway gave Southwest "no opportunity to purge the contempt," Op. 8 n.3, making it absolute and punitive rather than "conditional on [Southwest's] conduct," Op. 6. Indeed, there's nothing Southwest can do to avoid it. Like the sanction in *Highland*, the religious-liberty sanction is an abuse of discretion and must be vacated.

Respectfully,

Shay Dvoretzky

*Counsel for Defendant-Appellant/*
*Cross-Appellee Southwest Airlines Co.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that (1) this letter complies with the type-volume limitation of Federal Rule of Appellate Procedure 28(j) because, as calculated by Microsoft Word, the body of the letter contains 350 words, and (2) this letter complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: April 9, 2024                    */s/ Shay Dvoretzky*

                                        Shay Dvoretzky


## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 9, 2024                    */s/ Shay Dvoretzky*

                                        Shay Dvoretzky

# Addendum

*In re Highland Capital Management, L.P.*, No. 22-11036 (5th Cir. Apr. 4, 2024) (slip op.)

# United States Court of Appeals for the Fifth Circuit

---

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2024

Lyle W. Cayce
Clerk

No. 22-11036

---

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Debtor*,

THE CHARITABLE DAF FUND, L.P.; CLO HOLDCO, LIMITED; MARK PATRICK; SBAITI & COMPANY, P.L.L.C.; MAZIN A. SBAITI; JONATHAN BRIDGES,

*Appellants*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee*,

---

IN THE MATTER OF HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Debtor*,

JAMES DONDERO,

*Appellant*,

*versus*

HIGHLAND CAPITAL MANAGEMENT, L.P.,

*Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:21-CV-1974, 3:21-CV-1979

_____

Before DENNIS, ENGELHARDT, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

A bankruptcy court held Appellants in civil contempt and ordered
them to pay $239,655 in compensatory damages. The bankruptcy court
abused its discretion. We vacate and remand.

## I.

In 2019, litigation claims plunged Highland Capital Management, L.P.
into bankruptcy. James Dondero co-founded Highland and controlled it
when the firm filed its voluntary Chapter 11 petition. The bankruptcy
"provoked a nasty breakup between Highland Capital and . . . Dondero."
*Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 424 (5th Cir. 2022).
Eventually, Highland, Dondero, and an unsecured creditors' committee
entered into a settlement agreement. *Id.* at 425. Pursuant to that settlement,
Dondero relinquished control of Highland to three independent directors:
James P. Seery, Jr., John S. Dubel, and Russell Nelms. The bankruptcy court
approved the agreement.

The directors then moved the bankruptcy court to appoint Seery as
Highland's Chief Executive Officer, Chief Restructuring Officer, and
Foreign Representative. The bankruptcy court granted the motion. To
protect Seery from vexatious litigation—and this case has been full of it, *see
Highland Capital*, 48 F.4th at 426—the bankruptcy court adopted this
gatekeeping order:

> No entity may commence or pursue a claim or cause of action
> of any kind against Mr. Seery relating in any way to his role as
> the chief executive officer and chief restructuring officer of the

Debtor without the Bankruptcy Court (i) first determining after notice that such claim or cause of action represents a colorable claim of willful misconduct or gross negligence against Mr. Seery, and (ii) specifically authorizing such entity to bring such claim. The Bankruptcy Court shall have sole jurisdiction to adjudicate any such claim for which approval of the Court to commence or pursue has been granted.

ROA.1172 ("the Seery Order"). No interested party objected, so the Seery Order became final.

With Seery at the helm, Highland began untangling its estate. In late 2020, it entered into an agreement with one of its largest creditors, HarbourVest, to settle a $300 million unsecured claim. Dondero objected, but to no avail; the bankruptcy court blessed the settlement.[1]

Not content to stand down, Dondero turned to two entities he founded—the Charitable DAF Foundation and its affiliate CLO Holdco (collectively "DAF")—and DAF CEO Mark Patrick. Patrick then retained the law firm Sbaiti & Company PLLC to investigate Highland. DAF eventually filed suit against Highland in district court and alleged that Highland, through Seery, withheld material information and engaged in self-dealing related to the HarbourVest settlement.

A week after filing the initial suit, DAF moved the district court for leave to amend its complaint to add Seery as a defendant ("the Motion"). It did not have the bankruptcy court's approval to sue Seery. But DAF reasoned that permission from the district court sitting over the bankruptcy court would obviate this defect. The district court dismissed the Motion for

---

[1] CLO Holdco, a DAF-controlled entity and an Appellant in this case, also lodged an objection but withdrew it before the Bankruptcy Court ruled on the settlement.

procedural reasons the day after it was filed. Therefore, DAF never sued Seery.

After the district court's swift dismissal of the Motion, Highland moved for an order requiring DAF, the persons who authorized the Motion, and the Sbaiti Firm to show cause why they should not be held in civil contempt for violating the Seery Order. The bankruptcy court granted the motion and also required Dondero to show cause why he should not be sanctioned. It then permitted extensive discovery, *see* ROA.9761–11237, and held a lengthy evidentiary hearing, ROA.605. The bankruptcy court did so not because there was any dispute that DAF filed the Motion, but rather to consider the "explanations/rationales given by those involved . . . ." ROA.44. The bankruptcy judge was especially curious about Dondero's role.

After the hearing, the bankruptcy court determined that the Motion constituted "pursu[it] of a claim" against Seery in violation of the Seery Order. ROA.53. Accordingly, it held all parties involved in filing the Motion—DAF, Patrick, Sbaiti, Sbaiti attorneys Mazin Sbaiti and Jonathan Bridges, and James Dondero (collectively "Appellants")—in contempt and ordered them to pay Highland $239,655. In making this estimate, the bankruptcy court started by considering the expenses Highland actually incurred—namely the fees Highland paid its lawyers to litigate the contempt proceedings. But the bankruptcy court assumed Highland's submissions were "conservative," so it added over $50,000 based on mere guesswork. ROA.604–05. It declined Highland's invitation to award treble damages but imposed, *sua sponte*, a $100,000 sanction for failed appeals, apparently to deter Appellants from seeking review of its contempt order.

The district court vacated the bankruptcy court's $100,000-per-appeal sanction (without prejudice) because even Highland conceded that it was excessive. But it affirmed the remainder of the award over Appellants'

several objections. Most relevantly, Appellants argued that the sanction was punitive and thus exceeded the scope of the bankruptcy court's civil contempt powers. The district court concluded that because the bankruptcy court "expressly designed its award to compensate" Highland for the costs it incurred in litigating the contempt proceedings, the award was compensatory and therefore civil. ROA.12269 (quotation omitted).

Appellants timely appealed to this court. We have jurisdiction under 28 U.S.C. § 158(d)(1). Our review is for abuse of discretion. *See In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009). But because a court "abuses its discretion when it bases its decision on an erroneous legal conclusion," *Jeter v. Astrue*, 622 F.3d 371, 376 (5th Cir. 2010) (citation omitted), we review the bankruptcy court's conclusions of law de novo.

## II.

## A.

"Bankruptcy courts are not Article III courts." *Bradley*, 588 F.3d at 266. Therefore, "they do not necessarily possess the inherent powers of such courts." *Ibid.* So while Article III courts have the inherent power to punish violations of their orders through criminal contempt,[2] *see United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947), bankruptcy courts have only civil contempt powers because that is all Congress has given them. *See Bradley*, 588 F.3d at 266; *see also ibid.* (noting that the source of bankruptcy court's contempt powers is statutory) (citing *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 612–13 (5th Cir. 1997)); *see also* 11 U.S.C. § 105(a) ("The [bankruptcy] court may issue any order, process, or

---

[2] As long as they comply with the procedural safeguards that accompany criminal contempt proceedings. *See, e.g.*, *United States v. Puente*, 558 F. App'x 339 (5th Cir. 2013) (per curiam).

judgment that is necessary or appropriate to carry out the provisions of this title."). Accordingly, bankruptcy courts may issue contempt orders, but any contempt sanction imposed by a bankruptcy court must be civil. *See Bradley*, 588 F.3d at 266.

The civil contempt power is limited. That is because it "uniquely is liable to abuse. Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) (quotation and citations omitted). Thus, civil contempt sanctions may not have the "primary purpose" of "punish[ing] the contemnor [or] vindicat[ing] the authority of the court." *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990). Rather, they must be "remedial, and for the benefit of the complainant." *Bagwell*, 512 U.S. at 827 (quotation and citation omitted).

That means civil contempt sanctions must be calculated either to (1) coerce the contemnor into compliance with a court order or (2) compensate another party for the contemnor's violations. *See Lamar*, 918 F.2d at 566. Contempt sanctions imposed to coerce the contemnor into compliance with a court order are civil only if they are "conditional on the contemnor's conduct." *Ibid.*; *see also Bagwell*, 512 U.S. at 829 ("Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge."). Contempt sanctions imposed for compensatory purposes are civil only if they are "based upon evidence of complainant's actual loss." *United Mine Workers of Am.*, 330 U.S. at 304.

A fee-shifting sanction—the kind we are tasked with reviewing here—is supposed to be compensatory. *See Goodyear Tire & Rubber Co. v. Haeger*,

581 U.S. 101 (2017). In *Goodyear Tire*, the Court reversed the sanction in question because the district court failed to "establish a causal link[] between the litigant's misbehavior and legal fees paid by the opposing party." *Id.* at 108. The required causal link means that a bankruptcy court may shift "only those attorney's fees incurred because of the misconduct at issue." *Id.* at 109; *see ibid.* (fee shifting awards "may go no further than to redress the wronged party for losses sustained" (quotation and citation omitted)); *ibid.* (courts must "calibrate[]" fee shifting awards "to the damages caused by the bad-faith acts on which [they are] based" (quotation and citation omitted)). Absent that because-of link, the sanction is punitive rather than compensatory and hence falls outside the bankruptcy court's statutorily limited powers. Thus, if a contempt movant "would have incurred an expense" even absent the non-movant's contumacious conduct, "he has suffered no incremental harm . . . and so the court lacks a basis for shifting the expense." *Ibid.*

## B.

We start with common ground. DAF obviously could have filed the Motion in the bankruptcy court. The Seery Order specifically states that an entity may bring a covered claim with the bankruptcy court's approval. *See* ROA.1172. Thus, DAF (or any of the other Appellants for that matter) could have filed the Motion in the bankruptcy court, sought the approval of the bankruptcy judge, and committed no contempt.

It is also common ground that DAF's *only* contumacious conduct was filing the Motion in the district court as opposed to the bankruptcy court. *See* Oral Arg. at 17:05–21. We take the parties' agreement on that as dispositive of the scope and extent of Appellants' misconduct.

So the question presented is whether the bankruptcy court's sanctions award comports with *Goodyear Tire*. Both the bankruptcy judge and the

district court reasoned that the award was compensatory because it shifted expenses Highland reasonably and necessarily incurred in responding to the Motion.[3] Both courts were wrong.

Highland incurred virtually all its contempt-related expenses because the bankruptcy court permitted extensive discovery and conducted a marathon evidentiary hearing to unearth Dondero's role in filing the Motion. But Dondero's intentions were relevant only to *criminal* contempt—a sanction the bankruptcy court was powerless to impose. *See, e.g.*, *Puente*, 558 F. App'x at 341 (noting that, in criminal contempt proceedings, "the *district* court must also find . . . that the defendant exhibited willful, contumacious intent, or a reckless state of mind, at the time the prohibited conduct occurred" (emphasis added) (quotation omitted)). Dondero's intentions— and virtually all of the discovery and the bankruptcy court's mini-trial—were irrelevant to *civil* contempt. The only question in civil contempt is whether and to what extent Highland was damaged by DAF's choice to file the

_____

[3] Neither court contended the sanctions award was designed to coerce Appellants into obeying the Seery Order. *See Lamar Fin. Corp.*, 918 F.2d at 566 (noting coercion is an alternative basis for sanctions awards in bankruptcy courts). And no party before us disputes this approach. That is for good reason: coercive sanctions must give the contemnor an opportunity to purge the contempt. *Ibid.*; *see also Bagwell*, 512 U.S. at 829. And the sanctions award in this case did not do so.

Nor could the sanction be justified on the ground that the fees shifted were incurred in proceedings necessary to fashion a sanction calculated to coerce prospective compliance with the Seery Order. DAF disclosed the existence of the Seery Order in its motion to amend before the district court, and it specifically asked the district court for permission to commence a claim against Seery. Since bankruptcy courts exercise jurisdiction at the sufferance of supervising district courts, *see* 28 U.S.C. § 151, Appellants could have reasonably concluded that district court permission to commence a claim against Seery would obviate the need for bankruptcy court approval. And in any event, we can find no precedent for using sanctions to coerce a party into complying with an order the party acknowledged and sought permission to obey (even if it sought permission in the wrong forum).

Motion in the wrong forum. Neither Highland nor the bankruptcy court was permitted to seize on DAF's error and leverage it into a punitive proceeding. *See id.* at 342 (holding a punishment labeled "civil" was in fact criminal "because the sanction imposed was apparently intended to punish past conduct . . . rather than to secure future compliance or remedy some harm resulting from noncompliance" (quotation omitted)).

## C.

Highland offers two principal responses. The first came from oral argument. The second came from Highland's brief. Neither is persuasive.

Oral argument first. When pressed for any remedial purpose behind the sanctions award, Highland could only muster that a bankruptcy judge "has every right and reason to vindicate *its own authority* by finding out who is responsible for violating its orders." Oral Arg. at 19:48-55 (emphasis added). That is outcome-determinative here: We have explained that if "the purpose of the sanction is to . . . vindicate the authority of the court, the order is viewed as criminal." *Lamar Fin. Corp.*, 918 F.2d at 566. And because "bankruptcy courts lack criminal contempt power," *Bradley*, 588 F.3d at 266, they do not have inherent powers to impose sanctions for the purpose of vindicating their own authority.

Second, Highland points to unpublished opinions that have suggested bankruptcy judges have wide discretion to shift expenses incurred during civil-contempt proceedings. *See, e.g.*, *In re Skyport Glob. Commc'ns*, 661 F. App'x 835, 841 (5th Cir. 2016) ("Almost without exception it is within the discretion of the trial court to include, as an element of damages assessed against the defendant found guilty of civil contempt, the attorneys' fees incurred in the investigation and prosecution of the contempt proceedings." (citation omitted)). Of course, "[w]e are not bound by our unpublished opinions." *United States v. Escalante*, 933 F.3d 395, 402 n. 9 (5th Cir. 2019)

(citing 5TH CIR. R. 47.5.4). And in any event, these unpublished decisions predate *Goodyear Tire*, so we would be obliged to reevaluate them even if they were published. *See, e.g.*, *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792–93 (5th Cir. 2021).

But more fundamentally, our unpublished decisions did not say bankruptcy courts may shift fees to punish a party's misconduct. *Skyport*, for example, only established that civil contempt includes the power to "order the award of attorneys' fees for compensatory purposes where a party *necessarily expended* fees in bringing an action to enforce the injunction." 661 F. App'x at 841 (alteration adopted) (emphasis added) (quotation omitted) (quoting *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)). The fees awarded to Highland bore no connection to redressing DAF's decision to file the Motion in the wrong court—much less were Highland's fees "necessarily expended." *Ibid.* It is not as if the bankruptcy court awarded fees to Highland that it incurred only because it responded to the Motion in district court as opposed to bankruptcy court. Nor did Highland necessarily expend fees to enforce an injunction requiring DAF to file the Motion in the appropriate court, as in *Skyport*. So our unpublished decisions would not control in any event.

The judgment of the district court is VACATED, and the case is REMANDED. On remand, the bankruptcy court is instructed to limit any sanction award to the damages Highland suffered because DAF filed the Motion in the wrong court—*i.e.*, the expenses Highland reasonably incurred in opposing the Motion in district court, less those it would have spent opposing the Motion had it been filed in bankruptcy court.

James L. Dennis, *Circuit Judge*, dissenting:

For the reasons assigned by the district court, I would affirm the bankruptcy court's $239,655 civil compensatory sanction award in full. *Charitable DAF Fund LP v. Highland Cap. Mgmt. LP*, No. 21-1974, 2022 WL 4538466 (N.D. Tex. Sept. 28, 2022). "The bankruptcy court properly constrained its compensatory award to fees incurred during the contempt hearing, which would not have occurred in the absence of the sanctioned conduct." *Id.* at *7 n.82 (discussing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017)).

To reach a contrary conclusion, the panel majority disregards the three applicable standards of review. First, "[l]ike the district court," we are supposed to "review[] [the] bankruptcy court's findings of fact for clear error, and its legal conclusions de novo." *In re Bradley*, 588 F.3d 254, 261 (5th Cir. 2009) (citing *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997)). Second, "[w]here the district court has affirmed the bankruptcy court's factual findings," as is the case here, "we [should] only reverse if left with a firm conviction that error has been committed." *Id.* (quotation omitted). And third, "[a] bankruptcy court's assessment of monetary sanctions for contempt [should be] reviewed for abuse of discretion." *Id.* (citation omitted).

Instead, however, the majority selectively picks mere seconds of Appellee counsel's oral argument as constituting an agreement that Appellants' "*only* contumacious conduct" was filing their motion in the wrong court, suggesting that the misfiling was a mere inadvertence. *Ante*, at 7 (majority opinion) (emphasis in original). The majority then asserts that this "agreement" is "dispositive of the scope and extent of Appellants' misconduct," ignoring altogether Appellee counsel's argument that "this motion was filed in the wrong court in a very cynical and manipulative forum

shopping move." *See* Oral Argument Recording at 21:13-21:19, *Charitable DAF Fund v. Highland Capt'l Mgmt*, 22-11036 (5th Cir. Sep. 5, 2023).

I sincerely disagree with the majority. The record contains no facts or evidence indicating that Appellee's counsel agreed to such an incorrect and rhetorically disadvantageous position. Nor is there any basis for the majority's unfair implication that the bankruptcy court seized on Appellants' "error" and leveraged it into a punitive proceeding. *Ante*, at 9.

After reviewing the record and applying the standards of review required by our circuit precedents, I conclude that the bankruptcy court and the district court committed no error of law, no clear error of fact, and no abuse of discretion. For these reasons, I respectfully dissent from the majority's reversal of the bankruptcy and district courts' judgments.