Nos. 23-10008, 23-10536, and 23-10836

# In the
# United States Court of Appeals
## for the Fifth Circuit

CHARLENE CARTER,

*Plaintiff-Appellee/Cross-Appellant,*

v.

LOCAL 556, TRANSPORT WORKERS UNION OF AMERICA;
SOUTHWEST AIRLINES CO.,

*Defendants-Appellants/Cross-Appellees.*

CHARLENE CARTER,

*Plaintiff-Appellee,*

v.

SOUTHWEST AIRLINES CO.,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 3:17-cv-02278-X,
Hon. Brantley Starr, *United States District Judge*

## SOUTHWEST AIRLINES CO.'S OPPOSITION
## TO THE PETITION FOR REHEARING EN BANC

Andrew B. Ryan
RYAN LAW PARTNERS LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

Shay Dvoretzky
 *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Defendant-Appellant/Cross-Appellee Southwest Airlines Co.*

**CERTIFICATE OF INTERESTED PERSONS**

**Nos. 23-10008 & 23-10536,** *Charlene Carter v. Local 556, Transport Workers Union of America; Southwest Airlines Co.*

**No. 23-10836,** *Charlene Carter v. Southwest Airlines Co.*

## I.    Appellant Southwest Airlines Co.

Southwest Airlines Co. is a publicly traded entity and is traded on the NYSE (LUV). The Vanguard Group has filed a Form 13G with the Securities and Exchange Commission stating that it beneficially owns more than 10% of the shares of Southwest. Elliott Investment Management L.P. has filed a Schedule 13D with the Securities and Exchange Commission reporting beneficial ownership of 9.1% of outstanding shares of common stock of Southwest and economic exposure to Southwest of approximately 13.4% of common stock outstanding of Southwest. Southwest has no parent corporation, no other entity has reported beneficial holdings of over 10%, and there is no other entity related to, or affiliated with, Southwest that has a pecuniary interest in the outcome of the case.

## II.    Interested parties

### A.    Opposing counsel

Opposing counsel in the litigation are:

- Matthew B. Gilliam, National Right to Work Legal Defense Foundation

- Milton L. Chappell, National Right to Work Legal Defense Foundation

- Bobby G. Pryor, Pryor & Bruce

- Matthew D. Hill, Pryor & Bruce

- David E. Watkins, Jenkins & Watkins, PC

**B. Other interested parties**

Additional firms and persons with an interest in the outcome of the litigation are:

- Cloutman & Cloutman, L.L.P.

- Law Offices of Cloutman and Greenfield, PLLC

- Kerrie Forbes, formerly at Southwest Airlines Co.

- Chris Maberry, Southwest Airlines Co.

- Kevin Minchey, Southwest Airlines Co.

- Norton Rose Fulbright US LLP

- Reed Smith LLP

- Ryan Law Partners LLP

- Sheppard Mullin Richter & Hampton LLP

- Skadden, Arps, Slate, Meagher & Flom LLP

Dated: June 23, 2025

/s/ Shay Dvoretzky
Shay Dvoretzky

*Counsel for Defendant-Appellant/
Cross-Appellee Southwest Airlines Co.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ...................................................i

TABLE OF AUTHORITIES............................................................ vi

INTRODUCTION ...............................................................................1

STATEMENT OF THE CASE............................................................3

    A.    Legal background.............................................................3

    B.    Factual and procedural background ...............................4

ARGUMENT.......................................................................................9

I.    The panel decision does not conflict with any decision of this Court, the Supreme Court, or any other court of appeals.....................9

    A.    The panel decision aligns with Fifth Circuit, Supreme Court, and other courts of appeals' precedent.............................9

    B.    Carter's attempts to create conflict fail........................11

        1.    Carter's claims of conflict with this Court's precedent lack merit. ...........................................11

        2.    Carter's claims of conflict with other courts of appeals' decisions fail. ...........................................13

        3.    Carter's claims of conflict with Supreme Court precedent are incorrect. ........................................13

II.    The panel decision is correct, and it raises no issue of exceptional importance.................................................................15

    A.    The panel correctly held that postcertification § 152 Third and Fourth claims require, and Carter could not show, anti-union animus. ............................................................16

# TABLE OF CONTENTS
(continued)

B.    The panel decision does not raise First Amendment concerns. ...............................................................................17

CONCLUSION ...................................................................................20

CERTIFICATE OF COMPLIANCE ...................................................21

CERTIFICATE OF SERVICE ............................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Association of Flight Attendants v. Horizon Air Industries, Inc.*,
280 F.3d 901 (9th Cir. 2002) .................................................................10

*Association of Professional Flight Attendants v. American Airlines, Inc.*,
843 F.2d 209 (5th Cir. 1988) ...............................................................9, 10

*Bagnall v. Air Line Pilots Ass'n, International*,
626 F.2d 336 (4th Cir. 1980) ...............................................................13

*Brady v. Trans World Airlines, Inc.*,
401 F.2d 87 (3d Cir. 1968) ...................................................................13

*Brotherhood of Locomotive Engineers & Trainmen v.
Union Pacific Railroad (BLET)*,
31 F.4th 337 (5th Cir. 2022) ................................................ 2, 7, 8, 9,
................................................................................. 10, 11, 12, 16

*Brotherhood of Locomotive Engineers v. Kansas City Southern Railway*,
26 F.3d 787 (8th Cir. 1994) ...............................................................8, 10

*Carter v. Transport Workers Union of America*,
353 F. Supp. 3d 556 (N.D. Tex. 2019) .............................................18

*Dempsey v. Atchison, Topeka & Santa Fe Railway Co.*,
16 F.3d 832 (7th Cir. 1994) ...............................................................8, 10

*Ellis v. Board of Railway, Airline, & Steamship Clerks,
Freight Handlers, Express & Station Employes*,
466 U.S. 435 (1984) ....................................................................... 14, 15

*Hawaiian Airlines, Inc. v. Norris*,
512 U.S. 246 (1994) ..............................................................................3

*Herring v. Delta Air Lines, Inc.*,
894 F.2d 1020 (9th Cir. 1989) ........................................................ 8, 16, 17

*Home Port Rentals, Inc. v. International Yachting Group, Inc.*,
252 F.3d 399 (5th Cir. 2001) ......................................................... 10, 11

# TABLE OF AUTHORITIES

## (continued)

*International Ass'n of Machinists v. Street*,
　367 U.S. 740 (1961) ................................................................ 14, 15

*Janus v. American Federation of State, County,*
　*& Municipal Employees*,
　585 U.S. 878 (2018) .............................................................. 17, 18, 19

*Johnson v. Express One International, Inc.*,
　944 F.2d 247 (5th Cir. 1991) ..........................................................6, 7

*Klemens v. Air Line Pilots Ass'n, International*,
　736 F.2d 491 (9th Cir. 1984) ..............................................................13

*Palova v. United Airlines, Inc.*,
　No. 24-20136, 2025 WL 1571820 (5th Cir. June 4, 2025) ................. 11, 12, 13

*Renneisen v. American Airlines, Inc.*,
　990 F.2d 918 (7th Cir. 1993) ....................................................... 18, 19

*Roscello v. Southwest Airlines Co.*,
　726 F.2d 217 (5th Cir. 1984) ..........................................................7, 8

*Shea v. International Ass'n of Machinists & Aerospace Workers*,
　154 F.3d 508 (5th Cir. 1998) ..............................................................18

*Southwest Airlines Pilots Ass'n v. Southwest Airlines Co.*,
　120 F.4th 474 (5th Cir. 2024) .........................................................7, 8

*Steele v. Louisville & Nashville Railroad*,
　323 U.S. 192 (1944) ..........................................................................18

*Stepanischen v. Merchants Despatch Transportation Corp.*,
　722 F.2d 922 (1st Cir. 1983) ..............................................................13

*Switchmen's Union of North America v. National Mediation Board*,
　320 U.S. 297 (1943) ..................................................................... 14, 15

*Texas & New Orleans Railroad v. Brotherhood of*
　*Railway & Steamship Clerks*,
　281 U.S. 548 (1930) ..........................................................................15

# TABLE OF AUTHORITIES

(continued)

Page(s)

*Trans World Airlines, Inc. v. Independent Federation
of Flight Attendants (TWA),*
489 U.S. 426 (1989) ...................................................... 2, 3, 6, 7, 13, 14

*Virginian Railway Co. v. System Federation No. 40,*
300 U.S. 515 (1937) ............................................................... 14, 15

*Wightman v. Springfield Terminal Railway Co.,*
100 F.3d 228 (1st Cir. 1996) ........................................................8, 10

**CONSTITUTION, STATUTES, AND RULE**

U.S. Const. amend. I ............................................. 1, 2, 15, 17, 18, 19

Age Discrimination in Employment Act of 1967,
29 U.S.C. § 621 *et seq.* ...............................................................12

Railway Labor Act,
45 U.S.C. § 151 *et seq.* ......................................... 1, 2, 3, 5, 6,
................................................................. 7, 8, 9, 10, 11, 12,
................................................................. 13, 14, 15, 16, 17, 18, 19,

45 U.S.C. § 151 Sixth .........................................................................3

45 U.S.C. § 152 ................................................................... 13, 14

45 U.S.C. § 152 Third ........................................... 1, 2, 3, 6,
................................................................. 7, 8, 9, 10,
................................................................. 12, 13, 14, 15, 16,

45 U.S.C. § 152 Fourth ......................................... 1, 2, 3, 6,
................................................................. 7, 8, 9, 10,
................................................................. 12, 13, 14, 15, 16,

45 U.S.C. § 152 Ninth ............................................................ 14, 15

45 U.S.C. § 152 Eleventh ..................................................... 13, 14, 15,

Texas Commission on Human Rights Act,
Tex. Lab. Code Ann. § 21.001 *et seq.* ..............................................12

Fed. R. App. P. 40(b)(2) ....................................................................9

**INTRODUCTION**

Charlene Carter asks the Court to rehear en banc a unanimous ruling that § 152 Third and Fourth of the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq*., do not provide a cause of action for employees to sue their employers about internal union disputes, unless the employee shows that the employer acted with anti-union animus. That ruling adheres to longstanding Circuit precedent, doesn't conflict with any decision of the Supreme Court or another court of appeals, and doesn't raise any exceptionally important issue, as a proper understanding of the RLA and Supreme Court First Amendment precedent makes clear. The Court should deny the petition.

Carter insists that the panel decision conflicts with this Court's precedent. But this Court's earlier decisions articulate the same anti-union-animus requirement. She next claims that the ruling conflicts with decisions of other courts of appeals. But none of those decisions addresses a § 152 Third and Fourth claim—and the panel cited decisions from four other circuits that agree with the panel's ruling. Finally, Carter incorrectly claims conflict with Supreme Court precedent. With one exception, none of the decisions she cites addresses § 152 Third and Fourth, either—and the exception, a

precertification rather than a postcertification case, only proves that the circuit consensus regarding postcertification cases is correct.

The consensus is unsurprising. The RLA primarily protects *precertification* organizing, to ensure that employees can fairly select their bargaining representative without the employer's interference. *Trans World Airlines, Inc. v. Independent Federation of Flight Attendants* (*TWA*), 489 U.S. 426, 440 (1989). Once a union is certified, the RLA channels disputes into mandatory arbitration. Thus, to bring a *postcertification* § 152 Third and Fourth claim, an employee must show anti-union animus. Op. 45 (citing *Brotherhood of Locomotive Engineers & Trainmen v. Union Pacific Railroad* (*BLET*), 31 F.4th 337, 342 (5th Cir. 2022)).

Carter says the anti-union-animus requirement raises First Amendment concerns. But the First Amendment applies to *government* action; it doesn't restrict *Southwest* as a private party. What's more, Carter's fight isn't with Southwest but the union—against which she won a verdict for breach of the duty of fair representation. And Supreme Court precedent confirms that the union's duty to represent her fairly and the fact that the RLA doesn't require Carter to pay union dues mean there is no First Amendment issue.

The Court should deny the petition.

## STATEMENT OF THE CASE

### A.    Legal background

The RLA provisions Carter invoked, § 152 Third and Fourth, primarily protect the rights of employees to form a union. *TWA*, 489 U.S. at 440. When employees vote to join a labor union, they "certify" a designated bargaining representative under the RLA. Section 152 Third prohibits interference with the "designation of representatives," defined as the "labor union … designated … by … employees, to act" on their behalf. 45 U.S.C. § 151 Sixth. Section 152 Fourth prohibits employer interference with "the organization of its employees," and the employer's "induc[ing] them to join or remain or not to join or remain members of any labor organization." *Id.* § 152 Fourth. Thus, those provisions primarily address "the precertification rights and freedoms of unorganized employees." *TWA*, 489 U.S. at 440.

For workplace disputes that arise after certification—postcertification disputes—the RLA creates a "detailed procedural framework" to resolve the disputes quickly out of federal court, *id.* at 441, through "a mandatory arbitral mechanism," *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The question Carter's rehearing petition presents is whether a

postcertification claim requires the plaintiff to show that the employer acted with anti-union animus.

## B.    Factual and procedural background

**1.**    Charlene Carter began working as a Southwest flight attendant in 1996. Op. 3. The exclusive bargaining representative for Southwest flight attendants is the Transport Workers Union of America, Local 556. *Id.*

Carter vocally opposed certain Local 556 officers. *Id.* She opposed then-president Audrey Stone, supporting a recall effort and advocating for her own preferred officers. *Id.* Carter's anti-Stone activity increased in 2017, after Carter learned that some members of the union's Working Women's Committee attended the 2017 Women's March on Washington. Op. 3-5. Carter, a pro-life Christian, objected to some signs at the march. Op. 3-4. She sent Stone a series of private messages via Facebook Messenger about the march. Op. 4-5.

Carter's messages to Stone contained graphic photos, videos, and hostile language. *See id.* Carter sent Stone a message with a video showing an aborted fetus in a bowl, accusing Local 556 of "supporting this Murder." Op. 4. She told Stone: "You truly are Despicable in so many ways … by the way the RECALL is going to Happen and you are limited in the days you

will be living off of all the [Southwest flight attendants]." *Id.* When sending a picture of women wearing costumes depicting female genitalia, she threatened Stone that "[t]he RECALL [of members on the Union's executive board] is going to Happen." Op. 4-5.

Stone reported Carter's messages to her manager, and Southwest initiated an investigation. Op. 5-6. Southwest concluded that Carter's activity violated its Workplace Bullying and Hazing Policy and its Social Media Policy. Op. 7.

In accordance with the CBA, Carter, represented by Local 556, challenged her termination at a grievance hearing. *Id.* During the subsequent arbitration, the arbitrator found that Southwest had just cause to fire Carter because she had violated multiple Southwest policies. Op. 8.

**2.** Carter sued Southwest and Local 556, alleging (as relevant here) that Southwest and Local 556 interfered with her RLA-protected rights and retaliated against her for exercising those rights. Op. 9. She also alleged that Local 556 breached its duty of fair representation. *Id.*

The district court dismissed Carter's RLA interference claim, finding that Carter failed to show that Southwest acted with anti-union animus. *Id.* The case went to a jury on the remaining counts, and the jury found in

Carter's favor and the district court awarded her relief. Op. 10-11. Southwest appealed, and Carter cross-appealed the dismissal of her RLA interference claim. Op. 12.

**3.** The panel unanimously affirmed judgment against Local 556 for breaching its fiduciary duty to Carter, affirmed the dismissal of Carter's RLA interference claim, and reversed the denial of Southwest's motion for judgment as a matter of law on Carter's RLA retaliation claim. Op. 40-50, 63.

**a.** The panel first held that Carter was required, but failed, to show anti-union animus for her RLA claims against Southwest. Op. 45-48.

*i.* The panel explained that "the RLA principally funnels disputes between employees, unions, and carriers into mediation and arbitration—outside of federal court." Op. 40. Thus, to invoke federal court jurisdiction, Carter had to show that "(1) the 'dispute-resolution framework of the RLA is either ineffective or unavailable' or (2) actions were taken by the carrier with anti-union animus 'for the purpose of weakening or destroying a union.'" Op. 42.

The panel held that Carter could not satisfy either path for her RLA claims. Op. 42-48. Section 152 Third and Fourth protect "the *precertification* rights and freedoms of unorganized employees," the panel reasoned, Op. 44

(quoting *TWA*, 489 U.S. at 440), meaning "the RLA protects the employees'
right to establish a union," *id.* (quoting *Johnson v. Express One International,
Inc.*, 944 F.2d 247, 252 (5th Cir. 1991)). Those precertification protections exist
because "the effectiveness of the private dispute resolution procedures [con-
templated in the RLA] depends on the initial assurance that the employees'
putative representative is not subject to control by the employer." *Id.* (quot-
ing *TWA*, 489 U.S. at 441).

*After* certification of a union, however, federal court jurisdiction is
more limited. *See* Op. 45. The RLA provides a cause of action for "*post-certi-
fication* disputes," the panel explained, only where the employer acted "out
of 'anti-union animus'" or to "undermine the union's functionality." *Id.* In
either case, § 152 Third and Fourth allow a postcertification cause of action
because "there may have been a breakdown in the contemplated dispute res-
olution scheme," which relies on union representation without employer
interference. Op. 46. Absent that breakdown, the RLA provides no cause of
action but rather requires arbitration. Thus, the Fifth "[C]ircuit has not rec-
ognized a standalone private right of action against an employer under 45
U.S.C. § 152, Third and Fourth without a showing of anti-union animus." *Id.*
(citing *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 222 (5th Cir. 1984);

*BLET*, 31 F.4th at 340; and *Southwest Airlines Pilots Ass'n v. Southwest Airlines Co.*, 120 F.4th 474, 486 (5th Cir. 2024)).

*ii.* The panel observed that other appellate courts take the same approach, refusing to recognize "a cause of action in post-certification disputes absent [a] showing of anti-union animus or that [the] carrier sought to interfere with employees' choice of bargaining representative." Op. 46-47 (citing *Brotherhood of Locomotive Engineers v. Kansas City Southern Railway*, 26 F.3d 787, 795 (8th Cir. 1994); *Wightman v. Springfield Terminal Railway Co.*, 100 F.3d 228, 234 (1st Cir. 1996); *Dempsey v. Atchison, Topeka & Santa Fe Railway Co.*, 16 F.3d 832, 841-42 (7th Cir. 1994); *Herring v. Delta Air Lines, Inc.*, 894 F.2d 1020, 1023 (9th Cir. 1989)).

**b.** Applying that rule, the panel found that "Carter lacked a cause of action to bring" her claims against Southwest "under the RLA in federal court." Op. 48. It thus affirmed the dismissal of Carter's RLA interference claim and reversed the denial of Southwest's motion for judgment as a matter of law on Carter's retaliation claim. *Id.*

**c.** Finally, the panel affirmed judgment for Carter against Local 556 for breaching its duty of fair representation. Op. 48-50. "Aside from disputes between employees and their employer as carriers," the panel explained,

"the Supreme Court has recognized that an employee has an implied right of action to bring a claim against her union for breaching the duty of fair representation under the RLA." Op. 48. The panel found no prejudicial error in the jury instructions, noting that Carter claimed that Stone reported Carter's messages to Southwest and explaining that "[t]he law presumes unions violate the duty of fair representation by causing or attempting to cause an employee's discharge." Op. 50.

## ARGUMENT

Rehearing is not warranted. The panel decision does not conflict with any decision of this Court, the Supreme Court, or any other court of appeals; the panel decision is correct; and the issue presented is not a question of exceptional importance. *See* Fed. R. App. P. 40(b)(2).

## I. The panel decision does not conflict with any decision of this Court, the Supreme Court, or any other court of appeals.

### A. The panel decision aligns with Fifth Circuit, Supreme Court, and other courts of appeals' precedent.

The panel decision held that employees can pursue § 152 Third and Fourth claims against employers only when they show anti-union animus or carrier interference with employees' choice of bargaining representative. Op. 46-47. That aligns with Fifth Circuit precedent, which recognizes

"antiunion animus is one of the 'exceptional circumstances' that warrants federal jurisdiction." *BLET*, 31 F.4th at 345-46; *see id.* at 342 (citing *Association of Professional Flight Attendants v. American Airlines, Inc.*, 843 F.2d 209, 211 (5th Cir. 1988)). Neither this Court nor any other court of appeals has recognized a postcertification cause of action under § 152 Third and Fourth without anti-union animus or carrier interference with the designated bargaining representative. Op. 46-47; *supra* pp. 7-8. Neither has the Supreme Court.

To the contrary, other courts of appeals agree that § 152 Third and Fourth provide a cause of action only in "extremely limited circumstances" in which the carrier acts with "anti-union animus." *Wightman*, 100 F.3d at 234. In *Association of Flight Attendants v. Horizon Air Industries, Inc.*, 280 F.3d 901, 905 (9th Cir. 2002), for example, the Ninth Circuit held that "post-certi-fication RLA claims should ordinarily be limited to situations in which an employer's conduct has been motivated by anti-union animus or where cir-cumstances exist that significantly undermine the functioning of the union." The Seventh and Eighth Circuits reached the same conclusion. *See Dempsey*, 16 F.3d at 841; *Brotherhood of Locomotive Engineers*, 26 F.3d at 795. Carter's petition is a request to create, not resolve, circuit conflict. But this Court is "reluctant to create a circuit split," *Home Port Rentals, Inc. v. International*

*Yachting Group, Inc.*, 252 F.3d 399, 407 (5th Cir. 2001), and there is no reason to do so here.

**B.    Carter's attempts to create conflict fail.**

**1.    Carter's claims of conflict with this Court's precedent lack merit.**

Carter contends that two Fifth Circuit cases—*BLET* and *Palova v. United Airlines, Inc.*, No. 24-20136, 2025 WL 1571820 (5th Cir. June 4, 2025)—held that anti-union animus is required only for postcertification major and minor disputes, not claims that arise under the RLA itself. That's wrong.

*First*, *BLET* didn't involve a dispute that the Court characterized as major or minor. Rather, *BLET* addressed a standalone claim under the RLA itself—the same kind of claim Carter makes here. Major claims relate to the collective bargaining process; minor claims involve the interpretation or application of a collective bargaining agreement. *BLET*, 31 F.4th at 342. The claim in *BLET* was neither: the union argued that the railroad acted with anti-union animus when it suspended all of the union's leadership "because of a dispute they had with an employee who favored the company's position in a policy dispute." *Id.* at 347. The Court explained that "[a]nimus claims like the one at bar may be litigated in federal court because they cannot 'be

conclusively resolved' by interpreting or applying a CBA." *Id.* at 345. Instead, federal courts "have jurisdiction over postcertification disputes alleging that [employer] conduct motivated by antiunion animus is interfering with the employees' 'choice of representatives.'" *Id.* at 346.

Even if Carter were right that the claim in *BLET* was a major or minor dispute, *BLET* still wouldn't conflict with the panel decision, because a decision holding that the anti-union animus requirement applies to a major or minor dispute (Carter's reading of *BLET*) aligns with a decision holding that the anti-union-animus requirement applies to all postcertification claims under § 152 Third and Fourth (Carter's reading of the panel opinion).

In a recent Rule 28(j) letter (Doc. 272), Carter argues that the panel decision conflicts with this Court's recent decision in *Palova*. But *Palova* involved claims under the Age Discrimination in Employment Act and the Texas Commission on Human Rights Act, not the RLA. *Palova*, 2025 WL 1571820, at *1. The defendant argued that the RLA required the plaintiff to arbitrate those statutory claims, but this Court recognized that the RLA doesn't require arbitration of statutory claims unless interpretation of a CBA is required. *Id.* at *4. *Palova* thus did not address whether an RLA claim

(which the plaintiff did not bring) requires anti-union animus in the postcer-

tification context, and thus doesn't conflict with the panel decision.

### 2. Carter's claims of conflict with other courts of appeals' decisions fail.

Carter claims, without explanation, that "[t]he Panel's decision also

conflicts with other circuits' decisions that have recognized federal court ju-

risdiction for RLA § 2 [45 U.S.C. § 152] statutory rights claims." Pet. at iv.

That suggestion of circuit conflict fails. Three of the four decisions Carter

cites addressed § 152 *Eleventh*, which involves assessment of union dues, not

§ 152 Third and Fourth, the provisions at issue here. *See Brady v. Trans World*

*Airlines, Inc.*, 401 F.2d 87, 91-96 (3d Cir. 1968); *Klemens v. Air Line Pilots Ass'n,*

*International*, 736 F.2d 491, 496-98 (9th Cir. 1984); *Bagnall v. Air Line Pilots*

*Ass'n, International*, 626 F.2d 336, 343-44 (4th Cir. 1980). The final decision,

*Stepanischen v. Merchants Despatch Transportation Corp.*, 722 F.2d 922, 928 (1st

Cir. 1983), addressed a postcertification claim that directly alleged "anti-

union animus."

### 3. Carter's claims of conflict with Supreme Court precedent are incorrect.

The Supreme Court's decision in *TWA* lays the groundwork for the

anti-union-animus requirement. As the Court explained, from its "very first

opportunity to interpret" § 152 Third and Fourth, the Court has held those provisions primarily address "the *precertification* rights and freedoms of *unorganized* employees." *TWA*, 489 U.S. at 440 (emphasis added). The RLA creates an "exhaustively detailed procedural framework" through which parties can resolve disputes. *Id.* at 441. The effectiveness of that framework depends on the assurance that the employees' chosen bargaining representative—the labor union, in most cases—"is not subject to control by the employer." *Id.* Thus, the RLA plays a role after a bargaining representative has been certified only when the employer acts with anti-union animus.

Although *TWA* squarely addresses § 152 Third and Fourth of the RLA, Carter glosses over it. Instead, and again without explanation, Carter claims a conflict with Supreme Court precedent "recogniz[ing] federal court jurisdiction over employees' RLA § 2 statutory rights claims involving interference with their postcertification statutory rights, without any heightened 'anti-union animus' jurisdictional requirement." Pet. 6-7. But none of the cases she cites involved postcertification claims brought under § 152 Third and Fourth. Four address other provisions of the RLA. *See International Ass'n of Machinists v. Street*, 367 U.S. 740 (1961) (§ 152 Eleventh); *Ellis v. Board of Railway, Airline, & Steamship Clerks, Freight Handlers, Express & Station*

*Employes*, 466 U.S. 435 (1984) (same); *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515 (1937) (§ 152 Ninth); *Switchmen's Union of North America v. National Mediation Board*, 320 U.S. 297 (1943) (same).

The final decision, *Texas & New Orleans Railroad v. Brotherhood of Railway & Steamship Clerks*, 281 U.S. 548 (1930), addresses § 152 Third and Fourth in the precertification context, and it supports the panel decision. The plaintiffs alleged that the employer was "actually engaged" in opposing the union trying organize employees. *Id.* at 560. The Court, in turn, recognized that "[f]reedom of choice in the selection of representatives … is the essential foundation of the [RLA]," *id.* at 569, and the employer's interference in its employees' selection of a union violated the RLA. Nothing in the decision suggests that there is no anti-union animus requirement in the postcertification context, once the employees have selected a union.

## II. The panel decision is correct, and it raises no issue of exceptional importance.

The panel decision is correct, and Carter's First Amendment arguments misunderstand the law and are properly directed at the union, not Southwest. In short, the decision raises no issue of exceptional importance.

**A.    The panel correctly held that postcertification § 152 Third and Fourth claims require, and Carter could not show, anti-union animus.**

**1.**    The panel correctly recognized that the RLA § 152 Third and Fourth play very limited roles in the postcertification context, and only when the employer "act[s] out of 'anti-union animus.'" *BLET*, 31 F.4th at 342; *see supra* pp. 6-8; Op. 41-48. The panel likewise correctly concluded that Carter failed to meet the anti-union animus requirement—indeed, her claim was that Southwest supported, not opposed, the union.

**2.**    Carter's counterarguments fail. Carter contends (Pet. 6-7) that a postcertification claim that an employees' RLA "statutory rights" were violated should not require anti-union animus. That argument just begs the question of whether an employee *has* statutory rights in the postcertification context that an employer violates when it acts without anti-union animus. *See supra* pp. 7-8. Put differently, Carter assumes that she has engaged in RLA protected activity, and then she argues that she shouldn't also have to show anti-union animus. But she hasn't pointed to any protected activity, precisely because the RLA doesn't protect postcertification activity unless there is anti-union animus. *See supra* pp. 6-8. Indeed, "[n]o private cause of action exists under the RLA for … employees who assert retaliatory conduct

based upon employee activities [that] bear no relationship to establishing a union." Op. 47 (quoting *Herring*, 894 F.2d at 1023).

Carter also claims that the anti-union-animus requirement forces non-union-members' claims into "an arbitration process controlled by the very same employer and union who violated their rights." Pet. 8. But Carter again assumes her premise—that she has an RLA claim against Southwest. She doesn't, for the reasons just discussed. If she *did* have an RLA right that Southwest violated, it would need to be because Southwest acted with anti-union animus (it didn't). But she never argued that point, for good reason: Carter affirmatively participated in the mandatory arbitration process. What's more, Carter is wrong because she has an RLA claim she brought in court for breach of the duty of fair representation—on which she prevailed—against the union that she alleges "violated [her] rights." *Id.*

**B.     The panel decision does not raise First Amendment concerns.**

Carter contends that by denying her a cause of action against Southwest for opposing Local 556, the panel raised First Amendment concerns by "restrain[ing] non-members' ideological opposition to unions." Pet. 11. But the First Amendment doesn't apply to *private*, non-governmental conduct, like Southwest's, as the decision Carter relies on, *Janus v. American Federation*

*of State, County, & Municipal Employees*, 585 U.S. 878, 918 & n.24 (2018), makes clear. That's why the district court dismissed Carter's First Amendment claim, *see* ROA.23-10008.862-863 (available at 353 F. Supp. 3d 556, 574-75) — a dismissal Carter didn't appeal and cannot revisit now. Put simply, Carter's argument lacks merit because (1) she has — and won a jury verdict on — a claim against the union, and (2) the argument conflicts with Supreme Court precedent anyway.

**1.** Carter had a vehicle for opposing the union: The panel upheld the jury verdict in her favor for the union's breach of its duty of fair representation. That ruling follows from clear Fifth Circuit caselaw holding that even non-members can bring RLA claims against the bargaining representative for breaching a duty of fair representation. *See, e.g., Shea v. International Ass'n of Machinists & Aerospace Workers*, 154 F.3d 508, 517 (5th Cir. 1998). And it makes sense that the RLA operates that way: The RLA protects employee organizing activity; once employees have selected a bargaining representative, disputes between employer and employee go to mandatory arbitration, and internal disputes between employees and their bargaining representative can be litigated in court. *See* Op. 44-45; *accord Steele v. Louisville & Nashville Railroad*, 323 U.S. 192, 202-03 (1944). As the Seventh Circuit put it,

the RLA "was not designed to give minority groups within a union a cause of action against their employer when they cannot persuade their own union to take actions they deem to be in the union's best interest." *Renneisen v. American Airlines, Inc.*, 990 F.2d 918, 924 (7th Cir. 1993).

2. Because Carter's dispute is with the union, this case isn't a vehicle for addressing any First Amendment concern. But her constitutional arguments are meritless. *Janus* makes clear that "'constitutional questions [would] arise' if the union were *not* subject to the duty to represent all employees fairly," but that employers *are* subject to that duty. 585 U.S. at 901. *Janus* also made clear that the compelled-speech concerns arising with public-sector unions there specifically did not apply to private-sector unions governed by the RLA. *Id.* at 918 n.24. "No First Amendment issue" could arise, the Court explained, unless Congress's "allowing, but not requiring, private parties to enter into union-shop arrangements" is governmental action—a dubious proposition. *See id.* More generally, Carter's complaint with Southwest is not that Southwest compelled her to say anything, but that Southwest disagreed with her advocacy against Audrey Stone. But she does not have a First Amendment right to compel Southwest to listen.

## CONCLUSION

The Court should deny the petition.

Dated: June 23, 2025

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Andrew B. Ryan
Ryan Law Partners LLP
3811 Turtle Creek Blvd., Ste. 780
Dallas, TX 75219

*Counsel for Defendant-Appellant/Cross-Appellee Southwest Airlines Co.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 40(d)(4), I hereby certify that (1) this brief complies with the type-volume limitation of 3,900 words, as authorized by Federal Rule of Appellate Procedure 40(d)(3)(A), because it contains 3,893 words, as calculated by Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), and (2) this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.


Dated: June 23, 2025          */s/ Shay Dvoretzky*
                              Shay Dvoretzky

                              *Counsel for Defendant-Appellant/*
                              *Cross-Appellee Southwest Airlines Co.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2025, I electronically filed this response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: June 23, 2025

*/s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Defendant-Appellant/*
*Cross-Appellee Southwest Airlines Co.*